No. 04-1255C
(Judge Robert H. Hodges, Jr.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

LESLIE CAYER OHTA
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0252
(202) 514-7969 (Fax)

Attorneys for Defendant

March 19, 2005

TABLE OF CONTENTS

Statement Of The Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. This Court does not possess jurisdiction to entertain Lumbermens' causes of action premised upon principles of suretyship and equitable subrogation for damages resulting from improper payments made by the Navy to Landmark prior to Landmark being terminated for default given that Lumbermens failed to notify the Navy that it was asserting its rights to such payments 5

III. This Court does not possess jurisdiction to entertain Lumbermens' cause of action for damages arising from the Navy's breach of the takeover agreement given that Lumbermens failed to submit a claim to the contracting officer seeking such damages . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aetna Casualty & Surety Co. v. United States, 845 F.2d 971 (Fed. Cir.1988) . . . . . . . . . . . . 2

American Insurance Company v United States, 67 Fed. Cl. 151 (2004) . . . . . . . . . . . . . . . 8, 9

Balboa Insurance Co. v. United States, 775 F.2d 1158 (Fed. Cir.1985) . . . . . . . . . . . . . . . 2, 9

Fireman's Fund Insurance Company v. United States, 909 F.2d 495 (Fed. Cir. 1990)6, 7, 8, 10

First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279 (Fed. Cir.1999) . 6

Great American Insurance Co. v. United States, 203 Ct. C 492 F.2d 821 (1974) . . . . . . . . . . 8

Holley v. United States, 124 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Home Indemnity Co. v. United States, 180 Ct. C 376 F.2d 890 (1967) . . . . . . . . . . . . . . . 8, 9

INS v. St. Cyr, 533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Innovair Aviation, Ltd. v. United States, 58 Fed. Cl. 560 (2003) . . . . . . . . . . . . . . . . . . . . . 4

Insurance Company of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) . . . . 6, 7, 9

Insurance Company of the West v. United States, 55 Fed. Cl. 529 (2003) . . . . . . . . . . . . . . . 7

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . 4

National Surety Corp., 31 Fed. Cl. 565 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . . . . . 7, 9

Prairie State Bank v. United States, 164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506 (2002) . . . . . . . . . . . . . . . . . . . . 5

Ransom v. United States, 17 Cl. Ct. 263 (1989), aff'd, 900 F.2d 242 (Fed. Cir.1990)6, 7, 9, 10

Reliance Insurance Company v. United States, 27 Fed. Cl. 815 (Fed. Cl. 1993) . . . . . . . . . . 9

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Transamerica Insurance Company v. United States, 31 Fed. Cl. 602 (1994) . . . . . . . . . . . . 12

Transamerica Insurance Company v. United States, 989 F.2d 1188 (Fed. Cir. 1993) . . . . . . . 6

Transamerica Insurance Company v. United States, 6 Cl. Ct. 367 (1984) . . . . . . . . . . . . . . 12

United Electric Company v. United States, 647 F.2d 1082 (Ct. Cl. 1981) . . . . . . . . . . . . . . . 6

United States Fidelity & Guaranty Co. v. United States, 201 Ct. C 475 F.2d 1377 (1973) . . . 8

United States Fire Insurance Company v. United States, 61 Fed. Cl. 494 (2004) . . . . . . . . . . 9

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Munsey Trust Co., 332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Testan, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Westchester Fire Insurance Co. v. United States, 52 Fed. Cl. 567 (2002) . . . . . . . . . . . . . . 8, 9

Westech Corporation v. United States, 20 Cl. Ct. 745 (1990) . . . . . . . . . . . . . . . . . . . . . . . 12

Witherington Construction Corp. v. United States, 45 Fed. Cl. 208 (1999) . . . . . . . . . . . . . 11

FEDERAL STATUTES

40 U.S.C. § 270a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

41 U.S.C. § 601 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

41 U.S.C. § 601(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

41 U.S.C. §§ 605(a)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1255C |
| v. | ) | (Judge Robert H. Hodges) |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint of plaintiff, Lumbermens Mutual Casualty ("Lumbermens"), for failure to state a cause of action over which this Court possesses jurisdiction.

I. Statement Of The Issues

1.) Whether this Court possesses jurisdiction to entertain Lumbermens' causes of action premised upon principles of suretyship and equitable subrogation for damages resulting from improper payments made by the Navy to Landmark, prior to Landmark being terminated for default, given that Lumbermens failed to notify the Navy that it was asserting its right to such payments.

2.) Whether this Court possesses jurisdiction to entertain Lumbermens' cause of action for damages arising from the Navy's breach of the takeover agreement given that Lumbermens failed to submit a claim to the contracting officer seeking such damages.

II. Statement Of The Case

The facts that are pertinent to our motion to dismiss are not, for the purposes of our motion, in dispute. [1] Lumbermens alleges in its August 4, 2004 complaint that the United States, acting through the Department of the Navy, entered into a contract with Landmark Construction Company ("Landmark") for the repair and renovation of military housing at the Naval Air Station, Whidbey Island, Oak Harbor, Washington. Compl. ¶ 5.[2] Lumbermens provided performance and payment bonds to Landmark.[3] Compl. ¶ 8.

During Landmark's performance of the contract, the Navy failed to require that Landmark provide a network schedule analysis ("NAS") that fully complied with the requirements of the contract. Compl. ¶¶ 31, 32. Thus, according to Lumbermens, payments made to Landmark pursuant to an allegedly flawed NAS were not commensurate with the progress Landmark actually

---

[1] For purposes of this motion only, we accept as true the factual allegations set forth in the complaint. Should this motion be denied, we reserve the right to controvert any and all allegations in the complaint not admitted in our answer.

[2] "Compl. ¶___" refers to plaintiff's complaint.

[3] The Miller Act requires prime contractors to post performance bonds on all federal construction contracts. See 40 U.S.C. § 270a. Sureties, such as Lumbermens, supply these bonds. The surety guarantees that a contract will be completed in the event of the principal's default and that the Government will not have to pay more than the contract price. See United States v. Munsey Trust Co., 332 U.S. 234, 244 (1947). A performance bond generally gives the surety the option of taking over and completing performance upon the principal's default, or of assuming liability for the Government's costs in completing the contract which are in excess of the contract price. In the alternative, a surety may provide funds to an insolvent contractor to complete performance. See Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed. Cir.1988). A surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the Government). Balboa Ins. Co. v. United States, 775 F.2d 1158, 1160 (Fed. Cir.1985). If the surety fails to perform, the Government can sue it on the bonds. Id.

had made on the project as of the time of such payments. Comp. ¶¶ 64, 66 . As a consequence, at the time that the Navy terminated the contract for default, the Navy had paid Landmark approximately 40% of the modified contract price while approximately 10% and 15% of the units had been completed. Compl. ¶ 71, 72.

Subsequent to Landmark's default, Lumbermens completed performance under the contract pursuant to a takeover agreement entered into by the Navy and Lumbermens. Compl. ¶ 74. According to Lumbermens, the Navy's assessment of liquidated damages against Lumbermens constituted a breach of the takeover agreement because it was the Navy, and not Lumbermens, that delayed Lumbermens' completion of the contract. Compl. ¶¶ 183-272. In addition, Lumbermens claims that the Navy breached the takeover agreement by not providing the materials, supplies, and equipment furnished to or by Landmark. Compl. ¶¶ 273-280.

With respect to the period of Landmark's performance of the contract, Lumbermens, as surety to Landmark, asserts that this Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to entertain its cause of action based upon the Navy's impairment of its suretyship rights, Compl. ¶¶ 92-182, and for equitable subrogation. Compl. ¶183-272. Both causes of action are based upon Lumbermens' allegations that the Navy paid Landmark in accordance with a NAS that failed to comply with the contract specifications; that the Navy made improper payments to Landmark for materials, services, and personnel; and that the Navy failed to withhold progress payments. Compl. ¶1-272. Lumbermens does not allege in its complaint that it notified the Navy that Landmark's performance was not commensurate with the amounts it was being paid, that

Landmark was failing to make progress under the contract, or that payments should be made to Lumbermens rather than to Landmark. Comp. ¶¶ 1-272.

With respect to the period of performance under the takeover agreement, Lumbermens asserts that this Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to entertain its cause of action for breach of the takeover agreement. Compl. ¶¶281-272. Lumbermens does not allege in its complaint that it submitted a claim to the contracting officer for damages it claims arose from the Navy's breach of the takeover agreement.

ARGUMENT

I. Standard Of Review

The plaintiff bears the burden of establishing jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Innovair Aviation, Ltd. v. United States, 58 Fed. Cl. 560, 561 (2003) (citing Alder Terrace Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)).

A waiver of sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n. 10 (2001). A plaintiff in this Court must look beyond the jurisdictional statute, the Tucker Act, for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538 (1980).

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Tucker Act, 28 U.S.C. § 1491, waives sovereign immunity for causes of action based upon an express or implied contract with the United States. See United States v. Testan, 424 U.S. 392, 400 (1976).

This Court considers the "true nature" of a plaintiff's claim, regardless of how the plaintiff characterizes its complaint. Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506, 510 (2002).

## II. This Court Does Not Possess Jurisdiction to Entertain Lumbermens' Causes of Action Premised upon Principles of Suretyship and Equitable Subrogation

The Government owes no equitable duty to a surety to protect contract funds without notice from the surety. No claim for such funds under the theory of equitable subrogation can be made for funds disbursed prior to the assertion of rights by the surety.[4] Lumbermens' failure to notify the Navy to of the allegedly improper payments to Landmark compels dismissal of its claims based on its status as surety for activities that occurred prior to the execution of the takeover agreement.

---

[4] Sureties traditionally have asserted claims against the Government under the equitable doctrine of subrogation. This approach dates back at least to 1896, when the Supreme Court stated in Prairie State Bank v. United States, 164 U.S. 227, 231 (1896), that the plaintiff, "as surety on the original contract, was entitled to assert the equitable doctrine of subrogation."

This Court has recognized Tucker Act jurisdiction over contract-based claims brought by a Miller Act surety based upon equitable subrogation even though there is no literal contract between the surety and the United States. See Insurance Co. of the West v. United States, 243 F.3d 1367, 1375 (Fed. Cir.2001). The equitable subrogation doctrine entitles a surety, that takes over contract performance or finances completion of the defaulted contract, to succeed to the contractual rights of a contractor against the Government. Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990). Thus the surety "steps into the shoes" of the contractor when it takes over the contract. See, Insurance Co. of the West, 243 F.3d at 1375; United Electric Company v. United States, 647 F.2d 1082, 1086 (Ct. Cl. 1981). Under those circumstances, the party standing outside privity by contractual obligation stands in the shoes of the party within privity.[5] First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir.1999).

It is axiomatic, however, that "before any obligation arises to withhold or divert funds, the Government must be notified that the sureties believe the contractor is in default and cannot complete the contract."[6] Ransom v. United States, 17 Cl. Ct. 263, 272 (1989), aff'd, 900 F.2d 242 (Fed. Cir.1990). Thus, notice that the contractor is in default and that the surety is invoking its

---

[5] Equitable subrogation is based upon the common law concept that the surety, who pays the debt of the contractor, is entitled to the rights of that contractor to be reimbursed. Transamerica Insurance Company v. United States, 989 F.2d 1188, 1194 (Fed. Cir. 1993) (quoting Pearlman v. Reliance Insurance Company, 371 U.S. 132, 137 (1962)).

[6] In the absence of such notification, withholding payment from a contractor could constitute a breach of contract by the Government. Accordingly, the requirement of notice from the surety protects the Government's interest.

rights to the remaining contract proceeds converts the Government into a stakeholder with duties to the surety; the latter, by virtue of being subrogated to the rights of its principal, is then able to sue under the Tucker Act. Ransom, 900 F.2d at 245. Absent such notice, those duties, and the concomitant ability to invoke this Court's jurisdiction, generally do not attach.[7] See Insurance Company of the West, 243 F.3d at 1369-70 (holding that a surety, after stepping into the shoes of a contractor, may rely upon the waiver of sovereign immunity in the Tucker Act and bring suit against the United States for amounts paid to the contractor after the surety had notified the government of the default by the contractor.[8] Thus, the Government's equitable duties to the surety to retain contract funds are only triggered upon notice from the surety that the contractor is in default or that payment should be made to the surety. See e.g., Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990)[9] ; United States Fidelity & Guar.

---

[7] The surety may also recover contract funds under the doctrine of equitable subrogation if it can identify a specific contract provision dictating that the Government not make the payment at issue. See National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997). In National Surety, the Federal Circuit found that the Government was liable to the surety for the improper release of the retainages, even though it had not received formal notice of the default, where the contract required that such funds be retained until the completion of the contract. National Surety, 118 F.3d at 1543-44. National Surety is inapposite because Lumbermens has failed to identify in its complaint any contractual provision that is intended for the benefit of the surety, as opposed to being for the benefit of the parties to the contract, that is, the Navy and Landmark.

[8] Upon remand, the Court of Federal Claims found that the Government was liable to the surety, who financed the completion of the contract, for payments made to the contractor after being put on notice that the contractor was financially unable to complete the contract. Insurance Company of the West v. United States, 55 Fed. Cl. 529, 539 (2003).

[9] The Government's duty to preserve contract funds for the benefit of the surety is limited. In Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990), the Federal Circuit rejected a surety's attempt to impute broad equitable duties to the Government to

(continued...)

Co. v. United States, 201 Ct. Cl. 1, 7-8, 475 F.2d 1377 (1973) ("when the United States is in the position of a stakeholder, it is not free simply to pay the contractor when the surety has given adequate notice of other competing claims to the fund"); Great American Ins. Co. v. United States, 203 Ct. Cl. 592, 599, 492 F.2d 821 (1974)("the Government will be liable to the surety if, after due notification of the claims of laborers and materialmen, it wrongfully pays the final contract payment to the contractor"); Home Indem. Co. v. United States, 180 Ct. Cl. 173, 376 F.2d 890 (1967) (surety may be able to recover funds already paid if the disbursement was improperly made, but only after notice to the government). See also American Insurance Co. v United States, 67 Fed. Cl. 151 (2004) (Government did not owe a contractual duty to surety not to release funds to defaulting contractor and surety's right to equitable subrogation never attached where it failed to notify contracting agency to stop making payments to contractor); Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567 (2002) (failure of surety to notify Government to withhold progress payments, even where Government was aware of contractor's deficient performance, Government's equitable duty was not triggered); National Surety Corp., 31 Fed. Cl. 565, 578 (1994)(without notice from surety, Government had no equitable basis for discontinuing payments to contractor);

---

[9] (...continued)
preserve contract funds. As the Court stated:

> By definition and agreement, the surety protects the government's interest, not the other way around . . . Only when the surety may be called upon to perform, that is, only when it becomes a party to the bonded contract, should the government owe it any duty. The surety knows best when this may occur; consequently, only notice by the surety triggers the government's equitable duty.

909 F.2d at 499.

Reliance Insurance Company v. United States, 27 Fed. Cl. 815, 827 (Fed. C. 1993)(Before any obligation arises to withhold or divert funds, the Government must be notified that the surety believes the contractor is in default and cannot complete the contract)(quoting Ransom v. United States, 17 Cl. Ct. 263, 272 (1989), aff'd, 900 F.2d 242 (Fed. Cir. 1990)).[10]

Because Lumbermens did not inform the Navy that Landmark was in default, or was failing to make adequate progress at the time of the contested payments, or request that payments be

---

[10] The decision in United States Fire Insurance Company v. United States, 61 Fed. Cl. 494 (2004), is not persuasive. The Court in United States Fire Insurance Company held that under the doctrine of equitable subrogation the Court possessed jurisdiction to entertain the claim of a surety, as subrogee of the defaulted contractor, for damages arising from the alleged overpayment of the contractor by the Government. There was no dispute, however, that the surety's claim was one that the contractor could not have brought against the Government and that the surety failed to give the Government the requisite notice mandated by Balboa Ins. Co. v. United States, 775 F.2d 1158, 1161-63 (Fed. Cir.1985)(surety could recover from the Government payments made to a contractor after the surety had notified the government of the contractor's default), and its progeny, that the Government should cease making payments to the contractor. See Home Indem. Co. v. United States, 180 Ct. Cl. 173, 376 F.2d 890 (1967); Insurance Company of the West v. United States, 243 F.3d 1367, 1369-70 (Fed. Cir. 2001); Ransom v. United States, 17 Cl. Ct. 263, 272 (1989), aff'd, 900 F.2d 242 (Fed. Cir.1990); American Insurance Company v United States, 67 Fed. Cl. 151 (2004); Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567 (2002).

Despite the fact that the Court relied upon Insurance Company of the West, 243 F.3d at 1369, in finding jurisdiction, the Court ignored the fact that the surety in that case had in fact provided the requisite notice. The Court failed to address the issue of notice and to recognize that notice by the surety to the Government is the critical underpinning of those decisions finding jurisdiction under the doctrine of equitable subrogation.

Furthermore, the only situation in which notice is not required is where the contract itself mandates that payments not be made. In such cases, the duty arises from the contract itself. See National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997), discussed at footnote 7, above.

made to Lumbermens rather than to Landmark, the Government's duty as a stakeholder did not arise. In short, the Navy had no duty to protect contract funds for the benefit of Lumbermens. Thus, Lumbermens can not now assert that the Navy breached any equitable duty owed to it.[11] In short, since Lumbermens failed to allege in its complaint that it notified the Navy that Landmark's performance was not commensurate with the amounts it was being made, that Landmark was failing to make progress under the contract, or that payments should be made to Lumbermens rather than to Landmark, Compl. ¶¶ 1-272, this Court does not possess jurisdiction to entertain its claim for damages based upon the Navy's allegedly improper payments to Landmark for materials, services, and personnel or for allegedly failing to withhold progress payments. Lumbermens' causes of action based upon equitable subrogation and impairment of suretyship must, therefore, be dismissed for lack of jurisdiction

II. This Court Does Not Possesses Jurisdiction To Entertain Lumbermens' Cause Of Action For Damages Arising From The Government's Breach Of The Takeover Agreement.

This Court does not possess jurisdiction over Lumbermens' cause of action based upon breach of contract claims. Lumbermens, having entered into a contract with the Government, covered by the Contract Disputes Act, must allege that it met the jurisdictional prerequisite of the Act. That is, Lumbermens, as a jurisdictional prerequisite to suit, was required to submit a claim to

[11] The impropriety of the Government's release of funds is based in equity and not on a contractual obligation to retain the funds. The release is arguably improper if the contracting officer abuses his discretion or acts unreasonably in releasing the funds to the contractor after receiving notice of the surety's interest thereby putting the surety's subrogation rights at risk. See Fireman's Fund, 909 F.2d at 498; Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir.1990). If the retainage is contractually required, however, and the Government fails to retain payments, then the surety would have a claim for pro tanto discharge.

the contracting officer. Lumbermens failed to do so.[12] It is clear beyond cavil that Lumbermens' claims that the Navy breached the takeover agreement arise, if at all, under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq.

With respect to disputes arising pursuant to the CDA, Congress has granted this court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the CDA See § 1491(a)(2). Pursuant to section 6 of the CDA, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Under section 10(a)(1) of that Act, the court's jurisdiction encompasses actions filed in the appropriate forum within a specified time period triggered by the date of the receipt by the contractor of the decision of the CO concerning the claim. 28 U.S.C. § 1491(a)(2); 41 U.S.C. §§ 605(a), 609(a)(3).

The CDA sets forth a detailed process that the contractor must comport with prior to instituting suit in this Court. 41 U.S.C. §§ 605(a)-(c). As the court in Witherington Construction Corp. v. United States, 45 Fed.Cl. 208, 211 (1999), stated: "[T]o gain a jurisdictional foothold in this [C]ourt, a plaintiff pursuing a contract claim must satisfy two fundamental jurisdictional requirements--it must submit a claim for money presently due and must obtain a 'final decision' on that claim, either actual or deemed."

The CDA bars Lumbermens claim because it arises under the takeover agreement and Lumbermens has failed to satisfy the jurisdictional prerequisite contained in sections 605(a) and

---

[12] Lumbermens does not allege in its complaint that it submitted a claim to the contracting officer.

605(c)(1) by submitting a certified claim to the CO. The requirements of sections 605(a) and 605(c)(1) apply to contract claims of a surety that executes a takeover agreement following contractor default, see, e.g., Transamerica Insurance Company v. United States, 6 Cl. Ct. 367, 370 (1984), because a surety becomes a contractor subject to the CDA by executing such an agreement with the government. Westech Corporation v. United States, 20 Cl. Ct. 745, 749 (1990); 41 U.S.C. § 601(4).

Lumbermens' claims are clearly ones "arising under" the takeover agreement for purposes of the provision in the CDA requiring submission of its claim to the contracting officer as a jurisdictional prerequisite. See CDA, §§ 2(4), 6(a), (c)(1), 41; Transamerica Insurance Company v. United States, 31 Fed. Cl. 602, 39 (1994). Thus, this Court lacks jurisdiction to entertain Lumbermens' cause of action premised upon the Navy's breach of the takeover agreement because Lumbermens, prior to filing its complaint, failed to submitted a certified claim to the contracting officer for a final decision as required by the CDA, 41 U.S.C. § 601 et seq. Because Lumbermens failed to submit a claim, Lumbermens failed to comply with the CDA; therefore, Lumbermen's cause of action premised upon the Navy's breach of the takeover agreement should be dismissed.

CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court grant our motion to dismiss.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

March 19, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2005, a copy of the foregoing Defendant's Motion To Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

s/ Leslie Cayer Ohta