No. 04-1255C
(Judge Robert H. Hodges, Jr.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

EXHIBIT 1
TO
DECLARATION OF MATTHEW MURETTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

---

Mark G. Jackson
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, NORTHWEST
NAVAL FACILITIES ENGINEERING COMMAND
19917 7TH AVENUE N.E.
POULSBO. WASHINGTON 98370-7570

IN REPLY REFER TO:

# TAKEOVER AGREEMENT
# CONTRACT N44255-97-C-5515

This Takeover Agreement is for completion of defaulted Contract N44255-97-C-5515.

This Takeover Agreement is entered into this 9 day of November 2001 by and between Lumbermens Mutual Casualty Company, a corporation of the State of Illinois with its principal place of business at 1 Kemper Drive, Long Grove, Illinois (hereinafter 'Surety'), the United States of America represented by the Department of the Navy (hereinafter 'Government') and Atherton Construction, Inc., a corporation of the State of Nevada with its principal place of business at 3855 S. Jones Blvd., Suite 101, Las Vegas, NV 89103 (hereinafter "Completing Contractor").

Whereas, the Government entered into Contract N44255-97-C-5515 with Landmark Construction Corporation (hereinafter "Defaulted Contractor") for Whole Site Repair/Revitalization Maylor Capehart Housing Area, Naval Air Station, Whidbey Island, Oak Harbor, WA.

Whereas, Defaulted Contractor defaulted in the performance of its obligations under the contract and its right to proceed with the work was terminated by the Government.

Whereas, the Surety, by a Performance Bond, guaranteed that the Defaulted Contractor would fully perform in accordance with the contract.

Whereas, the Government has made demand upon the Surety for completion of the work in accordance with the Surety's obligations under its Performance Bond.

Whereas, the Surety has advised the Government that it will undertake the completion of the work and will contract with the Completing Contractor for completing the work remaining under the contract in accordance with its terms and conditions of the terminated contract;

NOW, the parties agree as follows:

1. The Completing Contractor, will perform or procure the performance of all work and other obligations of the defaulted contract not presently completed or fulfilled, including the correction and repair of all defective work and all work under the warranty provision. Unless and until the Surety provides to the Government written notice to the contrary, the Completing Contractor is vested by the Surety with its full authority and discretion in all matters related to the above. The Government will deal directly with the Completing Contractor on day-to-day operations and decisions regarding contract performance. The provisions and clauses of the defaulted contract, and the plans and specifications, are incorporated into this Agreement and will be binding on the Completing Contractor.

2. The Government and Surety agree that $7,392,381.24 is the unpaid contract balance, including retainages. The Completing Contractor will be paid by the Government in accordance with and in the manner provided by the defaulted contract and this Agreement. In addition, the Completing Contractor shall be paid by the Surety in accordance with its Completion Agreement with the Surety. The Government will pay the Completing Contractor's costs and expenses up to the balance of the contract price unpaid at the time of default subject to the conditions in this Agreement and the defaulted contract, including without limitation the following:

   a. Any unpaid earnings of the Defaulted Contractor, including retained percentages and progress estimates for work accomplished before termination, must be subject to debts due the Government by the Defaulted Contractor, except to the extent that the unpaid earnings may be used to pay the Completing Contractor its actual costs and expenses incurred in the completion of the work.

   b. Liquidated damages assessed from the completion date set forth in the defaulted contract will be retained.

3. The date of completion of the work under the defaulted contract was established as 23 October 2002. The Completing Contractor agrees to diligently proceed with the completion of the work in accordance with the terms and conditions of the defaulted contract. This shall not affect any liability of the defaulted contractor or the Surety from liquidated damages computed from the completion date of the defaulted contract. The executed Takeover Agreement shall be incorporated by unilateral modification into Contract N44255-97-C-5515 in the name of the Completing Contractor.

4. The Completing Contractor agrees to prepare, certify, and submit its request for payment in accordance with the terms of the defaulted Contract. The invoices shall be submitted in the name of the Completing Contractor. The initial invoice shall reflect an appropriate credit for the reasonable cost incurred by the Government for warranty work and site maintenance subsequent to the default. The Government states this cost is $2,533.69. The Government shall review all requests for payment and, upon approval, shall forward payments to the Completing Contractor as the sole payee at 3855 South Jones Blvd., Suite 101, Las Vegas, NV 89103 ATTN: Matt Muretta.

5. After the date of this Takeover Agreement, the Government shall deal solely and exclusively with the Completing Contractor with respect to all change orders under the defaulted contract, and all funds due for performance of such change orders shall be paid to the Completing Contractor as sole payee.

6. Nothing in this agreement will be in derogation of the Surety's obligation to the United States under its Performance Bond on the defaulted contract for unpaid withholding taxes.

7. Nothing in this Agreement shall be construed as constituting an acceptance by the Government of the work performed by the Defaulted Contractor or as modifying, limiting or

releasing the Surety from its obligations to the United States under its Performance and Payment Bonds on the defaulted contract.

8. Nothing in this Agreement shall be construed as creating, altering, or abridging any rights of the parties, or other person arising out of the Payment Bond on the defaulted contract or out of any payments under the Payment Bond.

9. It is understood and agreed that the Surety, by entering into this Agreement, is not acting as a contractor but is instead acting in its capacity as a performance bond surety. The Surety, who will have no employees on the project site, shall have no obligation to furnish any insurance under the contract, and any insurance required under the contract shall be provided by the Completing Contractor.

10. Insofar as the Government has any right, title or interest therein, the Government agrees that the Surety or the Completing Contractor will have the right to use, without charge, any of the materials, supplies, equipment or personal property furnished or supplied to or by the Defaulted Contractor which may be stored on the premises of the project or elsewhere, or which may have been fabricated for use in connection with the project. The Government makes no warranty as to the quantity or condition of any such materials, supplies, equipment or personal property.

11. In the event a dispute arises between the Government and the Completing Contractor, or Completing Contractor is in default under the terms of the Contract, the Government will give Surety written notice thereof as provided by the contract.

12. In the event that one or more provisions of the Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

13. It is understood and agreed by the Government and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

14. This Agreement shall not be construed to waive, limit, alter or amend any of the Surety's rights or defenses under the performance bond or otherwise. Except as to the Governments mitigation of damages in accepting completion of the defaulted contract by the Surety, it is expressly understood that by entering into this Agreement the Surety does not waive, prejudice, or in any way adversely affect or limit any claim that it, as Surety, or the Defaulted Contractor might have against the Government, including any claim arising out of payments made by the Government to the Defaulted Contractor; and the Surety hereby expressly reserves, any and all rights and defenses it may have against the Government under the contract and the performance bond. Nothing in this Agreement shall prejudice the rights of the Surety to seek a judicial or other appropriate determination of its rights.

15 This agreement shall bind the parties and their successors, and shall not be modified or amended except by a written document duly executed by the parties or their successors.

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement as of the day and year written above.

FOR THE SURETY

Witness

Signature
Printed Name Stephen J. Beatty
Title Assoc. Surety Counsel

FOR THE COMPLETING CONTRACTOR

Witness

Signature
Printed Name MATTHEW P. MURETTA
Title PRESIDENT

FOR THE DEPARTMENT OF THE NAVY

Witness

Signature
Printed Name Rita M Brede
Title Director of Acquisition