Case 1:04-cv-01255-RHH Document 17-4 Filed 04/15/2005 Page 1 of 7

No. 04-1255C
(Judge Robert H. Hodges, Jr.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

EXHIBIT 3
TO
DECLARATION OF MATTHEW MURETTA IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

---

Mark G. Jackson
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Case 1:04-cv-01255-RHH Document 17-4 Filed 04/15/2005 Page 2 of 7

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1 CONTRACT ID CODE: J

PAGE OF PAGES: 1 | 2

| 2 AMENDMENT/MODIFICATION NO | 3 EFFECTIVE DATE | 4 REQUISITION/PURCHASE REQ NO | 5 PROJECT NO (If applicable) |
|---|---|---|---|
| A00013 | 20-Nov-2001 | 5515PR | |

6 ISSUED BY CODE N44255
ENGINEERING FIELD ACTIVITY NW
19917 7TH AVE NE
POULSBO WA 98370-7570

7 ADMINISTERED BY (If other than item 6) CODE N44255
ENGINEERING FIELD ACTIVITY NW
WHIDBEY ISLAND FIELD OFFICE BLDG 103
1115 W LEXINGTON ST
OAK HARBOR WA 98278-2400

8 NAME AND ADDRESS OF CONTRACTOR (No Street, County State and Zip Code)
ATHERTON CONSTRUCTION INC
JAY NOEL
3855 S. JONES BLVD. SUITE 101
LAS VEGAS NV 89103

CODE 1BGH3 FACILITY CODE

9A AMENDMENT OF SOLICITATION NO

9B DATED (SEE ITEM 11)

X 10A. MOD. OF CONTRACT/ORDER NO
N44255-97-C-5515

X 10B DATED (SEE ITEM 13)
11-Apr-2000

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14 The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15 and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER If by virtue of this amendment you desire to change an offer already submitted such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA (If required)

13 THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO IN ITEM 10A

B THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D OTHER (Specify type of modification and authority)

E IMPORTANT: Contractor [X] is not, ☐ is required to sign this document and return ______ copies to the issuing office

14 DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible)

SUBJ: CONTRACT N44255-97-C-5515. WHOLE SITE REPAIR/REVITALIZATION MAYLOR CAPEHART HOUSING AREA. NAVAL AIR STATION WHIDBEY ISLAND. OAK HARBOR WASHINGTON

Take Over Agreement for completion of defaulted subject contract and selection of Atherton Construction Inc as completing contractor

DESCRIPTION FO THIS MODIFICATION CONTINUES ON PAGE 2

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A NAME AND TITLE OF SIGNER (Type or print)

16A NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
JOHN F SANTIAGO / CONTRACT SPECIALIST

| 15B CONTRACTOR/OFFEROR | 15C DATE SIGNED | 16B UNITED STATES OF AMERICA | 16C DATE SIGNED |
|---|---|---|---|
| ______ (Signature of person authorized to sign) | | BY [signature] (Signature of Contracting Officer) | 03-Dec-2001 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev 10-83)
Prescribed by GSA
FAR (48 CFR) 53 243

LMB 007509

Case 1:04-cv-0125_-RHH Document 17-4 Filed 04/15/2005 Page 3 of 7



SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

1 This modification shall incorporate the attached TAKEOVER AGREEMENT CONTRACT N44255-97-C-5515 as executed on 20 November 2001, between the United States Government, the Surety and the completing contractor

2 As a result of this modification all terms, conditions, contract price and contract completion date remains unchanged

3 The contractor organization performing the contract work has changed from

LANDMARK CONSTRUCTION CORPORATION
13581 Pond Springs Rd #200
Austin TX 78729-4419

To

Atherton Construction, Inc
3855 Jones Blvd, Suite 101,
Las Vegas, NV 89103

4 Invoices shall be submitted to:
NAS Whidbey Island
ROICC, Bldg 103
1115 W Lexington Street
Oak Harbor WA 98275

Payments will be made by:
DFAS San Diego OPLOC

CONTRACTOR STATEMENT OF RELEASE
Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all cost impact, effect and delay and disruptions arising out of or incidental to the work as herein revised

Changes in Section 00800

Summary for the Payment Office

The total funded amount of the contract remains unchanged

Copy to: FIS, N462; DFAS SANDIEGO; ROICC N466JS, N466KM, N466 RM; ATHERTON CONSTRUCTION FIELD OFFICE, SW DIV HSG E. LUNDE; EFANW 05CI G SCHAEFFER, M. BOYD

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY,NORTHWEST
NAVAL FACILITIES ENGINEERING COMMAND
19917 7TH AVENUE N.E.
POULSBO WASHINGTON 98370-7570

IN REPLY REFER TO:

# TAKEOVER AGREEMENT
# CONTRACT N44255-97-C-5515

This Takeover Agreement is for completion of defaulted Contract N44255-97-C-5515

This Takeover Agreement is entered into this 9 day of November 2001 by and between Lumbermens Mutual Casualty Company, a corporation of the State of Illinois with its principal place of business at 1 Kemper Drive, Long Grove, Illinois (hereinafter 'Surety'), the United States of America represented by the Department of the Navy (hereinafter 'Government') and Atherton Construction, Inc., a corporation of the State of Nevada with its principal place of business at 3855 S. Jones Blvd., Suite 101, Las Vegas, NV 89103 (hereinafter "Completing Contractor").

Whereas, the Government entered into Contract N44255-97-C-5515 with Landmark Construction Corporation (hereinafter "Defaulted Contractor") for Whole Site Repair/Revitalization Maylor Capehart Housing Area, Naval Air Station, Whidbey Island, Oak Harbor, WA.

Whereas, Defaulted Contractor defaulted in the performance of its obligations under the contract and its right to proceed with the work was terminated by the Government.

Whereas, the Surety, by a Performance Bond, guaranteed that the Defaulted Contractor would fully perform in accordance with the contract.

Whereas, the Government has made demand upon the Surety for completion of the work in accordance with the Surety's obligations under its Performance Bond.

Whereas, the Surety has advised the Government that it will undertake the completion of the work and will contract with the Completing Contractor for completing the work remaining under the contract in accordance with its terms and conditions of the terminated contract;

NOW, the parties agree as follows:

1. The Completing Contractor, will perform or procure the performance of all work and other obligations of the defaulted contract not presently completed or fulfilled, including the correction and repair of all defective work and all work under the warranty provision. Unless and until the Surety provides to the Government written notice to the contrary, the Completing Contractor is vested by the Surety with its full authority and discretion in all matters related to the above. The Government will deal directly with the Completing Contractor on day-to-day operations and decisions regarding contract performance. The provisions and clauses of the defaulted contract, and the plans and specifications, are incorporated into this Agreement and will be binding on the Completing Contractor

2. The Government and Surety agree that $7,392,381.24 is the unpaid contract balance, including retainages. The Completing Contractor will be paid by the Government in accordance with and in the manner provided by the defaulted contract and this Agreement. In addition, the Completing Contractor shall be paid by the Surety in accordance with its Completion Agreement with the Surety. The Government will pay the Completing Contractor's costs and expenses up to the balance of the contract price unpaid at the time of default subject to the conditions in this Agreement and the defaulted contract, including without limitation the following:

   a. Any unpaid earnings of the Defaulted Contractor, including retained percentages and progress estimates for work accomplished before termination, must be subject to debts due the Government by the Defaulted Contractor, except to the extent that the unpaid earnings may be used to pay the Completing Contractor its actual costs and expenses incurred in the completion of the work

   b. Liquidated damages assessed from the completion date set forth in the defaulted contract will be retained.

3. The date of completion of the work under the defaulted contract was established as 23 October 2002. The Completing Contractor agrees to diligently proceed with the completion of the work in accordance with the terms and conditions of the defaulted contract. This shall not affect any liability of the defaulted contractor or the Surety from liquidated damages computed from the completion date of the defaulted contract. The executed Takeover Agreement shall be incorporated by unilateral modification into Contract N44255-97-C-5515 in the name of the Completing Contractor.

4. The Completing Contractor agrees to prepare, certify, and submit its request for payment in accordance with the terms of the defaulted Contract. The invoices shall be submitted in the name of the Completing Contractor. The initial invoice shall reflect an appropriate credit for the reasonable cost incurred by the Government for warranty work and site maintenance subsequent to the default. The Government states this cost is $2,533.69. The Government shall review all requests for payment and, upon approval, shall forward payments to the Completing Contractor as the sole payee at 3855 South Jones Blvd., Suite 101, Las Vegas, NV 89103 ATTN: Matt Muretta.

5 After the date of this Takeover Agreement, the Government shall deal solely and exclusively with the Completing Contractor with respect to all change orders under the defaulted contract, and all funds due for performance of such change orders shall be paid to the Completing Contractor as sole payee.

6. Nothing in this agreement will be in derogation of the Surety's obligation to the United States under its Performance Bond on the defaulted contract for unpaid withholding taxes

7 Nothing in this Agreement shall be construed as constituting an acceptance by the Government of the work performed by the Defaulted Contractor or as modifying, limiting or

releasing the Surety from its obligations to the United States under its Performance and Payment Bonds on the defaulted contract.

8 Nothing in this Agreement shall be construed as creating, altering, or abridging any rights of the parties, or other person arising out of the Payment Bond on the defaulted contract or out of any payments under the Payment Bond.

9. It is understood and agreed that the Surety, by entering into this Agreement, is not acting as a contractor but is instead acting in its capacity as a performance bond surety. The Surety, who will have no employees on the project site, shall have no obligation to furnish any insurance under the contract, and any insurance required under the contract shall be provided by the Completing Contractor.

10. Insofar as the Government has any right, title or interest therein, the Government agrees that the Surety or the Completing Contractor will have the right to use, without charge, any of the materials, supplies, equipment or personal property furnished or supplied to or by the Defaulted Contractor which may be stored on the premises of the project or elsewhere, or which may have been fabricated for use in connection with the project. The Government makes no warranty as to the quantity or condition of any such materials, supplies, equipment or personal property.

11. In the event a dispute arises between the Government and the Completing Contractor, or Completing Contractor is in default under the terms of the Contract, the Government will give Surety written notice thereof as provided by the contract.

12. In the event that one or more provisions of the Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

13 It is understood and agreed by the Government and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

14. This Agreement shall not be construed to waive, limit, alter or amend any of the Surety's rights or defenses under the performance bond or otherwise. Except as to the Governments mitigation of damages in accepting completion of the defaulted contract by the Surety, it is expressly understood that by entering into this Agreement the Surety does not waive, prejudice, or in any way adversely affect or limit any claim that it, as Surety, or the Defaulted Contractor might have against the Government, including any claim arising out of payments made by the Government to the Defaulted Contractor; and the Surety hereby expressly reserves, any and all rights and defenses it may have against the Government under the contract and the performance bond. Nothing in this Agreement shall prejudice the rights of the Surety to seek a judicial or other appropriate determination of its rights.

Case 1:04-cv-01255-RHH Document 17-4 Filed 04/15/2005 Page 7 of 7

15 This agreement shall bind the parties and their successors, and shall not be modified or amended except by a written document duly executed by the parties or their successors

IN WITNESS WHEREOF, the parties have executed this Takeover Agreement as of the day and year written above.

FOR THE SURETY

Witness

Signature
Printed Name Stephen J. Beatty
Title Assoc. Surety Counsel

FOR THE COMPLETING CONTRACTOR

Witness

Signature
Printed Name MATTHEW P. MURETTA
Title PRESIDENT

FOR THE DEPARTMENT OF THE NAVY

Witness

Signature
Printed Name Rita M Brede
Title Director of Acquisition