No. 04-1255C

(Judge Robert H. Hodges, Jr.)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Mark G. Jackson
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

December 23, 2005

# TABLE OF CONTENTS


I. RELIEF REQUESTED .......... 1

II. INTRODUCTION .......... 1

III. STATEMENT OF THE ISSUES .......... 2

IV. STATEMENT OF THE CASE .......... 2

- A. The Underlying Litigation .......... 2
- B. Contract Payment Procedures .......... 3
- C. Initial Document Requests .......... 4
- D. Requests for Production .......... 6
- E. Requests for DFAS Documents .......... 6

V. ARGUMENT .......... 8

- A. The Requested Discovery is Relevant and Necessary to Plaintiff's Claims .......... 8
- B. Materials Located in the DFAS Offices are Subject to Discovery .......... 9
- C. The Government's Proffered Basis for Refusing to Produce Such Documents is Dubious and is also Adverse to Federal Recordkeeping Requirements .......... 10

VI. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## Cases

American Friends Service Committee v. Webster, 231 U.S. App. D.C. 265, 720 F.2d 29 (D.C. Cir. 1983) .......... 10

Cabot v. United States, 35 Fed. Cl. 80 (Ct. Cl. 1996) .......... 8, 9, 12

## Statutes and Regulations

28 U.S.C. § 2902 .......... 10

28 U.S.C. § 2904 .......... 11

41 U.S.C § 3101 .......... 11

36 C.F.R. § 1228.154 .......... 11

36 C.F.R. § 1220.2 .......... 11

# PLAINTIFF'S MOTION TO COMPEL DISCOVERY

## I. RELIEF REQUESTED

Pursuant to RCFC 26 and 37, plaintiff Lumbermens Mutual Casualty Company ("Lumbermens") respectfully moves to compel discovery from defendant United States ("Defendant" or "Government"). Lumbermens seeks an order compelling Defendant to produce responsive documents from the Defense Finance and Accounting Services ("DFAS").

## II. INTRODUCTION

Defendant has failed to provide requested discovery that is relevant to the claims at issue in this matter. Lumbermens seeks *all* of the documents that Landmark Construction Company ("Landmark") submitted with each of its thirteen payments requests to the Government. As currently produced to Lumbermens, several of these payment requests are missing updated Network Analysis Schedules and NAVFAC certification forms that are essential to Lumbermens' claims. Additionally, Defendant has neglected to produce the Required Sorts, Look-Ahead Reports, evidence of title, and other materials that the relevant contract required Landmark to include with each payment request.

In an effort to obtain at least some of these missing materials, Lumbermens has specifically requested that Defendant obtain and produce responsive documents from DFAS. The Government previously forwarded each of Landmark's payment requests to DFAS, and Lumbermens believes—and Defendant has in fact confirmed—that DFAS likely possesses some, if not all, of the missing documents. Defendant, however, has neglected to obtain and produce such documents, and Lumbermens requests that the Court order Defendant to do so.

## III. STATEMENT OF THE ISSUES

1. Whether this Court should compel Defendant to produce responsive documents from DFAS?

## IV. STATEMENT OF THE CASE

### A. The Underlying Litigation.

On or about April 11, 2000, the United States, through the United States Navy, Engineering Field Activity, Northwest, in Poulsbo, Washington ("Navy"), awarded Contract Number N44255-97-C-5515 ("Contract") to Landmark. Complaint ¶5. Pursuant to the Contract, Landmark was to perform the repair and renovate military family housing units at the Naval Air Station, Whidbey Island, in Oak Harbor, Washington ("Project"). Id. ¶6. Lumbermens provided both the performance and payment bonds for the Contract. Id. ¶8.

During performance of the Contract, payments by the Navy to Landmark were not commensurate with the progress Landmark had made on the Project as of the time of such payments. Complaint ¶¶64, 66. The Navy terminated Landmark for default on August 2, 2001. Id. ¶69. At termination, there remained $7,392,381.24 in unpaid Contract balance. Id. ¶70. Although the Navy had paid Landmark almost 40% of the Contract price, only 22 of the 181 MFH units on Contract had been completed by Landmark. Id. The Navy estimated that the Contract was only 12% complete (based upon units completed and returned to the Navy) or 15% complete (if partially completed units were included). Id. Thus, by the Navy's own reckoning, it had overpaid Landmark between 25 and 28 percent, or between $3.040 and $3.404 million. Id.

Lumbermens subsequently filed suit pursuant to the Tucker Act, 28 U.S.C. § 1491. Among other claims, Lumbermens alleges impairment of suretyship based upon the Navy's improper approval of Landmark's Network Analysis Schedule ("NAS"), the Navy's failure to

withhold progress payments, and the Navy's improper payments to Landmark for doors, windows, cabinets, paint, flooring, siding, asbestos abatement, personnel, and sitework. Complaint, ¶¶90-179.

**B. Contract Payment Procedures**

Section 01200 of the Contract sets forth various requirements for the content of Landmark's submittals to the Navy for payment. The Contract required that all requests for payment contained the following materials:

(1) Contractor's Invoice submitted on NAVFAC Form 7300/41;

(2) The Contact Performance Statement (showing, among other things, the percentage of completion)

(3) Updated Network Analysis;

(4) Contractor's Final Release Form; and

(5) Quality Control Manager's invoice certification.

See Declaration of Kevin A. Rosenfield in Support of Plaintiff's Motion to Compel Discovery and Motion for Sanctions ("Rosenfield Decl.") ¶2, Ex. A (Contract § 01200, ¶1.3(a)). The Contract required Landmark to submit to the Navy with each payment request an original and one copy of the Contractor's invoice; two copies of the Contract Performance Statement; three copies of the Updated network analysis system submittal; and one copy of an updated submittal register. Id. (Contract § 01200, ¶1.3(b)). Additionally, the Contract required Landmark to submit three copies of the "Required Sorts" and the "Look-Ahead Report" with each payment request. Id. (Contract § 01200, ¶1.5.6).[1] Payment requests that did not contain the required documents were to "be returned to the Contractor for correction of the deficiencies." Id.

[1] The Required Sorts contained a listing of Landmark's activities in sorts or groups that sorted Landmark's payment request by responsibility code and demonstrated the current status of each Landmark activity. See Contract § 01200, ¶1.4.4. The "Look-Ahead Report" was to contain "a projected report of scheduled activities to be started, in process or completed during the upcoming reporting period." Id. ¶1.5.6

(Contract § 01200, ¶1.3(d)).

**C. Initial Document Requests.**

In the Spring of 2004, Lumbermens and Defendant exchanged all Project-related documents in their possession pursuant to RCFC 26(a). See Rosenfield Decl. ¶3. Within Defendant's production, Lumbermens received various payment requests that were submitted by Landmark during the course of its work on the Project and certified by the Navy. These included a total of thirteen invoices: Invoice No. 5515-1, dated July 6, 2000, through Invoice No. 5515-13, dated June 20, 2001. Id.

Many of the payment requests received by Lumbermens, however, were incomplete. Of the documents currently in Lumbermens' possession, the most notable omissions include the following:

*1. Updated Network Analysis Schedules*

As previously stated, the Contractor required Landmark to include three copies of an updated NAS with each payment request. Rosenfield Decl. ¶2, Ex. A (Contract, § 01200, ¶1.3(b)). Consisting of "time network scaled design diagrams and accompanying mathematical analyses," the NAS was to be used by the Government to determine Landmark's progress on the Project and form the basis for the Navy's approval of Landmark's payment requests. Id. (Contract, §01321, ¶1.4). The NAS broke down the project into discrete activities and assigned each activity a monetary value, allowing the Navy to determine the amount of the progress payment earned by the Contractor for each specific activity. Id. The updated NAS is thus necessary to know exactly how much Landmark billed for each item, and when and how much the Government paid for each item.

Of the thirteen invoice packets produced to Lumbermens, six are missing an attaching

NAS: Invoice Nos. 5515-1, 5515-2, 5515-3, 5515-4, 5515-6, and 5515-11. Rosenfield Decl. ¶5. Lumbermens does not currently possess the NAS that was submitted by Landmark with any of these six invoices. Id.

*2. Navy Endorsement and Certification*

Within either NAVFAC Form 7300/30 or 7300/41—which Landmark included with each of its payment requests—the Navy signed and certified the amount of Landmark's invoice that it approved for payment. Id. ¶6. This form thereby demonstrates whether the Navy ultimately approved Landmark's payment request, and the extent of the Navy's recommended payment. Id. Of the thirteen invoice packets produced to Lumbermens, two are missing this required form: Invoices No. 5515-7 and 5515-13. Id. Lumbermens has been unable to obtain these missing forms. Id.

Additionally, Lumbermen's copy of Invoice No. 5515-9 does not contain a signature from the Navy that certifies the payment but, instead, merely states that "John Signed Orig." Rosenfield Decl. ¶7, Ex. D. This statement indicates that an original document exists that includes a government signature, but Lumbermens has not received a copy of such a document. Id.

*3. Required Sorts and Look-Ahead Report*

As previously stated, the Contract required Landmark to submit three copies of the "Required Sorts" and the "Look-Ahead Report" with each payment request. Rosenfield Decl. ¶¶2, 8, Ex. A (Contract § 01200, ¶1.5.6). Lumbermens has received no such documents. Rosenfield Decl. ¶8.

*4. Payments Clause Materials*

The Contract incorporated by reference FAR 52.232-5, Payments Under Fixed-Price

Construction Contracts (May 1997) ("the Payments Clause"). See Rosenfield Decl. ¶2, Ex. A (Contract § 00720, ¶1.67). Pursuant to this clause, Landmark's request for progress payments were required to include—among other things—an itemization of the amounts requested, a listing of the amounts included for work by each subcontractor, and "satisfactory evidence" of title to the material used to perform the Contract. Id. See also Contract, § 01200, ¶ 1.4.2 (setting forth conditions for payments to the contractor for materials stored offsite). Lumbermens, however, has received no such documents. Rosenfield Decl. ¶8.

**D. Requests for Production.**

In an effort to obtain the aforementioned missing documents, Lumbermens submitted Plaintiff's First Set of Requests for Productions to Defendant on September 8, 2005. Among other things, Lumbermens requested that Defendant produce all Network Analysis Schedules, invoices, financial data, and documents evidencing title to purchased materials. Rosenfield Decl. ¶9, Ex. E. On October 15, 2005, Defendant responded to each of Lumbermens' fourteen requests for production with the same, identical response: *"All responsive documents have previously been produced. The original documents remain available for inspection and copying."* Id.

**E. Request for DFAS Documents.**

During its performance on the Project, Landmark submitted its payment requests to the Naval Air Station in Oak Harbor, Washington. See Rosenfield Decl. ¶2, Ex. A (Contract, § 01200, ¶1.3(c)). Once approved and certified by Navy's contracting officer, the documentation was apparently mailed to the Defense Finance and Accounting Services ("DFAS") office in San Diego, California, where the request was processed and paid. Rosenfield Decl. ¶10. Lumbermens, for instance, possesses the invoice packet for Invoice No. 5515-10 that DFAS

received in March 2001. Id. ¶4, Ex. B. This invoice packet includes a contractor invoice and certification, Navy endorsement and certification, and Landmark's updated NAS. Id.

Seeking to receive similar documentation for each of the other Landmark invoices, Lumbermens' counsel contacted Defendant's counsel, Ms. Ohta, on November 4, 2005 and requested that she obtain responsive documents from DFAS. Id. ¶11.[2] Ms. Ohta agreed to obtain such documents, but—having thereafter received no further contact from Ms. Ohta—Lumbermens sent a follow-up email on November 14 to check on the status of the requested DFAS documents. Id. ¶16, Ex. I. Ms. Ohta's replied on November 18 that "[i]t is not clear that DFAS has any information that has not already been provided, that is, the invoices / public vouchers." Id. After Lumbermens pointed out that it did not currently possess a complete set of the invoices (which is why it was requesting the DFAS documents in the first place), Ms. Ohta's subsequent response *admitted* that DFAS possessed the invoices—albeit, in a manner that confused Lumbermens' request:

> The only documents that DFAS has are the invoices, the prompt payment certification, and the contract. . . . DFAS does not perform any type of analysis into the merits of the payment. If the paperwork is in order, DFAS simply pays the invoice.

Id. ¶¶17-18, Exs. J-K. In response, Lumbermens again reiterated its requests for these invoices. Id. ¶19.

On November 22, Ms. Ohta responded that she had contacted the DFAS office in Norfolk, Virginia and "asked that that the documents be retrieved from the Federal Records Center." Id. ¶19, Ex. L. Although Lumbermens had asked her to contact the San Diego DFAS office, Ms. Ohta contacted the Norfolk office instead because, according to her, "the San Diego office did not make the payments." Id. This statement appears to contradict Federal Express

---

[2] Although such documents were responsive to Lumbermens' First Request for Production, Defendant had apparently neglected to contact DFAS prior to responding to Lumbermens' discovery requests.

airbills showing overnight delivery of Landmark's invoices to DFAS in San Diego. Id. ¶10, Ex. F.

On December 7, 2005—more than a month after Lumbermens first specifically requested the documents—Ms. Ohta issued the following statement:

> DFAS has not been able to locate any documents. The paperwork that is filled out when documents are sent to the Federal Records Center for storage cannot be found. Without the paperwork containing the identifying information the records cannot be retrieved from the Federal Records Center.

Id. ¶22, Ex. N.

## V. ARGUMENT

### A. The Requested Discovery is Relevant and Necessary to Plaintiff's Claims.

Discovery may be had if the materials sought are "relevant to the subject matter" and are "not privileged." RCFC 26. "Relevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." Cabot v. United States, 35 Fed. Cl. 80, 84 (Ct. Cl. 1996). "The question of relevancy is to be more loosely construed at the discovery stage than at the trial." Id. Here, the requested documents are not merely relevant—they represent *essential* elements of Lumbermens' case.

First, Lumbermens requires the updated Network Analysis Schedules that Landmark submitted with each invoice. The invoice itself states the total amount of the payment requested by Landmark, but—absent the attaching NAS—it is difficult to determine the amount that the Government incrementally paid for certain materials and services. For instance, the NAS demonstrates the amount that the Government paid within a certain invoice for cabinets—which is one subject of Lumbermens' claims. Lumbermens is missing the attaching NAS for six of Landmark's invoices. Rosenfield Decl. ¶5.

Second, Lumbermens does not have documentation reflecting the Government's

approval, certification, and off-sets (if any) regarding Invoices Nos. 5515-7 and 5515-13. Since Lumbermens is seeking to prove the impropriety of the Government's approval and payments of such invoices, the relevance of documents reflecting such information seems self-evident.

Third, proper evaluation of the Government's approval of progress payments requires *all* of the materials submitted by the contractor with its request for payment. The Contract required Landmark to submit three copies of the "Required Sorts" and the "Look-Ahead Report" with each payment request. See Rosenfield Decl. ¶2, Ex. A (Contract § 01200, ¶1.5.6). The Contract also required an itemization of the amounts requested, a listing of the amounts included for work by subcontractors, and evidence of title for materials purchased. See FAR 52.232-5(b). The Government, however, has produced no such documents to Lumbermens.

**B. Materials Located in the DFAS Offices are Subject to Discovery.**

Defendant should have produced responsive documents from DFAS in response to Plaintiff's First Set of Requests for Production. Defendant is obligated to produce responsive documents that are "in the possession or control of the party upon whom the request is served." RCFC 34(a). "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are in the possession of a non-party." Cabot, 35 Fed. Cl. at 83. "'Control' comprehends not only possession but also the right, authority, or ability to obtain the documents." Id.

Documents possessed by DFAS are clearly within the custody and control of Defendant. DFAS is an agent of Defendant, and Defendant has the legal right to obtain documents from DFAS upon its demand. As such, responsive documents possessed by DFAS are discoverable and should be produced.

**C. The Government's Proffered Basis for Refusing to Produce Such Documents is Dubious and is also Adverse to Federal Recordkeeping Requirements.**

After first questioning the relevance and necessity of Lumbermens' discovery request for several weeks, Defendant then announced on December 7, 2005 that a paperwork error made it impossible to locate the requested DFAS documents within the Federal Records Center. Rosenfield Decl. ¶22, Ex. N. No further explanation was provided, nor was any documentation or correspondence provided from the Federal Records Center or relevant DFAS office that can verify Defendant's claim. Id. Absent further information, it is questionable whether Defendant has exhausted all potential means of locating the requesting documents. Moreover, even if it is truly impossible to locate these documents, such failure contravenes the Federal Records Act, 44 U.S.C. Chapters 21, 29, 31, and 33.

The Federal Records Act requires "efficient and effective records management" that ensures "accurate and complete documentation of policies and transactions of the federal government. . . and judicious preservation and disposal of records." 44 U.S.C. § 2902. The legislative history of the records acts shows that "Congress intended, expected, and positively desired private researchers and private parties whose rights may have been affected by government actions" to have access to the documentary history of such actions. American Friends Service Committee v. Webster, 231 U.S. App. D.C. 265, 720 F.2d 29, 57 (D.C. Cir. 1983). Under the Act, every federal agency must

> make *and preserve* records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities.

44 U.S.C. § 3101 (emphasis added). In fact, according to the National Archives and Records Administration ("NARA"), federal employees have a "basic obligation" to

> [t]ake care of records so that information can be found when needed. This means setting up good directories and files, and filling materials (in whatever format) regularly and carefully in a manner that allows them to be safely stored and efficiently retrieved when necessary.

Rosenfield Decl. ¶26, Ex. P.[3]

Moreover, additional federal regulations governed the alleged transfer of the relevant DFAS documents to the Federal Records Center. Pursuant to 36 C.F.R. § 1228.154, an agency must meet various requirements before transferring records to a records storage facility. Notably, the agency is expressly required to "create documentation sufficient to identify and locate files." 36 C.F.R. § 1228.154(c). Such documentation must include information containing the creating office, a description of the record, the date of disposition action, the location of the facility, and the "control number or identifier" used to track the record. Id. Such documentation should have been completed prior to any transfer of the responsive DFAS materials to a Federal Records Center.

Based upon these statutory obligations related to the Government's handling and storing of federal records, Lumbermens first asks that the Court compel Defendant to take *all* available efforts to locate and produce the requested DFAS documents—or at least adequately demonstrate that such efforts were already taken. The requisite procedures promulgated under the Federal Records Act and NARA regulations strongly suggest that the DFAS documents should be accessible through some manner or means. Indeed, it seems possible that Ms. Ohta inquired with the wrong DFAS office. Records indicate that Landmark's invoices were sent to the DFAS office in San Diego, but Ms. Ohta instead inquired with the DFAS office in Norfolk, Virginia

[3] NARA is the independent federal agency that oversees the management of all Federal records. Under the National Archives and Records Administration Act of 1984, NARA is responsible for the adequacy of documentation and records disposition, 44 U.S.C. §2904(a), and the General Services Administration (GSA) is responsible for economy and efficiency in records disposition, 44 U.S.C. §2904(b). Federal agency records management programs must comply with regulations promulgated by both NARA and GSA. 36 CFR 1220.2.

because, according to her, "the San Diego office did not make the payments." See Rosenfield Decl., ¶20, Ex. L. Documents produced by Defendant, however, show that the Navy's contracting officer mailed Landmark's invoices to the DFAS office in San Diego, California, where the request was presumably processed and paid. See Rosenfield Decl., ¶10, Ex. F. A Federal Express airbill, for instance, shows that Landmark's Invoice No. 5515-1 was sent via overnight delivery from Oak Harbor, Washington to "DFAS Oakland via DFAS San Diego" at 4181 Ruffin Rd., P.O. Box 420730, in San Diego, California. Id.

But if, as Defendant may contend, the DFAS documents are *truly* impossible to locate, then the Government has failed to carry out its statutory responsibilities in making such documents accessible. Based upon such failure, Lumbermens should have the opportunity to file an appropriate offer of proof as to what the documents in question would establish if they were available as exhibits. See Cabot, 35 Fed. Cl. at 85 ("Adverse inferences may be drawn from [the] failure to produce these documents.") The requested documents represent essential elements of Lumbermens' case, and it would be inequitable to permit Defendant to benefit from its failure to adhere to statutory obligations.

## VI. CONCLUSION

For the foregoing reasons, Lumbermens requests that the Court compel the Government to produce the DFAS documents requested by Lumbermens. Furthermore, pursuant to RCFC 37(a)(4), Lumbermens should be awarded its reasonable expenses in bringing this motion, including attorneys fees.

Undersigned certifies that counsel for Lumbermens has in good faith conferred or attempted to confer with counsel for the Government in an effort to obtain the relief requested

herein without court action.

Respectfully submitted,

PRESTON GATES & ELLIS LLP

By /s/
Mark G. Jackson

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

December 23, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2005, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all parties of record.

/s/
Judy Goldfarb