No. 04-1255C
(Judge Robert H. Hodges, Jr.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DECLARATION OF KEVIN A. ROSENFIELD IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION FOR SANCTIONS

---

Mark G. Jackson
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580
(206) 623-7022

Kevin A. Rosenfield declares and states as follows:

1. I am an attorney with Preston, Gates & Ellis, LLP, counsel of record for plaintiff Lumbermens Mutual Casualty Company ("Lumbermens") in the above captioned matter. I am over the age of eighteen and make this declaration based on my personal knowledge.

2. Attached to this declaration as **Exhibit A** is a true and correct copy of relevant provisions from Contract Number N44255-97-C-5515 ("Contract") between the United States Navy ("Navy") and Landmark Construction Company ("Landmark").

3. In the Spring of 2004, Lumbermens and Defendant exchanged all Project-related documents in their possession pursuant to RCFC 26(a). Within Defendant's production, Lumbermens received various payment requests that were submitted by Landmark during the course of its work on the Project and certified by the Navy. These included a total of thirteen invoices: Invoice No. 5515-1, dated July 6, 2000, through Invoice No. 5515-13, dated June 20, 2001.

4. As examples of the invoice packets sent to DFAS, Lumbermens possesses the invoice packet for Invoice No. 5515-10 that DFAS received in March 2001. This invoice packet includes a contractor invoice and certification, Navy endorsement and certification, and Landmark's updated NAS. Attached to this declaration as **Exhibit B** is a true and correct copy of this invoice packet.

5. Of the thirteen invoice packets produced to Lumbermens, six are missing an attaching NAS: Invoice Nos. 5515-1, 5515-2, 5515-3, 5515-4, 5515-6, and 5515-11. Lumbermens does not currently possess the NAS that was submitted by Landmark with any of these six invoices.

6. Additionally, two of the invoice packets produced to Lumbermens are missing the requisite NAVFAC Form: Invoices No. 5515-7 and 5515-13. This form is needed to demonstrate whether the Navy ultimately approved Landmark's payment request, and the extent of the Navy's recommended payment. As an example of the form,

a true and correct copy of NAVFAC Form 7300/41 from Invoice No. 5515-1 is attached to this declaration as **Exhibit C**.

7. Additionally, Lumbermen's copy of Invoice No. 5515-9 does not contain a signature from the Navy that certifies the payment but merely states that "John Signed Orig." An original document apparently exists that includes a government signature, but Lumbermens has not received a copy of such a document. Attached to this declaration as **Exhibit D** is a true and correct copy of Lumbermen's copy of Invoice No. 5515-9.

8. The Payments Clause of the Contract, FAR 52.232-5(b), required Landmark's requests for progress payments to include, among other things, an itemization of the amounts requested, a listing of the amounts included for work by each subcontractor, and "satisfactory evidence" of title in order to receive payment for material. The Contract also required Landmark to submit three copies of the "Required Sorts" and the "Look-Ahead Report" with each payment request. Lumbermens, however, has received no such documents.

9. In an effort to obtain the aforementioned missing documents, Lumbermens submitted Plaintiff's First Set of Requests for Productions to Defendant on September 8, 2005. Among other things, Lumbermens requested that Defendant produce all Network Analysis Schedules, invoices, financial data, and documents evidencing title to purchased materials. In response, Defendant did not produce any documents, stating that "All responsive documents have previously been produced." Attached to this declaration as **Exhibit E** is a true and correct copy of Defendant's Responses to Plaintiff's First Set of Requests for Productions to Defendant.

10. Once approved and certified by Navy's contracting officer, Landmark's payment request documentation was apparently mailed to the Defense Finance and Accounting Services ("DFAS") office in San Diego, California, where the request was processed and paid. For instance, attached to this declaration as **Exhibit F** is a true and correct copy of the Federal Express airbill showing overnight delivery of Invoice No.

5515-1 to DFAS in San Diego. This invoice was sent from Oak Harbor, Washington to "DFAS Oakland via DFAS San Diego" at 4181 Ruffin Rd., P.O. Box 420730, in San Diego, California.

11. I contacted Ms. Ohta via phone on November 4, 2005 and requested that she obtain responsive documents from DFAS. Ms. Ohta agreed to obtain such documents. I sent an email confirmation of this discussion to Ms. Ohta immediately after our conservation, providing the address of the DFAS San Diego office and confirming the scope of our document request. Attached to this declaration as **Exhibit G** is a true and correct copy of my confirmation email sent to Ms. Ohta.

12. Additionally, shortly before my conversation with Ms. Ohta, Lumbermens was informed by John Furlong, the Vice President of Atherton Construction, that Defendant had previously served a third-party subpoena upon Atherton. Lumbermens had not received any notice of this subpoena from Defendant.

13. Lumbermens learned from Atherton that the requested documents were sent to a copy center in Las Vegas, Nevada for copying and production to Defendant. Lumbermens thereafter contacted the copy center and, at its own expense, obtained a copy of the documents being sent to the Government.

14. In my conversation with Ms. Ohta on November 4, I thus also notified her that Lumbermens had learned of Defendant's third-party subpoena to Atherton. I informed her that, having failed to provide prior notice to Lumbermens, Defendant was in violation of RCFC 45. Ms. Ohta indicated that the subpoena to Atherton was the only third-party subpoena that she had served in violation of RCFC 45, and, upon assurance that this would not happen again, Lumbermens decided not to notify the Court of the violation.

15. Ms. Ohta was previously made aware that counsel for Lumbermens did not represent Atherton in the instant action. Attached to this declaration as **Exhibit H** is a true and correct copy of this correspondence.

16. Having thereafter received no further contact from Ms. Ohta, I sent a follow-up email on November 14 to check on the status of the requested DFAS documents. Ms. Ohta replied on November 18, stating that "[i]t is not clear that DFAS has any information that has not already been provided, that is, the invoices / public vouchers." Attached to this declaration as **Exhibit I** is a true and correct copy of this correspondence.

17. In response to Ms. Ohta's email of November 18, I pointed out to her that Lumbermens did not currently possess a complete set of Landmark's invoices—which is why we requested the DFAS documents in the first place. Co-counsel Mark Jackson also responded to Ms. Ohta's email by reminding her that she had failed to provide notice prior to issuing the subpoena to Atherton. Attached to this declaration as **Exhibit J** is a true and correct copy of this correspondence.

18. On November 21, Ms. Ohta responded that "[t]he only documents that DFAS has are the invoices, the prompt payment certification, and the contract. . . . DFAS does not perform any type of analysis into the merits of the payment." Ms. Ohta thereby confirmed that DFAS indeed possessed responsive documents. Attached to this declaration as **Exhibit K** is a true and correct copy of this correspondence.

19. I responded via telephone that same day and reiterated that Ms. Ohta obtain and produce the DFAS documents. Ms. Ohta stated that DFAS was currently in the process of "obtaining the documents from storage."

20. On November 22, Ms. Ohta wrote that she had contacted the DFAS office in Norfolk, Virginia and "asked that the documents be retrieved from the Federal Records Center." It is unclear why she contacted the Norfolk office instead of the San Diego office, which, as previously discussed, is where the Navy's contracting officer sent Landmark's invoices. Attached to this declaration as **Exhibit L** is a true and correct copy of this correspondence.

21. On November 30, I was contacted via email by Linda Gruber from the U.S. Navy Engineering Field Activity, Northwest. On behalf of Ms. Ohta, Ms. Gruber offered to produce a CD of electronic files containing invoices numbers 8 through 25. Lumbermens already had this CD in its possession, however, and I again reiterated Lumbermens request for the DFAS documents. Attached to this declaration as **Exhibit M** is a true and correct copy of this correspondence from Ms. Gruber.

22. On December 7, Ms. Ohta stated via email that, because the "paperwork that is filled out when documents are sent to the Federal Records Center for storage could not be found," the requested DFAS documents could not be retrieved. Attached to this declaration as **Exhibit N** is a true and correct copy of this correspondence.

23. On December 20, John Egbert of Global Construction Services, Inc. informed me that, two months earlier, Defendant had served Global Construction Services with a third-party subpoena for documents related to the Project. Global Construction was previously hired by Lumbermens to conduct the initial analyses of surety loss from Landmark's default. Attached to this declaration as **Exhibit O** is a true and correct copy of Defendant's subpoena to Global Construction, as faxed to me by Mr. Egbert.

24. According to Mr. Egbert, he responded to the Government's subpoena by producing two boxes to Ms. Ohta that were labeled "Landmark." After Ms. Ohta had time to review the documents, she informed him that "experts" had told her that the documents produced by Global Construction were for the wrong Landmark project, and Mr. Egbert would need to search for additional documents. Mr. Egbert is currently trying to adhere to the request. He initially contacted counsel for Lumbermens because he was trying to locate documents responsive to Defendant's subpoena.

25. Defendant did not provide Lumbermens with notice prior to serving the third-party subpoena upon Global Construction. In fact, Defendant has not provided any

notice whatsoever of the issued subpoena, nor has Defendant provided copies of the documents produced to Defendant by Global Construction.

26. Attached to this declaration as **Exhibit P** is a true and correct copy of the website page located at http://www.archives.gov/records-mgmt/basics/, as shown on December 22, 2005. This page is from the official website of the U.S. National Archives & Records Administration.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 23rd day of December, 2005 at Seattle, Washington.

Kevin A. Rosenfield