IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY,<br><br>Plaintiff,<br><br>v.<br><br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-1255C<br>(Judge Robert H. Hodges) |

DECLARATION OF LESLIE CAYER OHTA IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

I, Leslie Cayer Ohta, declare that the following is true and correct:

1. I am the attorney within the Department of Justice having primary responsibility for representing the United States in this matter. I have prepared this declaration to respond to the factual allegations made by Lumbermens in its motion for sanctions regarding the fact that I had subpoenas served upon two entities without providing Lumbermens the requisite advance notification.

2. Prior to the service of any request for production by Lumbermens Mutual Casualty ("Lumbermens") upon the Government, the Government provided, at no cost to Lumbermens, 16,760 pages of documents from the agency files. The documents were all bate-stamped. I was informed by agency counsel that the agency had provided me with all documents in their possession concerning the contract in this case. No documents were withheld based upon the assertion of a privilege or for any other reason. These documents were provided to Lumbermens in early February 2005.

3. Lumbermens provided to the Government, at no cost, 7,526 pages of documents that Lumbermens claimed constituted all of the documents in the possession of Lumbermens

concerning the contract in dispute. These documents were received by the Government on February 17, 2005.

4. Because Lumbermens was the surety for Landmark Construction Company ("Landmark"), retained Global Construction Company ("Global"), and retained Atherton Construction Company ("Atherton") as the takeover contractor after Landmark defaulted, I expected that included within Lumbermens files would be all of the files from Lumbermens, all of the files from Landmark, all of the documents from Global, and all of the files form Atherton.

5. Based upon my understanding that Lumbermens had produced all documents in its possession to the Government, and based upon my belief that Lumbermens had not been able to provide all of the documents that I would expected to be found within Landmark's, Atherton's, and Global's files, I decided to serve subpoenas duces tecum upon those three entities in an attempt to obtain additional records.

6. On October 13, 2005, I issued subpoenas to be served upon Global and Atherton. I did not serve a subpoena upon Landmark

7. On October 13, 2005, I inadvertently failed to provide notice to Lumbermens counsel that I intended to serve subpoenas upon Global and Atherton. While there is no excuse for my oversight, I was not acting in bad faith or in an attempt to circumvent the discovery process. The documents sought were documents generated during the performance of a Government contract by two entities with which Lumbermens had a contractual relationship; were documents to which the Government was entitled; and were documents that ordinarily would have been in the possession of Lumbermens.

8. On October 17, 2005, the subpoenas were served upon Atherton and Global.

9. In a letter dated October 20, 2005, counsel for Atherton informed me that Atherton had no objection to producing the requested documents.

10. On November 4, 2005, counsel for Lumbermens called me to complain that I had served a subpoena upon Atherton without providing him with the requisite notification. I apologized to Lumbermens' counsel for my oversight and agreed to his request that I fax him copies of all subpoenas served in connection with this matter. I do not recall explicitly stating to Lumbermens' counsel during that conversation that I had only served one subpoena in connection with this case because I had no recollection of that one way or the other.

11. I immediately faxed Lumbermens' counsel a copy of the Atherton subpoena. I did not fax counsel for Lumbermens a copy of the Global subpoena because I did nor remember preparing one. When I looked in the file marked "subpoena" that I maintain for this case, only the Atherton subpoena was contained in it. On December 26, 2005, while working on the case of Gladstone v. United States, Fed. Cl. No. 04-1245, I came across the Global subpoena in the file marked "subpoena" in the Gladstone case, and it has since been faxed to counsel for Lumbermens.

12. Immediately upon receiving the documents produced by Atherton in response to the subpoena I had them copied and sent by Federal Express to counsel for Lumbermens.

13. Immediately upon receiving the documents produced by Global in response to the subpoena I had them copied and sent by Federal Express to counsel for Lumbermens.

14. Only after sending the Global documents to counsel for Lumbermens did I learn that the documents pertained to another case. I later learned from John Egbert with Global that he had previously provided all of Global's documents pertaining to the contract that is the subject

matter of this dispute to counsel for Lumbermens and therefore possessed no documents that were responsive to the subpoena.

15. In my opinion, Lumbermens would have had absolutely no grounds upon which to object to the service of those subpoenas since Lumbermens had had a contractual relationship with both of those entities in connection with the contract that is the subject matter of this lawsuit and should have provided all documents in the possession of Global and Atherton to the Government.

16. I recognize and understand that the purpose of Rule 45(b)(1) of the Rules of the United States Court of Federal Claims is to protect not only litigants and third-parties but to protect the integrity of the Courts's processes. In that regard, I apologize to the Court for my oversight and assure the Court that it will not happen again.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2006.

____________________________________

Leslie Cayer Ohta