**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-1255 C<br><br>(Honorable Robert H. Hodges, Jr.) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS**

## I. INTRODUCTION

While admitting that it violated the express requirements of RCFC 45, Defendant improperly seeks to mitigate this violation by casting blame upon Plaintiff and portraying the violation as inconsequential and harmless. Lumbermens, however, has fully and consistently complied with its discovery obligations and cannot be expected to independently obtain documents that are not in its possession or under its control. Furthermore, violation of the subpoena power is a serious infraction that—regardless of bad faith or resulting prejudice—warrants appropriate sanctions. Because the risks attached to the subpoena power are considerable, mere purported "inadvertence" does not excuse Defendant's misconduct. Plaintiff's recommended sanctions against Defendant are appropriate and should be imposed.

## II. ARGUMENT

### A. Lumbermens Has Fully and Consistently Adhered to Its Discovery Obligations.

Defendant attempts to excuse and mitigate its repeated Rule 45 violations by wrongly deflecting blame upon the scope of Lumbermens' production. Defendant makes the novel—and wholly unsupported—claim that Lumbermens was required to produce all responsive documents possessed by two separate legal entities, Global Construction Services, Inc. and Atherton

Construction, Inc. Neither of these entities, however, are an agent or representative of Lumbermens—or vice-versa. Accordingly, Defendant's argument contradicts RCFC 34, which limits the required scope of production to documents that "are in the possession, custody or control of the party upon whom the request is served." See RCFC 34(a).

Notably, Defendant does *not* allege that Lumbermens failed to produce all responsive documents in its possession. Defendant does not deny that, within Lumbermens' initial production to Defendant, Lumbermens produced all responsive documents in its possession from Global and Atherton. Instead, Defendant contends that the scope of Lumbermens production somehow extended to responsive documents possessed by other entities. According to Defendant's allegation, simply because Global and Atherton (1) "had a contractual relationship with Lumbermens" and (2) generated documents during the performance contact, Lumbermens thereby had a duty to obtain documents on its own accord from Global and Atherton. See Def. Resp. at 2. Such contention is nonsensical and baseless. If forced to adhere to Defendant's logic, Lumbermens would be required to obtain responsive documents from numerous suppliers and sub-contractors that performed work on the construction project in question. Such requirements would greatly exceed the scope of RCFC 34.[1]

Because documents possessed by Global and Atherton are not in its "possession, custody or control," Lumbermens was not required to produce documents possessed by Global and Atherton. And, to the extent Lumbermens possessed such documents, they were previously produced to Defendant by Lumbermens. Defendant may wish to share its Rule 45 culpability

[1] Ms. Ohta also falsely claims that Defendant's third-party subpoenas only sought "documents that ordinarily would have been in possession of Lumbermens." See Def. Resp. at p. 3. The Atherton subpoena, however, broadly asks that the contractor produce all documents pertaining to the construction project at issue. There is no explanation (nor sensible reason) why Lumbermens—the surety—would possess every project-related document from the general contractor on a multi-million dollar construction project.

with others, but, in truth, the blame lies with Defendant and Defendant alone.

**B. Sanctions Are Appropriate for Rule 45 Violations Even Absent Evidence of Harm or Prejudice to the Opposing Party.**

Defendant is mistaken in asserting a "no harm, no foul" defense. Because the risks attached to the misuse of the subpoena power are considerable, any transgression is considered sanctionable—regardless of resulting prejudice to the opposing party. See, e.g., Murphy v. Board of Educ., 196 F.R.D. 220, 223 (D.N.Y. 2000) ("Because Rule 45 is so clear and because plaintiff's counsel repeatedly violated it, sanctions would be appropriate based on those facts alone."); Spencer v. Steinman, 179 F.R.D. 484, 489 (D. Pa. 1998) (rejecting attorney's "no harm, no foul" defense where failure to provide notice did not cause harm and was due to an alleged oversight by a paralegal).

Irrespective of whether resulting harm occurs, "[t]he mere fact that an attorney abuses the subpoena power directly implicates the court itself and creates an embarrassment for the institution." United States v. Santiago Lugo, 904 F. Supp. 43, 48 (D. P.R. 1995). The notice requirements of Rule 45 are not just to protect the opposing party but also to protect the interests of the public at large:

> [M]isuse of the subpoena power is not limited to the harm it inflicts upon the parties, it also compromises the integrity of the court's processes. When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to defendant of the subpoenas cause[s] injury to the public.

Spencer, 179 F.R.D. at 489. Defendant's misuse of the subpoena power thus served to erode the integrity of the court's process, and sanctions are appropriate regardless of resulting harm or prejudice to the opposing party.

Moreover, Defendant's Rule 45 violations actually *did* cause harm to the third-party, and Lumbermens likely *would* have objected to the subpoena issued by Defendant to Global. In

addition to the duty imposed by Rule 45 toward the opposing party, "the general duty of an attorney *toward third parties* is violated when a subpoena is misused." Santiago Lugo, 904 F. Supp. at 48 (emphasis added). As Defendant admits, Global initially responded to the subpoena by producing documents to Defendant that were unrelated to the instant litigation. See Ohta Decl. ¶14. If Defendant had properly adhered to Rule 45, Lumbermens could have—and would have—informed Ms. Ohta that it had already produced all of Global's documents that related to the instant litigation. This would have spared Global from spending the time and resources needed to review, compile, and send irrelevant documents to Ms. Ohta.

**C. Sanctions Are Appropriate for Rule 45 Violations Even Absent Evidence of Bad Faith.**

Defendant also wrongly asserts that sanctions are inappropriate because Lumbermens does not proffer evidence of bad faith. See Def. Resp. at 5. When Rule 45(a) was amended in 1991 to allow counsel to issue subpoenas without obtaining them from the clerk of the court, the Advisory Committee noted that the change necessitated "increased responsibility and liability for the misuse of this power." Fed. R. Civ. P. 45(a), Advisory Committee Notes to 1991 Amendments. Courts thus consistently sanction parties for Rule 45 notice violations even without evidence of bad faith. See, e.g., Spencer, 179 F.R.D. 484; Santiago-Lugo, 904 F. Supp. at 48; Potomac Elec. Power Co. v. Electric Motor Supply, Inc., 190 F.R.D. 372, 382 (D. Md. 1999).

Indeed, even for discovery violations unrelated to Rule 45(a), both RCFC 26(g) and RCFC 37 permit an award of sanctions without evidence of bad faith. Sanctions are improper only if the offending party can show "substantial justification" for the transgression. See RCFC 26(g)(3); Eureka Fin. Corp. v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 186 (E.D. Cal. 1991) (noting that lack of substantial justification does not require bad faith; negligence, for

instance, is sufficient**)**; Allender v. Raytheon Aircraft Co., 220 F.R.D. 661, 666 (D. Kan. 2004); ("At a minimum, Rule 26(g) provides authority for awarding monetary sanctions."**)**. Defendant asserts that the Federal Circuit in Hendler v. United States, 952 F.2d 1364, 1368 (Fed. Cir. 1991), precluded Rule 37 sanctions absent a finding of bad faith. See Def. Resp. at p.5. Defendant misstates this decision. In Hendler, the disputed discovery transgression involved whether "plaintiffs' responses to certain interrogatories were sufficiently detailed and forthcoming." Hendler, 952 F.2d at 1367. Not only was there no evidence that the plaintiffs in Hendler had acted in bad faith, there was no evidence that they had done *anything* wrong. Id. at 1368. As the court logically pointed out, the movant must show *either* bad faith *or* misconduct—intentional or otherwise—prior to an award of sanctions. Id. Here, Defendant undisputedly and admittedly has engaged in some level of misconduct, violating an express rule and abusing the subpoena power. Sanctions are therefore permitted as an appropriate response to Defendant's violation, including "an order to pay the amount of the reasonable expenses incurred because of the violation." See RCFC 26(g)(3).

## D. Defendant's Response Does Not Adequately Satisfy Plaintiff's Request for Sanctions.

Although Defendant contends that its response and attaching declaration satisfies "each of [Plaintiff's] substantive demands," this alone is insufficient. First, Defendant's motion fails to assuage Plaintiff's fears regarding additional third-party subpoenas issued by Defendant: nowhere does Defendant's counsel affirmatively declare that it has not issued third-party subpoenas other than Atherton and Global. Second, as a deterrent against Defendant in the future, the Court should admonish Defendant against issuing any future third-party subpoenas without prior notice to Lumbermens. Third, as a measure of fairness to Lumbermens for the expense in bringing the violation to the attention of the Court—and/or to serve as a further

deterrent and penalty against Defendant—the Court should direct Defendant to pay resulting attorneys fees incurred by Lumbermens.[2]

## III. CONCLUSION

For the foregoing reasons, the Court should impose the recommended sanctions upon Defendant.

Respectfully submitted,

PRESTON GATES & ELLIS LLP

By_/s/___________________________
Mark G. Jackson

Counsel of Record for Plaintiff
LUMBERMENS MUTUAL
CASUALTY COMPANY

Derek D. Crick
Kevin A. Rosenfield
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

January 11, 2006

[2] Furthermore, Defendant's response wrongly implies that Defendant produced the Global subpoena irrespective of Plaintiff's motion for sanctions. Defendant's counsel states that she produced the Global subpoena on her own accord after discovering it on December 26, 2005 while working on a different case. See Ohta Decl. ¶11. Plaintiff's motion for sanctions, however, was filed *three days earlier*—on December 23—and it defies believability that Defendant's subsequent production of the Global subpoena was not the direct result of Plaintiff's motion. (Indeed, Defendant did not fax Lumbermens the Global subpoena until January 9, 2006, nearly three months after the subpoena was initially served.)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all parties of record.

/s/______________________
Judy Goldfarb