IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br>Plaintiff, | ) | |
| v. | ) | No. 04-1255C<br>(Judge Robert H. Hodges) |
| THE UNITED STATES,<br>Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits its response to plaintiff's motion to compel. This response is supported by the declarations of Leslie Cayer Ohta, Betty J. Fenlon, Wiley Wright, and Richard Paullin. Plaintiff, in its December 23, 2005 motion, seeks a Court order compelling the Government to produce documents from the Department of Defense, Defense Finance and Accounting Service ("DFAS"). Plaintiff's motion is wholly lacking in merit for four reasons. Firstly, counsel for plaintiff failed to serve a request for production upon the Government seeking the records from DFAS. Secondly, counsel for plaintiff has failed to make a good faith effort to resolve the parties' discovery dispute before filing its motion to compel. Thirdly, the Government has made every effort to locate the requested documents and has been unable to do so. Fourthly, plaintiff has not, and can not, demonstrate that the requested documents are necessary in order for plaintiff to prosecute this case.

BACKGROUND

Lumbermens Mutual Casualty ("Lumbermens") alleges in its August 4, 2004 complaint that the United States, acting through the Department of the Navy, entered into a contract with Landmark Construction Company ("Landmark") for the repair and renovation of military housing at the Naval Air Station, Whidbey Island, Oak Harbor, Washington. Complaint ("Compl.") ¶ 5. Lumbermens provided performance and payment bonds to Landmark. Compl. ¶ 8.

According to Lumbermens, during Landmark's performance of the contract, the Navy failed to require that Landmark provide a network schedule analysis ("NAS") that fully complied with the requirements of the contract. Compl. ¶¶ 31, 32. Thus, according to Lumbermens, payments made to Landmark pursuant to an allegedly flawed NAS were not commensurate with the progress Landmark actually had made on the project as of the time of such payments. Comp. ¶¶ 64, 66 . As a consequence, Lumbermens alleges, at the time that the Navy terminated Landmark's contract for default, the Navy had paid Landmark approximately 40% of the modified contract price while only approximately 10% and 15% of the units had been completed. Compl. ¶ 71, 72.

With respect to the period of Landmark's performance of the contract, Lumbermens, as surety to Landmark, alleges that the Government impaired its suretyship rights based upon Lumbermens' allegations that the Navy paid Landmark in accordance with a NAS that failed to comply with the contract specifications; that the Navy made improper payments to Landmark for materials, services, and personnel; and that the Navy failed to withhold progress payments. Compl. ¶¶ 92-182.

## DISCUSSION

## I. Plaintiff Failed To Serve A Request For Production Seeking The Records From DFAS

Nowhere do the rules require that a party respond to an informal, verbal request to produce documents. As detailed below, it is clear beyond cavil that Lumbermens did not serve upon the Government a formal request for the DFAS documents. Instead, an attorney for DFAS made a telephone request to Government counsel that she provide Lumbermens with copies of all documents in the possession or control of DFAS pertaining to the Landmark invoices. This Government counsel voluntarily agreed to do. When Government counsel was unable to produce

the requested documents, instead of discussing the situation and its ramifications, if any, with Government counsel, counsel for Lumbermens, with no prior notification, with no good faith attempt to resolve this matter, filed its baseless motion to compel on December 23, 2005, just before the beginning of the Christmas and New Year's holiday season. Instead of merely responding to the Court that Lumbermen's motion to compel was not well taken in the first instance because Lumbermens had not served a request for production upon the Government, Government counsel took the extra time, and made the extra effort, to provide a detailed factual basis upon which this Court can, and should, deny Lumbermens motion to compel upon the four independent grounds discussed in this opposition.

Prior to the service of any request for production by Lumbermens upon the Government, the Government provided, at no cost to Lumbermens, 16,760 pages of documents from the agency files. Declaration of Leslie Cayer Ohta in support of defendant's opposition to plaintiff's motion to compel ("Ohta Decl."). No documents were withheld based upon the assertion of a privilege or for any other reason. Id. These documents were provided to Lumbermens in early February 2005. Lumbermens provided to the Government, at no cost, 7,526 pages of documents that Lumbermens claimed constituted all of the documents in the possession of Lumbermens concerning the contract in dispute. Id. Numerous pages of the documents were withheld based upon the assertion that they contained privileged material. Id. No privilege log was provided. Id. These documents were received by the Government on February 17, 2005. Id.

On or about September 8, 2005, Lumbermens served upon the Government its First Request for Production of Documents. Id. There is no reference to DFAS in those requests. Id. While there are references to "payment requests," such references can not reasonably be construed to refer to DFAS. Id. For example, request for production number

three reads as follows: "Produce all internal memoranda, correspondence, e-mails, diaries, reports, telephone call records, and any other documents relating to your approval of each of Landmark's Payment Requests." Id. Because it was the procuring agency, and not DFAS, that approved Landmark's payment requests, it is not reasonable to contend that Lumbermens was seeking records from DFAS. Id. Similarly, request for production number four sought "financial and accounting data, including but not limited to, invoices and payroll documents reviewed by the United States in support of Landmark's Payment Requests." Id. Again, since DFAS's role is wholly ministerial in making payment on Government contracts, that is, DFAS does not approve the payments, it is not reasonable to contend that Lumbermens was seeking documents from DFAS in this request. Id.

On October 11, 2005, the Government served upon Lumbermens our response to Plaintiff's First Request for Production of Documents. Id. In that response, the Government indicated that all responsive documents had been previously provided. Id.

Contrary to Lumbermens assertion, Lumbermens neither explicitly nor implicitly requested the DFAS documents in a formal request for production. Government counsel's interpretation of what Lumbermens requested in its request for production was eminently reasonable. Moreover, that interpretation was based upon Government counsels' extensive experience as a Department of Justice trial attorney during which she never sought to obtain documents from other than the cognizant component of the agency directly involved in the litigation unless specifically requested to do so. Specifically, while Department of Defense ("DOD") contracts for construction generally involve DFAS and other DOD components, in litigation involving such contracts, unless specifically asked to do so, Government counsel does not request records directly from either of those two components of DOD, and thus did not do so

in this case.

Thus, Lumbermens, never having served a written request for the DFAS documents, acted without justification in filing this motion to compel. Accordingly, this motion to compel is baseless, if not frivolous, and should be denied.

## II. Plaintiff Has Failed To Make A Good Faith Effort To Resolve The Parties' Discovery Dispute Before Filing Its Motion to Compel

As a pre-requisite to the filing of a motion to compel, Lumbermens counsel was required under rule RCFC 37 to give the Government reasonable notice before the motion was filed and was required to first consult with the Government in a good faith attempt to resolve the dispute. This Lumbermens has utterly failed to do. In its motion, Lumbermens bald assertion that "[u]ndersigned certifies that counsel for Lumbermens has in good faith conferred or attempted to confer with counsel for the Government in an effort to obtain the relief requested herein without court action," Plaintiff's Motion To Compel ("Motion")," is unsupported and unsupportable. In fact, Lumbermens has not, and cannot, point to a single telephone message or e-mail that Government counsel did not respond to. Lumbermens similarly cannot identify a single question that was posed to Government counsel that went unanswered. The best, apparently, that Lumbermens is able to allege is that, in the opinion of Lumbermens' counsel, the statements made by Government counsel were "dubious" and that her efforts to obtain the requested documents were "questionable." Motion at 10. For this reason alone, Lumbermens' motion should be denied.

On November 4, 2005, Government counsel received a telephone call from Kevin Rosenfield, an attorney for Lumbermens, asking for documents from DFAS. Id. This was the first time that the Government had been made aware that Lumbermens wanted documents that

were in the possession of DFAS. Id. Government counsel thought the request was unusual since the role of DFAS is wholly ministerial, that is, DFAS simply accepts the certifications from the procuring agency and pays the invoices. Id. DFAS does not independently analyze the merits of the contractor's invoice and, therefore, does not generate any documents pertaining to the appropriateness of the Government's paying the invoice. Id. The only documents that DFAS would be expected to have would be copies of Landmark's invoices and supporting documents, documents that one would expect Lumbermens, as surety for Landmark, to have given that Lumbermens in pursuing this litigation based upon what it asserts was the improper payments of improper invoices, and the certifications provided by the procuring agency authorizing payments. Id. In any event, purely as a matter of good faith cooperation, because under the applicable rules there was requirement to respond, Government counsel agreed to obtain the requested documents directly from DFAS. Id.

Government counsel informed Lumbermens' counsel that the only information that DFAS had concerning the Landmark invoices was contained in the screen prints, copies of which were provided to Lumbermens. Id. Lumbermens' counsel was informed that the requested documents could not be retrieved from the Federal Records Center, where they had been sent by DFAS for storage, because DFAS San Diego could not locate the information needed to retrieve the boxes containing the requested records, that is, the box's accession number. Id. Without a box accession number, it is impossible for the Federal Records Center to retrieve files. Id.

Because Government counsel had been informed by Richard Paullin and Wiley Wright, the experts who the Government had retained to assist in analyzing the issues in this case, that they were able to analyze the issues in this case based upon the available documents, in a subsequent communication, Government counsel asked counsel for Lumbermens to identify

specifically what missing information pertaining to the invoices he believed was critical to Lumbermens' analysis. Id. Lumbermens' counsel refused to provide Government counsel with that information. Id.

At the time that conversation took place, Government counsel believed that counsel for Lumbermens had accepted her representation concerning the DFAS documents and that that was the end of the matter. Id. If counsel for Lumbermens had inquired as to what precisely the Government had done in an effort to locate the requested documents, that information would have been provided. Id. Further, Government counsel would have informed Lumbermens' counsel that her experts had been able to assemble virtually all of the documents pertaining to each of the thirteen invoices and were of the opinion that the missing, or never generated documents, had no impact upon their ability to analyze the issues raised by Lumbermens in its complaint. Lumbermens's counsel, on the contrary, affirmatively indicated that he was not interested in discussing whether the Government's inability to access the requested documents would negatively impact the litigation. Id.

Government counsel heard nothing else about this matter until she was served with Lumbermens motion to compel. Id. In summary, the Government was not provided with notice that Lumbermens intended to file a motion to compel the production of the DFAS documents. Moreover, the Government was not provided with the opportunity to discuss the efforts the Government had made to locate the requested documents and the impact, if any, the Government's inability to produce the requested documents might have on the parties ability to appropriately and adequately analyze the issues in the case. For this reason alone, Lumbermens' motion to compel is unnecessary and inappropriate, and should be denied.

III. The Government Has Taken All Reasonable Steps To Locate The Requested Documents

And Has Been Unable To Do So.

In attempting to obtain the Landmark invoices, with supporting documentation, directly from DFAS, during November and December 2005, Government counsel had numerous conversations and exchanged numerous e-mails with three individuals at DFAS San Diego who are knowledgeable about the DFAS's payment procedures and document retention procedures. Because initially DFAS San Diego thought the Landmark invoices had been paid under the One Pay system, it was suggested that Government counsel contact DFAS Norfolk. After contacting DFAS Norfolk, Government counsel learned that the Landmark invoices had been paid under the FIS system by DFAS San Diego and DFAS Oakland. Government counsel then again contacted DFAS San Diego. DFAS San Diego confirmed that the invoices had been paid using the FIS system. Screen prints of all data pertaining to the Landmark invoices in the possession of DFAS San Diego were provided to her. Those screen prints were provided to counsel for Lumbermens.

After having been served with Lumbermens motion to compel, Government counsel contacted DFAS's General Counsel's office in Washington, D.C., to assure herself that DFAS San Diego had taken all reasonable steps to locate the requested documents. The DFAS attorney assured Government counsel he was unable to determine any alternate ways to retrieve the requested DFAS documents from the Federal Records Center. Id.

The Government has taken all reasonable steps to locate the requested documents. Unfortunately, the document that is necessary to identify the accession number for the box containing the requested documents stored at the Federal Records Center, despite diligent efforts, can not be found. Declaration of Betty J. Fenlon, submitted in support of the Government's opposition to Lumbermens motion to compel. Because the Government has exhausted all means to locate the requested documents, and because the documents cannot be located, Lumbermens'

motion to compel should be denied.

IV. Plaintiff Has Not Demonstrated That It Is Prejudiced By The Government's Inability To Produce The Requested Documents.

Richard Paullin, a partner in the firm of Contract Solutions LLC, a firm that specializes in the analysis of schedules and delays in contract disputes, is analyzing the following issues in this case: whether the network analysis schedule ("NAS") submitted by Landmark met the contract specifications; whether, assuming that the NAS submitted by Landmark did not meet the contract specifications, whether the Government's ability to properly administer the contract was impeded thereby; whether the Government improperly failed to withhold progress payments from Landmark; and whether the Government improperly assessed liquidated damages. Declaration of Richard paullin submitted in support of defendant's opposition to plaintiff's motion to compel and motion for sanctions ("Paullin Decl.").

Using the thirteen invoices, together with the eleven NAS updates, Mr. Paullin performed an analysis of the timing of the costs billed to the Government by Landmark during its performance of the contract, a type of analysis is routinely performed by consultants during a schedule analysis. Id. According to Mr. Paullin, he was able to complete his analysis without the two missing NAS updates. Id.

Also, according to Mr. Paullin, while certain updated network analysis schedules, certain Navy endorsements and certification forms, and the required "sorts and the look-ahead" reports, are not available for review, those documents are not necessary to analyze the issues in this case insofar as those issues pertain to Landmark. Id.

Wiley Wright is a certified public accountant and Senior Shareholder in the firm of Rubino & McGeehin Consulting Group, a firm that specializes in providing forensic accounting,

consulting, and expert witness services to parties involved in disputes over government contract, construction, and environmental issues. Declarations of Wiley Wright submitted in support of defendant's opposition to plaintiff's motion to compel and motion for sanctions ("Wright Decl."). Mr. Wright is expected to testify concerning the Navy's alleged overpayments for doors and windows, cabinets, paint, flooring, siding, asbestos and lead abatement, personnel, site work, and materials. Id. Mr. Wright will address the costs incurred by Landmark, the contract schedule of values, the amounts billed by Landmark, the amounts paid by the Government, and the calculation of any over/under payments based on various percentage-of-completion assumptions. Id. According to Mr. Wright the documents at issue in this discovery dispute are not necessary for him to analyze the issues that he is addressing. Id.

Because Lumbermens has not, and cannot, demonstrate that it will be in any way prejudiced as the result of the Government's inability to produce the requested documents, Lumbermens' motion to compel should be denied and no adverse inference drawn from the Government's inability to produce those documents.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that plaintiff's motion to compel should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street NW
Washington, D.C. 20530

January 18, 2006

Attorneys for Defendant