IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-1255C<br>(Judge Robert H. Hodges) |

DECLARATION OF LESLIE CAYER OHTA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS

1. I am the attorney within the Department of Justice having primary responsibility for representing the United States in this matter. I have prepared this declaration to respond to the factual allegations made by plaintiff in its motion to compel the production of the Defense Finance and Accounting Service ("DFAS") documents, and in its motion for sanctions regarding the fact that I had subpoenas served upon two entities with which Lumbermens had a contractual relationship without providing Lumbermens the requisite advance notification.

2. Prior to the service of any request for production by Lumbermens Mutual Casualty ("Lumbermens") upon the Government, the Government provided, at no cost to Lumbermens, 16,760 pages of documents from the agency files. The documents were all bate-stamped. I was informed by agency counsel that the agency had provided me with all documents in their possession concerning the contract in this case. No documents were withheld based upon the assertion of a privilege or for any other reason. These documents were provided to Lumbermens in early February 2005.

3. Lumbermens provided to the Government, at no cost, 7,526 pages of documents that Lumbermens claimed constituted all of the documents in the possession of Lumbermens

concerning the contract in dispute. Numerous pages of the documents were withheld based upon the assertion that they contained privileged material. No privilege log was provided. These documents were received by the Government on February 17, 2005.

4. On or about September 8, 2005, Lumbermens served upon the Government its First Request for Production of Documents. There is no reference to DFAS in those requests. While there are references to "payment requests," such references can not reasonably be construed to refer to DFAS. For example, request for production number 3 reads as follows: "Produce all internal memoranda, correspondence, e-mails, diaries, reports, telephone call records, and any other documents relating to your approval of each of Landmark's Payment Requests." Because it was the procuring agency, and not DFAS, that approved Landmark's payment requests, it is not reasonable to contend that Lumbermens was seeking records from DFAS. Similarly, request for production number 4 sought "financial and accounting data, including but not limited to, invoices and payroll documents reviewed by the United States in support of Landmark's Payment Requests." Again, since DFAS's role is wholly ministerial in making payment on Government contracts, that is, DFAS does not approve the payments, it is not reasonable to contend that Lumbermens was seeking documents from DFAS in this request.

5. I have been an attorney with the United States Department of Justice since 1980, and have been with the Commercial Litigation Branch since 1995. In responding to hundreds of document requests as a Torts Branch attorney, as an Assistant United States Attorney, and as an attorney in my present position, I have never sought to obtain documents from other than the cognizant component of the agency directly involved in the litigation unless specifically requested to do so. For example, in most construction cases that I have handled in the

Commercial Litigation Branch, DFAS and other Department of Defense ("DOD") components are involved. Unless specifically asked to do so, I have not requested records directly from such components of DOD, and I did not do so in this case.

6. On October 11, 2005, I served upon counsel for Lumbermens our response to Plaintiff's First Request for Production of Documents. In that response, I indicated that all responsive documents had been previously provided.

7. On or about November 4, 2005, I received a call from Kevin Rosenfield, an attorney for Lumbermens, asking for documents from DFAS This was the first time that I had been made aware that Lumbermens counsel wanted documents that were in the possession of DFAS. I thought the request was unusual since the role of DFAS is wholly ministerial, that is, DFAS simply accepts the certifications from the procuring agency and pays the invoices. In other words, DFAS does not independently analyze the merits of the contractor's invoice, and therefore does not generate any documents pertaining to the appropriateness of the Government's paying the invoice. The only documents that DFAS would be expected to have would be copies of Landmark's invoices and supporting documents, documents that one would expect Lumbermens, as surety for Landmark, to have, and the certifications provided by the procuring agency authorizing payment. I, of course had no obligation under the rules to comply with such an informal request. Nonetheless, in a spirit of complete cooperation and good faith I agreed to obtain the requested documents directly from DFAS.

8. In attempting to obtain the Landmark invoices, with supporting documentation, directly from DFAS, I had numerous conversations and exchanged numerous e-mails with three individuals at DFAS San Diego knowledgeable about the DFAS's payment procedures and

document retention during November and December 2005. Because initially DFAS San Diego thought the Landmark invoices had been paid under the One Pay system, it was suggested that I contact DFAS Norfolk. After contacting DFAS Norfolk, I learned that the Landmark invoices had been paid under the FIS system by DFAS San Diego and DFAS Oakland. I then again contacted DFAS San Diego. DFAS San Diego confirmed that the invoices had been paid using the FIS system. Screen prints of all data pertaining to the Landmark invoices in the possession of DFAS San Diego were provided to me. Accordingly, as part of my good faith attempt to obtain the DFAS documents for Lumbermens, those screen prints were provided to counsel for Lumbermens.

9. Based upon what I had learned from DFAS San Diego (see Declaration of Betty Fenlon), I informed counsel for Lumbermens in a December 7, 2005, e-mail that I could not provide him with any documents or information from DFAS concerning the Landmark invoices other than the information that was contained in the screen prints that had previously been provided. The requested documents could not be retrieved from the Federal Records Center, where they had been sent by DFAS for storage, because DFAS San Diego could not locate the information needed to retrieve the boxes containing the requested records, that is, the box's accession number. Without a box accession number, it is impossible for the Federal Records Center to retrieve files.

10. Because I had been informed by Richard Paullin and Wiley Wright, the experts who I had retained to assist in analyzing the issues in this case, that they were able to analyze the issues in this case based upon the available documents, I asked counsel for Lumbermens to identify specifically what missing information pertaining to the invoices he believed was critical

to his analysis. Counsel refused to provide me with that information.

11. Following my informing counsel for Lumbermens that I was unable to locate the DFAS documents, I heard nothing else about this matter until I was served with Lumbermens motion to compel. Given the efforts that I had made to respond to Lumbermens informal request for the DFAS documents (without requiring a request pursuant to RCFC 34), documents the absence of which will have no impact upon the outcome of this litigation, I was stunned to be served with this motion to compel. I certainly, and I think reasonably, believed that counsel for Lumbermens had accepted my representation concerning the DFAS documents and that that was the end of the matter. Of course, if counsel for Lumbermens had inquired as to what precisely I had done, and what others had done at my request, to locate the documents, I would have provided that information to Lumbermens.

12. After being served with Lumbermens motion to compel, I contacted DFAS's General Counsel's office in Washington, D.C. to assure myself that DFAS San Diego had taken all reasonable steps to locate the requested documents. I then spoke to a DFAS attorney in St. Louis concerning this matter. That attorney put me in touch with a DFAS attorney in Kansas City who assisted me in obtaining the declaration from Betty Fenlon with DFAS in San Diego. The DFAS attorney in Kansas City has also assured me that he has not been able to determine any alternate ways to retrieve the documents from the Federal Records Center.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 18, 2006.

Leslie Cayer Ohta