IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 04-1255C<br>(Judge Hodges) |

DECLARATION OF RICHARD C. PAULLIN IN SUPPORT OF
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1. My name is Richard C. Paullin.

2. I am currently a partner in the firm of Contract Solutions LLC. I specialize in the analysis of schedules and delays in contract disputes involving both construction projects and military development programs. I previously worked for The Barrington Consulting Group, and for Peterson & Company Consulting. I have over sixteen years of consulting experience.

3. During my work as a consultant, I have been required to develop and review a wide variety of information, including but not limited to the following: critical path and network schedules, as-planned and as-built information, logic diagrams, labor and cost curves, invoices and cost records, specifications and drawings, contracts, and correspondence files.

4. I have been asked to provide expert consulting services to the United States Department of Justice ("DOJ") in connection with Lumbermens Mutual Casualty Company v. United States, Fed. Cl. No. 04-1255C.

5. My understanding of the complaint submitted by Lumbermens Mutual Casualty Company ("Lumbermens"), is as follows: that the Government failed to require that Landmark Construction Company ("Landmark") submit a Network Analysis Schedule ("NAS") that met

the contract requirements; that the Government made improper payments to Landmark for materials, asbestos abatement, personnel and sitework; that the Government failed to withhold progress payments from Landmark; that the Government failed to provide materials to Lumbermens for which Landmark had been paid; and that the Government improperly assessed liquidated damages for a delay of 46 days related to electrical wiring and for a delay of 74 days related to the Atherton's construction of 21 additional housing units placed on the Contract by Modification No. A00010.

6. My task in connection with this case is to provide my expert opinions regarding the following issues: whether the NAS submitted by Landmark met the contract requirements; whether the Government's ability to properly administer the contract was impeded, assuming that the NAS submitted by Landmark did not meet the contract specifications; whether the Government should have withheld progress payments from Landmark; and whether the Government improperly assessed liquidated damages for the delays that Lumbermens claims occurred during Atherton's performance of the contract.

7. It is my understanding that Lumbermens has requested certain documents from DOJ that DOJ maintains are not available. Those documents include the following: certain updated network analysis schedules, certain Navy endorsements and certifications of Landmark's payment requests, and the "Required Sorts" and "Look-Ahead Reports."

8. In connection with my analyses, I reviewed all of the documents obtained from the various entities involved in this project. Lumbermens, Landmark's surety and the plaintiff in this action, produced some documents generated by Landmark, the initial contractor; Atherton Construction, Inc. ("Atherton"), the completion contractor; and Global Construction Services, Inc. ("Global"), Lumbermens' on-site inspection firm. DFAS produced copies of computer

"screen prints" regarding the payments made to Landmark during the project. Atherton produced documents in response to a subpoena that was served upon Atherton, and Global produced documents in response to a subpoena that was served upon Global. None of the documents, however, that were produced by Global in response to the subpoena had anything to do with the contract that is the subject of this dispute.

9. As part of this review, I determined that the documents produced by Lumbermens do not contain copies of the majority of the documents produced by Atherton in response to the subpoena.

10. I also determined that the documents produced by Lumbermens appear to contain copies of some documents received from Global. These documents are located within the range of Bates numbers LMB 004510-007144, although they are not labeled as having been received from Global.

11. The documents produced by Lumbermens do not appear to contain copies of documents obtained by Global from Landmark's computers. According to a document dated September 18, 2001, a representative of Lumbermens, Steve Beatty, stated that it was "OK to take data off hard drives." LMB 007126. According to a document dated September 28, 2001, a representative of Global, John Egbert, retrieved Landmark's computers and planned to download the data from those computers. LMB 007100.

12. The documents produced by Lumbermens do not contain copies of documents I would expect to find among the Global documents, such as a copy of the contract between Global and Lumbermens, and copies of Global's invoices.

13. The documents produced by Lumbermens do not contain copies of many of the documents that I would expect to find in Landmark's files, such as a full set of the thirteen

Landmark invoices along with all supporting documentation; internal Landmark memoranda and e-mails; a full set of monthly job cost detail reports; and a full set of Landmark's daily contractor production reports.

14. The documents produced by Lumbermens contain copies of some documents generated by Landmark. These documents are located within the range of Bates numbers LMB 000001-004509, and consist primarily of documents that support Landmark's accounts payable. Other than these Landmark documents and the Global documents previously discussed, the documents produced by Lumbermens do not appear to contain copies of documents that I would expect to find in Landmark's files. After Landmark stated that it had abandoned the project, file cabinets containing Landmark documents were located in a warehouse, according to documents dated July 25 and 26, 2001. LMB 006877-006878. The documents from those file cabinets do not appear to have been produced by Lumbermens.

15. Other than the Global and Landmark documents previously discussed, the documents produced by Lumbermens contain only one additional binder of documents. This one binder does not contain documents that I would expect to find in Lumbermens' files, such as Atherton's invoices, payments made by Lumbermens to Atherton and other contractors/vendors, and internal meeting minutes in which this project was discussed.

16. The documents produced by Lumbermens and the Government include copies of thirteen invoices submitted by Landmark during its performance of the contract. Of the thirteen invoices, Invoice Nos. 5515-7 and 5515-13 were not processed by the Government. These two invoices do not have a Naval Facilities Engineering Command ("NAVFAC") endorsement and certification attached to them. Because these two invoices were not processed by the Government, I would not expect to find a NAVFAC endorsement and certification for them.

Although Lumbermens doesn't list it as missing, I was unable to find a NAVFAC endorsement for Invoice No. 5515-11.

17. Of the thirteen invoices, I was unable to find an updated NAS for two of them, Invoice Nos. 5515-4 and 5515-6.

18. For eleven of Landmark's invoices, copies of an updated NAS can be found at the following locations:

| Invoice No. | Bates No. |
|---|---|
| 5515-1 | LUMBERMENS 03598-03620 |
| 5515-2 | LUMBERMENS 03576-03597 |
| 5515-3 | LMB 000844-000847 |
| 5515-5 | LUMBERMENS 03542-03567 |
| 5515-7 | LUMBERMENS 03514-03535 |
| 5515-8 | LUMBERMENS 03482-03504 |
| 5515-9 | LUMBERMENS 03462-03481 |
| 5515-10 | LUMBERMENS 03439-03461 |
| 5515-11 | LUMBERMENS 03292-03309 |
| 5515-12 | LMB 007104-007120 |
| 5515-13 | LMB 007188-007208 |

19. Using the thirteen invoices, together with the eleven NAS updates, I performed an analysis of the timing of the costs billed to the Government by Landmark during its performance of the contract. This type of analysis is routinely performed by consultants during a schedule analysis. I was able to complete my analysis without the two missing NAS updates.

20. Each of the monthly NAS updates contains a detailed breakdown of the cumulative costs billed by Landmark for each of the several hundred line items included in the schedule of values for this contract. Because each NAS update indicates the cumulative costs billed to date, the two missing NAS updates are not necessary to determine the amount billed by

Landmark for each of the line items. The only information that is missing (because of the two missing NAS updates) is the specific month in which the cost was billed.

21. For example, Invoice Nos. 5515-3, 5515-4, and 5515-5 were submitted in September, October, and November 2000, respectively. By comparing the NAS updates for September and November, it is very easy to determine the total amount billed by Landmark for each line item during the two-month period October through November. The only missing piece of information is the amount billed in October versus the amount billed in November. In this case, the information that is most important is the amount billed by Landmark for each item, while the specific month in which it was billed is not particularly important.

22. Because the missing NAS updates are from early in the construction schedule, relatively few large line items were being billed at the time. For example, during the two-month period October through November 2000, Landmark billed $10,000 or more for thirteen line items in the schedule of values. Those thirteen line items accounted for over 97 percent of the billings during that period. Landmark billed an average of less than $2,000 each for the other 22 line items that were billed during that period.

23. Likewise, during the two-month period December 2000 through January 2001, Landmark billed $10,000 or more for seven line items in the schedule of values. Those seven line items accounted for over 96 percent of the billings during that period. Landmark billed an average of less than $1,000 each for the other seventeen line items that were billed during that period.

24. Landmark did not submit the "Required Sorts" or "Look-Ahead Report" that were required by the contract specifications to be submitted with each invoice. Contract Specification Section 01321, paragraph 1.5.6. However, Landmark did submit network schedules and

28. The look-ahead reports for this project can be found with the CQC Meeting minutes within the following ranges of Bates numbers: LUMBERMENS 15706-15809; 15909-16034.

29. At the request of DOJ and for the purpose of serving Landmark with a subpoena, I researched the current status of Landmark and forwarded pertinent information to DOJ, such as a copy of a Dunn & Bradstreet report, a copy of an opinion in another court case regarding Landmark, and excerpts from various newspaper articles. I was unable to find enough information to allow a subpoena to be served upon Landmark.

30. While it is true that certain documents are apparently not available for review, including, as Lumbermens contends, certain updated network analysis schedules, certain Navy endorsements and certifications of Landmark's payment requests, and the "Required Sorts" and "Look-Ahead Reports," it is my opinion that those documents are not necessary to analyze the issues in this case insofar as those issues pertain to Landmark.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2006

Richard C. Paullin