# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-1255 C<br>Honorable Robert H. Hodges, Jr. |

## DECLARATION OF C. CHRISTOPHER SMITH IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

1. My name is Charles Christopher Smith.

2. I am currently a Vice President with Hill International Incorporated, a construction management firm headquartered in Marlton, New Jersey.

3. I have fifteen years of construction experience which includes on site construction management, construction consulting and expert witness testimony.

4. I am a registered Professional Engineer and hold professional certifications as a Certified Cost Engineer and Certified Construction Manager.

5. I hold a Bachelor of Science in Ocean Engineering from the United States Naval Academy.



PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

6. I hold a Master of Science in Civil Engineering from the University of Maryland.

7. I am a Doctoral Candidate in Civil Engineering at the University of Maryland.

8. Prior to joining Hill International I served on active duty in the United States Navy as a Civil Engineer Corps officer. My service included two tours of duty as a construction contracting officer with the Naval Facilities Engineering Command (NAVFAC).

9. I served as NAVFAC's Resident Officer in Charge of Construction for the renovation of Bancroft Hall at the United States Naval Academy in Annapolis, Maryland between 1998 and 2000. This project was a ten year, $200 million renovation which was the largest facility repair project in U. S. Navy history.

10. I have been asked to provide expert consulting services in connection with Lumbermens Mutual Casualty Company v. United States.

11. I have been asked to provide analysis and opinions on topics that include the basis of and entitlement to progress payments made by the U. S. Navy to Landmark Construction. In order for me to perform my analysis it is important that I review all contemporaneous documents relied upon by the Navy during its review and approval of contractor pay applications.

12. Complete copies of the network activity schedule ("NAS") submitted by Landmark with its pay applications are important for my review. These records, in part, comprise the basis upon which the U. S. Navy relied to evaluate progress and make payment to Lumberman's during the course of construction. In addition, these completed NAS documents, when compared to each other in the order presented to the U.S. Navy, show when and how much Landmark invoiced for each activity and, combined with the U.S. Navy's payment, show when and how much the U.S. Navy paid for each activity.



PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

13. Two of Landmark's thirteen NAS submittals have not been made available (in any form, including as partial documents) for my review. I received no NAS for Invoice No. 4, dated October 19, 2000, in the amount of $914,473.72. I also received no NAS for Invoice No. 6, dated December 20, 2000, in the amount of $230,647.36

14. In addition, it does not appear that I received either a complete or correct NAS for Invoice No. 3, dated September 18, 2000, in the amount of $1,743.055.36.

15. I have reviewed the declaration of Richard C. Paullin of the firm Contract Solutions, LLC.

16. I disagree with Mr. Paullin's apparent statement that the document at LMB 000844-000847 is either a complete or correct NAS for Invoice No. 3, and for several reasons. First, that document does not appear to have been submitted to or relied upon the U.S. Navy for payment. It bears the Bates numbers used by counsel for Lumbermens rather than the United States. In addition, it appears to be some sort of interim draft. Finally, the draft numbers do not match the total amount requested by Landmark in Invoice No. 3. Accordingly, it does not appear to be a correct NAS. Moreover, even if it were correct, it is not complete. That particular document is only four pages. A complete NAS normally submitted by Landmark appears to be routinely in excess of 20 pages. As a result, I do not believe the document at Bates LMB 000844-000847 can reasonably be relied upon as a complete and accurate NAS for the September 18, 2000 invoice submitted by Landmark.

17. I also disagree with Mr. Paullin's statements under paragraphs 18 through 21 wherein he states that knowing when work items were billed is "not particularly important." In light of the issues of this case which surround the Navy's payment review and approval process, the ability to monitor progress and payment at an activity level is important. It allows for me to know when, in time, the Navy formally recognized performance for specific items within the project schedule.



PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

18. I disagree with Mr. Paullin's statement under paragraph 21:

> "By comparing NAS updates for September and November, it is very easy to determine total amount billed by Landmark for each line item during the two-month period of October through November. The only missing piece of information is the amount of information billed during the two-month period October through November".

Since no network activity schedules have been produced between August 17, 2000 (Landmark Invoice Two) and November 20, 2000 (Landmark Invoice Five), there exists a three month window (September, October and November) where it currently appears impossible to evaluate payment request and approval status at the activity level, except on a cumulative basis through the November pay application. As a result, it is difficult to evaluate the reasonableness of the ROICC's decisions except on a cumulative basis.

19. Complete copies of the NAS for pay applications three, four and six are of particular relevance to my analysis for the reasons stated above. These three pay applications are also significant in that they represent approved payments totaling $2,888,176.44, or over 64% of the total amount paid to Landmark during the course of its performance. In addition, Invoice Nos. 3 and 4 were the largest two invoices submitted by Landmark, totaling more than $2.6 million in two months. This total, combined with the fact the amount was paid so early in the project and before construction even began, makes analysis of these particular NAS's—correct and complete copies of these particular NAS's—important.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 19th day of January, 2006.

C. CHRISTOPHER SMITH



PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all parties of record.

/s/______________________
Judy Goldfarb



PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022