# In the United States Court of Federal Claims

No. 04-1255C
(Filed: March 3, 2006)

| | | |
|---|---|---|
| * * * * * * * | | |
| LUMBERMENS MUTUAL CASUALTY, | * | |
| Plaintiff, | * | Motion to Compel Discovery; Motion for Sanctions; Monetary Sanctions; RCFC 45; Third-party Subpoenas. |
| v. | * | |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |
| * * * * * * * | | |

Mark G. Jackson, Preston Gates & Ellis LLP, Seattle, WA, for plaintiff. With him on the briefs were Derek D. Crick and Kevin A. Rosenfield.

Leslie C. Ohta, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Peter D. Keisler, David M. Cohen, and Donald E. Kinner.

**ORDER AND OPINION**

**HODGES**, Judge.

Plaintiff Lumbermens is a surety that overtook a contract with the Navy after the original contractor defaulted. Lumbermens is seeking damages in this court from allegedly improper payments made by the Navy to the original contractor. Lumbermens claims the Navy's actions resulted in higher costs to complete the job. Plaintiff filed motions to compel written discovery and for sanctions for violating the notice requirement for third-party subpoenas pursuant to Rule 45. The parties attempted to settle the discovery disputes short of additional proceedings, but counsel could not reach resolution. We heard oral arguments on February 22.

We grant in part plaintiff's motion for sanctions for the reasons discussed below. Plaintiff's motion to compel is denied.

DISCUSSION

The Navy contracted with Landmark Construction Company in April 2000 for repair and renovation of 160 military family housing units.[1] The contract stipulated that the Government was to make periodic progress payments that corresponded with the work completed. Section 01200 of the contract set forth the requirements for Landmark's requests for payment. The requests were to contain: (1) invoices submitted on NAVFAC Form 7300/41; (2) a contract performance statement showing the percentage of work completed; (3) an updated network analysis; (4) the contractor's final release form; and (5) the quality control manager's invoice certification. Payment requests that did not have the required documents were to be returned to the contractor for correction.

Plaintiff alleges that the Navy did not hold Landmark to these requirements, and as a result, the Navy made payments to the contractor significantly in excess of progress on the project. The Navy made progress payments based solely on the passage of time, according to plaintiff. Landmark informed the Navy in July 2001 that it could not complete the project, and the Navy terminated for default soon thereafter. The Navy had paid nearly forty percent of the contract price at termination. Landmark had completed twenty-two of the 181 housing units, or ten to fifteen percent of the work. The parties entered into a Takeover Agreement with a completion contractor in November 2001.

Lumbermens filed a Complaint in this court in 2004, seeking damages for impairment of suretyship or equitable subrogation, and for breach of the Takeover Agreement because its costs were greater once it took over the contract. Lumbermens alleges that the Government impaired its suretyship rights by: (1) paying Landmark according to Network Analysis Schedules that did not comply with contract specifications; (2) making improper payments to Landmark for materials, services, and personnel; and (3) failing to withhold progress payments. We dismissed ten of twenty-three Counts in Lumbermens' Complaint on August 17, 2005. Lumbermens Mut. Cas. Co. v. United States, 67 Fed. Cl. 253 (2005).[2] Plaintiff was precluded from relief under the theory of equitable subrogation because Lumbermens did not provide the requisite notice to the Government that the contractor could not complete the contract, and that payment should be made to the surety instead. Id. at 254-55.

Motion to Compel Discovery

The parties exchanged project-related documents pursuant to Rule 26(a) in Spring 2004.

---

[1] The Government and Landmark bilaterally increased the scope of the contract work in February 2001 by adding renovation of twenty-one housing units to the existing 160. The amendment did not extend the contract's completion date.

[2] Lumbermens asked for leave to file an amended complaint to add three more causes of action against defendant on February 21, 2006.

The documents produced to plaintiff included copies of thirteen invoices submitted by Landmark to the Navy for payment during contract performance. Many of the payment requests were incomplete, according to Lumbermens, including updated Network Analysis Schedules, progress payment certifications, and the "Required Sorts" and "Look-Ahead Reports." Updated Network Analysis Schedules divided the project into discrete activities and assigned values to each. This allowed the Navy to determine the amount of the progress payment earned by the Contractor for each activity. Plaintiff claims it needs updated schedules to ascertain the amount Landmark had billed for each item or activity, and when and how much the Government actually paid. Apparently, six of the thirteen invoices are missing the updated schedules.

FAR 52.232-5, mandating the use of progress payment certifications, was incorporated by reference into Landmark's contract with the Navy. Only three of the thirteen invoices contained the certifications.

Plaintiff issued its first request for documents to the Government on September 8, 2005. Defendant answered each of Lumbermens' requests by stating, "*[a]ll responsive documents have previously been produced. The original documents remain available for inspection and copying*." Def.'s Mot. to Compel Disc. at 6. Lumbermens' counsel contacted government counsel on November 4, 2005, and asked that she obtain the missing documents from the Defense Finance and Accounting Services. She agreed, but the Government did not respond further. Lumbermens reissued its request two weeks later. Government counsel then stated in an e-mail that "[i]t is not clear that DFAS has any information that has not already been provided, that is, the invoices / public vouchers." Id. at 7.[3]

Government counsel informed plaintiff on November 22 that she had contacted the DFAS office in Norfolk, VA and asked that the documents be recovered from the Federal Records Center. On December 7, defendant stated, "DFAS has not been able to locate any documents. The paperwork that is filled out when documents are sent to the Federal Records Center for storage cannot be found. Without the paperwork containing the identifying information the records cannot be retrieved from the Federal Records Center." Id. at 8.

Lumbermens argues the materials relate to essential elements of its case. Moreover, Rule 34(a) of this court obligates defendant to produce documents "in the possession or control of the party upon whom the request is served." DFAS is a government agency; therefore, the documents at DFAS are within the custody and control of defendant.

---

[3] The Navy had reviewed all of the invoices Landmark had submitted to the Government before the invoices were sent to the Defense Finance and Accounting Services for payment. DFAS received duplicates of the materials that the contracting officer reviewed to authorize payment. The Navy's contract files presumably are incomplete. Thus, plaintiff has endeavored to obtain the documents it believes essential to its claims through alternative avenues, namely, the paying agency.

The Government does not dispute that the documents processed by DFAS are within its control. Government counsel argues, however, that defendant has taken all reasonable steps to locate the documents and has repeatedly sought to recover the records from the agency but DFAS does not have the box accession number, so the files cannot be located within the Federal Records Center.[4]

Lumbermens nevertheless remains dissatisfied with the Government's discovery responses. It now seeks an order compelling the Government to produce the documents from DFAS, and awarding plaintiff the costs of filing this motion. We attempted to resolve the dispute informally, raising questions to counsel regarding the documents plaintiff has asked the Government to produce. See Order, No. 04-1255C (Jan. 24, 2006). The court conducted a hearing pursuant to the Order on February 22.

Plaintiff contended at the hearing that the court need answer only two questions: are the documents relevant, and have they been produced. The documents are relevant because they are the invoices the Government relied upon in making payments to the contractor. Those payments lie at the heart of this dispute. Some of the payments were made in error, and plaintiff believes that defendant has not made sufficient effort to produce the documents. Thus, this court should compel production of the documents.

Defendant responded that it has not received a written request for production of the DFAS documents. Counsel claimed she had agreed to comply with plaintiff's oral request in the spirit of cooperation. However, plaintiff's Request for Production #4 asked that the Government "[p]roduce all financial or accounting data, including, but not limited to, invoices and payroll documents reviewed by the United States in support [of] Landmark's Payment Requests." Supplemental Decl. of Kevin A. Rosenfield in Supp. of Pl.'s Mot. to Compel Disc., Ex. "F". Document requests are construed broadly. Request #4 reasonably encompassed the documents that plaintiff wants.

The Government also challenged the process by which plaintiff has attempted to obtain the documents. Plaintiff's counsel should have engaged in a good faith conference with the

---

[4] Plaintiff argues that if the documents truly are impossible to locate, then the Government has not met its statutory duty of ensuring that such documents are accessible. See Federal Records Act, 44 U.S.C. Chapters 21, 29, 31, and 33. Plaintiff would seek to introduce an offer of proof as to what the documents in question would establish if they were available as exhibits. Lumbermens argues its case hinges upon evidence likely contained within these materials, and it would be inequitable to permit the Government to benefit from its failure to abide by its statutory duty.

The parties have stated that there is no reason at this time to consider what inferences we may draw from the defendant's lack of production, if any. The court agrees with counsel in this regard and declines to address such matters at the present time.

Government instead of filing what it considers a premature motion to compel, defendant asserted. The record suggests, however, that defendant did confer with plaintiff in attempting to recover the documents from the agency. The parties exchanged a series of e-mails and documented telephone calls during November 2005. Plaintiff filed this motion in December upon concluding that such further contact with defendant would be in vain.

Defendant argued that it has exhausted all reasonable means of obtaining the documents. The documents should be in DFAS' files, in the Navy's files, and in Landmark's files. They are not in any of these locations. The Government cannot retrieve the documents from the Federal Records Center because no box accession number appears of record. Government counsel maintained that plaintiff is asking the court to order the Government to do something it cannot.

We concur with plaintiff that the documents are relevant and that they should have been made available to Lumbermens, but ordering the Government to produce documents that it has represented either no longer exist, or are impossible to locate, would be a futile act. Our ordering the Government to compel discovery would not assist plaintiff. Such an act would serve only to command the Government to acknowledge on the record that it cannot produce documents that should be under its control. Defendant already has offered such an admission.

Motion for Sanctions

Plaintiff filed a motion on December 23, 2005, asking this court to sanction defendant for violating Rule 45. Rule 45(b)(1) requires that a party provide prior notice to opposing counsel before serving a third-party subpoena. Counsel for the Government issued two subpoenas to third parties without giving prior notice to Lumbermens.[5] Lumbermens now asks the court to issue an order directing that: government counsel may not issue new third-party subpoenas without prior notice to Lumbermens; government counsel must produce to Lumbermens within fifteen days copies of each third-party subpoena previously issued by defendant in this case; and government counsel must file an affidavit within thirty days that all documents produced, or that

---

[5] The vice president of the finishing contractor, Atherton Construction, informed counsel for Lumbermens that the Government had served a third-party subpoena. Lumbermens learned that Atherton sent the documents sought by the Government to Las Vegas for copying and production. Lumbermens contacted the copy center and obtained a set of the documents the Government received pursuant to the subpoena.

Lumbermens' counsel contacted government counsel and informed her that the subpoena to Atherton violated the Rule 45 notice requirements. Government counsel assured him it would not happen again, and Lumbermens decided not to notify the court then. Lumbermens' counsel later became aware of another subpoena the Government had issued; defendant had served Global Construction Services with a subpoena for documents related to this case on the same day it had served Atherton. The Government did not notify plaintiff's counsel about this request either.

will be produced pursuant to the subpoena, have been or will be furnished to Lumbermens' counsel. Lumbermens also seeks reimbursement for preparing and prosecuting its motion.

Recent revisions to the federal rules have lessened the court's role as an overseer of the parties' conduct during the discovery process. Lumbermens argues that government counsel has neglected its responsibility of proper use of the subpoena power by breaching the rules relating to issuance of third-party subpoenas at least twice. Lumbermens learned of the subpoenas independently and after the fact. Plaintiff did not have the opportunity to object or the ability to monitor defendant's discovery and ensure its own access to information that defendant may have secured. Plaintiff complains that it brought the violation to the Government's attention and was assured that it had never before occurred and would not happen again.[6] The fact that counsel violated the rule more than once is sufficient support for sanctions, according to Lumbermens. Defendant disputes that two violations of the Rule occurred. She argues that because she issued the two subpoenas to Global and Atherton on the same day, only one Rule 45 violation took place.

The Government did not notify Lumbermens that it had served two subpoenas to third parties, Atherton and Global Construction. Such actions violate Rule 45 and should carry consequences. Monetary sanctions are not warranted in these circumstances, however.

Plaintiff directs us to an unpublished opinion, Spencer v. Steinman, 179 F.R.D. 484 (E.D. Pa. 1998), vacated in part by No. 2:96-CV-1792 ER, 1999 WL 33957391 (E.D. Pa. Feb. 26, 1999) (Spencer II), for the proposition that bad faith of the accused and prejudice to the complaining party are not prerequisites for imposing sanctions under Rule 45. Pl.'s Mot. for Sanctions at 5; Pl.'s Reply at 3-4. The trial court in Spencer, however vacated its monetary sanctions upon reconsideration, noting that the court's inherent power to fine a party requires a finding of bad faith or vexatious conduct. Spencer II, 1999 WL 33957391, at *3.[7]

Lumbermens also cites United States v. Santiago-Lugo, 904 F. Supp. 43 (D.P.R. 1995). In that case, sanctions were appropriate where a party used the subpoena power to go on a "fishing expedition" in a civil case to bolster or impeach witnesses in criminal action. Those facts are not sufficiently similar to ours to be helpful. Plaintiff also relies on Murphy v. Board of Education of the Rochester City School District, 196 F.R.D. 220 (W.D.N.Y. 2000), where the court imposed sanctions following its finding that plaintiff's counsel had taken actions in bad faith. The trial court found that twelve subpoenas plaintiff's counsel had served without notifying defendant were issued in clear violation of the rules, and with the obvious intent of

---

[6] Defendant disputed whether it assured plaintiff that it had not issued other subpoenas. This does not seem to be a favorable or persuasive argument for the Government. In any event, silence could be construed as misrepresentation if additional subpoenas had been issued in violation of Rule 45.

[7] The trial court upheld the non-monetary sanctions on reconsideration. Id.

procuring documents to gain advantage over the opposing party. Id. at 225-27. Moreover, the documents sought in Murphy were sensitive; they were personal, confidential medical records about the defendant that the plaintiff wanted to use for his benefit. Id. at 227-28.

Our record does not reveal government conduct so egregious as to warrant monetary sanctions. The Supreme Court has ruled that a judge retains discretion to assess attorney's fees against counsel who have acted in bad faith. See Chambers v. NASCO, Inc., 501 U.S. 31, 45-46 (1991). Plaintiff argues that the Chambers decision is irrelevant because the Court addressed only the inherent sanctioning power of the court, and not the court's power to sanction a party pursuant to this court's rules.[8] Lumbermens has asked us to sanction defendant pursuant to Rule 26(g) and Rule 37.[9]

Lumbermens' arguments do not, however, provide the court with a specific basis to justify levying attorney's fees against defendant under these rules. Plaintiff's briefs address the potential risks involved with a party's abuse of the subpoena power, the applicability of the Government's "no harm no foul" defense, and the actual prejudice to plaintiff from government counsel's actions. Also, the subpoenaed party had to incur the expense of providing documents to the Government that Lumbermens already had produced. Lumbermens explained it could have disclosed this if defendant had followed the rules. The third party could have been saved time and expense had plaintiff's counsel provided the requisite notice.

---

[8] The court had requested sanctions pursuant to Rules 26(g) and 37, and the court's inherent power to sanction abuses of the discovery process in its opening motion. Pl.'s Mot. for Sanctions at 5-6. Plaintiff apparently has withdrawn its request for sanctions pursuant to the "inherent authority of the court." Lumbermens now seeks sanctions only pursuant to Rules 26(g) and Rule 37. Pl.'s Supplemental Authorities Supporting Mot. for Sanctions at 1.

[9] Rule 26(g) provides that "[t]he signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief . . . the request, response, or objection is . . . consistent with [the Rules of the Court of Federal Claims] and warranted by existing law . . . ." Moreover, the rule states that if a certification is made in violation of the rule "the court, upon motion or upon its own initiative, shall impose upon the person who made the certification the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount for the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Id.

Rule 37(c) states that a party that fails to disclose information in accordance with discovery rules "is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." The court, in addition to prohibiting admission of such evidence also may impose additional sanctions such as "requiring payment of reasonable expenses, including attorney's fees, caused by the failure [to disclose]." Id.

These are relatively slight inconveniences, however. After learning that a third-party subpoena had been issued to Atherton, Lumbermens sought the documents from the copy center and presumably received a complete set of documents that defendant had obtained through its subpoena. The documents Global sent to the Government were unrelated to the Landmark contract at issue in this case. According to defendant, Global currently is looking for the correct documents to comply with the subpoena. We understand plaintiff will receive copies when they become available.

## CONCLUSION

The purpose of Rule 45 is to discourage parties from engaging in secretive behavior. We think plaintiff's nonmonetary sanctions are appropriate in the circumstances. Such relief should remedy any harm that may have occurred. Whether the Government already has obtained discovery that it will use in this case in violation of the rules of this court and whether such use would be permissible in this case are questions we can address later.

Plaintiff's Motion to Compel is DENIED. Plaintiff's request for monetary sanctions is DENIED. We decline at this time to require that defendant reimburse plaintiff for preparing and prosecuting its motion for sanctions. Plaintiff's motion for sanctions otherwise is GRANTED. The Government will provide plaintiff with copies of all third-party subpoenas it has issued in this case. Defendant must disclose all documents it has received pursuant to the two subpoenas to Global and Atherton, if it has not already done so. The Government may not issue further subpoenas or conduct additional discovery without prior notice to all other parties.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge