Q. And the letter "G" means that the Government has got to approve that submittal, correct?

A. In this instance, yes.

Q. An example of that would be final design, right? The Government has approval authority on final design, correct?

A. Yes.

Q. Okay, let's go to Exhibit 5. And this is Section 1321 of the contract, "Network Analysis Schedules." Are you familiar with this section of the contract?

A. Yes.

Q. Now, in paragraph 1.2.1 on the first page of this exhibit it talks about -- it lists certain submittals, does it not?

A. Yes.

Q. A network system analysis plan, monthly reports, approve network, and summary network, correct?

A. Yes.

Q. And each of those items is followed by a capital "G," correct?

A. Yes.

Q. And that means that Government approval is required for each of those submittals, correct?

A. Yes.

Q. Did you have a role, as contracting officer, reviewing and/or approving any of the submittals identified there?

A. Network system analysis plan I did not. I did not review the network system analysis plan or approve it.

Monthly reports, I'm not exactly sure what monthly reports are. I'm assuming that's not invoicing or anything. So if it wasn't, I did not do that.

And I did not approve the network.

Q. Do you understand what the network analysis schedule was?

A. It was the price -- the schedule of prices with the breakdown as far as the schedule of work performance in accordance with the contract, how it was going to go all the way down to completion.

Q. Are you familiar with the critical path method of scheduling?

A. I'm not intimately familiar with that, no.

Q. Are you familiar with the term "critical path method"?

A. Yes, I am.

Q. Do you know what "critical path" means?

Do you see that?

A. Yes.

Q. So these network analysis schedules were to be used by the contractor as the basis for submitting progress payment requests, correct?

A. Yes.

Q. So without trying to make this too complicated, is it not a fair statement that what the contractor was supposed to do was identify the activities it was going to complete, put those on a schedule as far as time phrasing, and also put dollars against those activities? So as he completed activities you'd know where you were time-wise on the schedule and you'd know how much of the contractor's work had been completed cost-wise. Is that a fair statement, generally speaking?

A. Yeah, that's a fair statement.

Q. Now, let's go back to page two of this document. We're still at Exhibit 5. In 1.4.2 on the fourth line down towards the end, see where it says, "The minimum number of activities in the final network diagram shall be 30 per building and 1000 for the total project"?

A. Yes, I see that.

Q. Do you know what that means?

Q. Did this -- did the submittals submitted pursuant to this section require contracting officer approval?

A. I can't -- right now I just can't remember. I would have to see papers if I approved it or not. I would venture not to guess that I did or not.

Q. Well, I'm not asking you to guess whether you did or not, I'm asking you whether these submittals required contracting officer approval.

A. I'm just trying to -- I don't remember. I don't know. There was a lot of things --

MS. OHTA: Are you asking him based on his memory or based on the contract?

MR. JACKSON: No, I'm asking based on the contract.

MS. OHTA: Why don't you read the provision and see if you can answer his question based on what the contract says.

A. Well, the provision doesn't state who is --

MS. OHTA: Did you read the whole section, Mr. Santiago?

Q. (By Mr. Jackson) Tell you what. I'll make this a little easier. Go to Exhibit 7. See the "Construction Submittal Procedures" there, Section 1330 of the contract?

A. Yes.
Q. Okay. Go to paragraph 1.3.2 on the second page of that exhibit and read that to yourself, if you will.
A. 1.3.2?
Q. Yes, sir.
A. Yes, it does indicate the contracting officer. You're right, yes.
Q. So if we go back to Exhibit 5, those four submittals identified in paragraph 1.2.1 are followed by the capital letter "G," correct?
A. Yes.
Q. And that, as a result, means that the contracting officer is the approval authority for those submittals, correct?
A. That is correct.
Q. Now, did you approve these submittals on this contract?
A. I did. I'm assuming I did, if it says contracting officer.
Q. You're assuming you did.
A. Yes, I'm assuming I did. I have to go back and look and double check, but --
Q. How would your approval of these submittals be recorded and/or communicated?

the FAR refer to in that context?
A. As I recall, preparing a cure notice to have the contract cured of the situation would be one action, the first action, the first step.
Q. Well, what about the initial response that you made upon having concern, withholding payments because the contract certifications were false?
A. On any new certifications coming in, had he supplied the proper information, that invoice is not false.
Q. What are the certifications the contractor makes with each invoice?
A. His project manager -- contractor's certification for payment and the quality control.
Q. What are the components of the contractor's certification? I mean we have them in front of us, we can go back to them.
A. Yes.
Q. I mean I'm not trying to test you here. My point is this: In Exhibit 69 -- yeah, Exhibit 69, you say, "Until we have verified complete payments to subcontractors for completed services we will retain monies from all future invoices...." You said your authority for that was FAR 52.232-5, right?
A. Yes.

Q. Because you were concerned about the validity of their certifications. And the certifications you were talking about was that they had paid suppliers and didn't intend to withhold money, right?

A. That's what the certification says, yes.

Q. And you had all the information necessary to determine whether those certifications were true, but you didn't make the determination, right?

A. Yes.

Q. And had you made the determination, could you have continued to withhold money based on the inaccurate certifications of the contractor?

MS. OHTA: Object. It calls for a legal conclusion.

Q. (By Mr. Jackson) Go ahead and answer the question. You interpret the contract all the time. She can't stop you from answering. Just go ahead and answer.

MS. OHTA: I haven't attempted to stop him from answering.

MR. JACKSON: I know, he's looking at you and I'm just letting him know.

A. The only ramification I would have is to return the invoice, basically, and say it's an

Q. Did either Mr. McAteer or Mr. Martin create or maintain any log identifying the property that had been purchased by Landmark or for which the Government had paid Landmark, prior to termination?
A. Not to my knowledge.
Q. Did you ever request that they do so?
A. No.
Q. Did you ever obtain, prior to termination, any documentation establishing the Government's ownership of the material for which you paid Landmark?
A. No.
Q. Modification A10 to the contract, are you familiar with that, the FAF units?
A. That was the FAF?
Q. Yes. Are you familiar with that?
A. Yes.
Q. Now, you had requested that Landmark give you a proposal for that scope of work, correct?
A. Yes.
Q. And you were going to modify the contract to include an additional 21 military family housing units pursuant to that, correct?
A. Yes.
Q. And they did provide you a proposal, right?
A. Yes.

Q. And you did negotiate with them and reach an agreement on the price of that additional scope of work, correct?

A. Yes.

Q. And you issued a unilateral modification, modification A000010, memorializing that agreement and placing that scope of work on the contract, right?

MS. OHTA: Could we get an exhibit number for that?

MR. JACKSON: Yeah, we'll get to it.

MS. OHTA: Is this a memory test?

MR. JACKSON: Yeah, we'll get to it.

Q. (By Mr. Jackson) You did issue a modification for that scope of work, right?

MS. OHTA: That's a different question than you just asked him.

A. Did I issue a modification for that work?

Q. (By Mr. Jackson) Yes.

A. I issued a modification. It was a bilateral modification. You said unilateral.

Q. No, I'm sorry. I'm just trying to lay the groundwork before we get into the details of it.

There was a bilateral modification that incorporated into the contract an additional 21 units, housing units, correct?

A. Yes.

Q. And that was work that was going to be done by Landmark, correct?

A. Yes.

Q. Is it your understanding that you were required to obtained from the surety a consent to modify the contract with those additional military family housing units?

A. I believe the FAR basically stipulates -- basically stipulates that when you execute a mod over $50,000, you need to notify a surety that this mod is being executed. Then the surety and the contractor basically need to deal with that. If it's 25 percent over the contract value, again, the surety needs to be notified.

Q. Is it just notified, or do you need to obtain the surety's consent for certain modifications?

A. Well, the terminology in the form that's used is basically a consent from the surety, yes.

Q. Okay. Why does the surety have to consent?

A. From my understanding, there is an increase in the contract value; and therefore, increasing the surety's -- or the risk to the surety. And it's the contractor's responsibility, based on our contract requirement, to have bonding capable of covering the

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, NORTHWEST
NAVAL FACILITIES ENGINEERING COMMAND
19917 7TH AVENUE N.E.
POULSBO, WASHINGTON 98370-7570

N44255-97-C-5515
11 April 2000

VIA FACSIMILE AND FIRST CLASS MAIL

Landmark Construction Corporation
10227 Bridgeport Way SW
Lakewood, WA 98499
253-582-7751
FAX: 253-582-7784

CONTRACT N44255-97-C-5515, WHOLE SITE REPAIR/REVITALIZATION MAYLOR CAPEHART HOUSING AREA, NAVAL AIR STATION WHIDBEY ISLAND, OAK HARBOR, WASHINGTON.

The Government hereby accepts your offer dated 28 March 2000 in the total amount of $9,878,026.00, for the Base Bid and all Options as follows, including Amendments 0001 through 0005:

> $4,606,260 for 0001AA, $4,271,759 for 0001AB, $145,000 for 0003AA, $48,712 for 0004AA, $239,565 for 0005AA, $147,360 for 0008AA, $57,450 for 0009AA, $176,320 for 0010AA, and $185,600 for 0010AB.

The awarded contract, N44255-97-C-5515 dated 11 April 2000 is provided as enclosure (1). The contract completion date will be 23 October 2002. You are hereby notified to proceed with the work for this contract on 26 April 2000. However, you may not proceed until the Government has notified you that the performance and payment bonds submitted for this contract are acceptable and if applicable, your Contractor Quality Control Plan has been approved by the Resident Officer in Charge of Construction.

Your performance bond in the sum of $9,878,026.00 and your payment bond in the sum of $2,500,000.00 shall be submitted to the above address, Code CITPG, no later than ten (10) calendar days from the date of this award. Enclosure (2) is provided for your convenience in obtaining the bonds. If you have any questions concerning the bonds you may contact Pam Grady, telephone (360) 396-0250.

The Resident Officer in Charge of Construction (ROICC) cited in Block 26 of the contract award is the point of contact for all contract administration matters. Upon

receipt of this notice of award, contact the Whidbey Island ROICC, telephone 360-257-3348 to arrange a pre-construction meeting.

Sincerely,

David M. Briggs

DAVID M. BRIGGS
Contracting Officer

Encl:
(l) Contract Award N44255-97-C-5515
(2) Performance Bond, Payment Bond and Affidavit of Individual Surety forms (1 set)

MAR-27-2000 04:35P FROM:LANDMARK 2535827784 TO:18778768855 P:3/3

OFFER (Must be fully completed by offeror)

14. NAME AND ADDRESS OF OFFEROR (Include ZIP Code)
Landmark Construction Corporation
10227 Bridgeport Way, SW
Lakewood, WA 98499

DUNS: 942755372 CAGE: 1FDZ0

15. TELEPHONE NO. (Include area code)
(253) 582-7751

16. REMITTANCE ADDRESS (Include only if different from Item 14)

DUPLICATE ORIGINAL

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ______ calendar days after the date offers are due. (Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)

OFFERORS SHALL COMPLETE THE CONTINUATION SHEETS, PAGES 3 AND 4 OF 4.

See Schedule of Prices

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGEMENT OF AMENDMENTS
(The offeror acknowledges receipt of amendments to the solicitation — give number and date of each)

| AMENDMENT NO. | 0001 | 0002 | 0003 | 0004 | 0005 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 8/24/99 | 9/2/99 | 11/10/99 | 2/18/00 | 3/14/00 | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print)
Douglas J. Pourier, President

20B. SIGNATURE
[signature]

20C. OFFER DATE
3/28/00

AWARD (To be completed by Government)

21. ITEMS ACCEPTED:

See schedule and continuation sheets

22. AMOUNT
$9,878,026.00

23. ACCOUNTING AND APPROPRIATION DATA
See schedule

24. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 copies unless otherwise specified) | ITEM

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO 10 U.S.C. 2304(c) ( ) 41 U.S.C. 253(C) ( )

26. ADMINISTERED BY
Engineering Field Activity NW
Whidbey Island Field Office
Bldg 103
1115 W. Lexington St, Oak Harbor, WA 98278-2400

27. PAYMENT WILL BE MADE BY
DFAS Oakland Via DFAS San Diego OPLOC
Code FPVBB-EFD
P.O. Box 420730
San Diego, CA 92142

CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

28. NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ______ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference or attached to this contract.

29. AWARD (Contractor is not required to sign this document.) Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual documentation is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN (Type or print)

31A. NAME OF CONTRACTING OFFICER (Type or print)
DAVID M. BRIGGS

30B. SIGNATURE | 30C. DATE

31B. UNITED STATES OF AMERICA
BY [signature]

31C. AWARD DATE
4/11/00

STANDARD FORM 1442 BACK (REV. 4-85)

LUMBERMENS 03051

Santiago, Exhibit A,
Page 3

| SOLICITATION, OFFER, AND AWARD *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. N44255-97-R-5515 | 2. TYPE OF SOLICITATION ☐ SEALED BID ☒ NEGOTIATED (RFP) | 3. DATE ISSUED 29 July 1999 | PAGE OF PAGES 1 OF 7 |
|---|---|---|---|---|

IMPORTANT - The "offer" section on the reverse must be fully completed by the offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|
| N44255- 97-C-5515 | N/A | N/A |

| 7. ISSUED BY CODE | 8. ADDRESS OFFER TO |
|---|---|
| Commanding Officer<br>Engineering Field Activity, Northwest<br>NAVFACENGCOM<br>19917 7th Avenue NE,<br>Poulsbo, WA 98370-7570 | Commanding Officer<br>Engineering Field Activity, Northwest<br>NAVFACENGCOM<br>19917 7th Avenue NE,<br>Poulsbo, WA 98370-7570 |

| 9. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)* |
|---|---|---|
| | PAM GRADY | FAX Questions to (360) 396-0851 |

**SOLICITATION**

NOTE: In sealed bid solicitations "offer" and offeror" mean bid" and bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS (Title, identifying no., date):

WHOLE SITE REPAIR/REVITALIZATION MAYLOR CAPEHART HOUSING AREA, NAVAL AIR STATION WHIDBEY ISLAND, OAK HARBOR, WASHINGTON

** THIS SOLICITATION IS RESTRICTED TO QUALIFIED DEVELOPMENT AND TRANSITIONAL SECTION 8(a) FIRMS, MEETING THE BONDING REQUIREMENTS, AND LOCATED WITH THE SEATTLE, ANCHORAGE, AND PORTLAND SBA DISTRICTS.

FACSIMILE TRANSMISSION OF BIDS, ACKNOWLEDGEMENT OF AMENDMENTS, OR MODIFICATIONS TO BIDS IS NOT AUTHORIZED.

NOTE: Bidders must execute blocks 14 through 20C on reverse. See Instructions to Bidders.

ESTIMATED COST RANGE: More than $10,000,000.00

11. The Contractor shall begin performance within 15 calendar days and complete it within 910 calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory, ☐ negotiable. *(See )*

| 12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)* YES | 12B. CALENDAR DAYS WITHIN 10 CALENDAR DAYS |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 0 copies to perform the work required are due at the place specified in Item 8 by 2:00 p.m. *(hour)* local time 9/13/99 *(date)*. If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee ☒ is, ☐ is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

STANDARD FORM 1442 (REV. 4-85)
Prescribed by GSA
FAR (48 CFR) 53.236-1(d)

LUMBERMENS 03052

Santiago, Exhibit A, Page 4

| CONTINUATION SHEET | REFERENCE NO OF DOCUMENT BEING CONTINUED<br>N44255-97-C-5515 | PAGE<br>3 OF 7 |
|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
LANDMARK CONSTRUCTION CORPORATION

SECTION 00010 Solicitation Contract Form

ITEM NO 0001 — SUPPLIES/SERVICES

All work complete and in accordance with the drawings and specifications for design of 156 project units, and whole site repair and revitalization of 156 family housing units, as follows:

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001AA | | 1.00 | Lot | $4,606,260.00 | $4,606,260.00 |

Base Bid Item 0001AA
Design work for 156 project units (excludes the design of 4 units associated with CLIN 0005AA) and the construction/revitalization of 76 housing units (Types 5-8). Additional off-street parking, mini-blinds in all bedrooms and bathrooms, minimal landscaping around units for work areas 1, 2A, 3, 4, and 5, except the work identified in other contract line items (CLINS). Design and construction of new garages and demolition of existing carports.

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001AB | | 1.00 | Lot | $4,271,759.00 | $4,271,759.00 |

Base Bid Item 0001AB
Construction/revitalization of 80 housing units. Additional off-street parking, mini-blinds in all bedrooms and bathrooms, minimal landscaping around units for work areas 6 through 10 (Unit Types 5-8) except the work identified in other contract line items (CLINS). Construction of new garages and demolition of existing carports.

ITEM NO 0002 — SUPPLIES/SERVICES
RESERVED

ITEM NO 0003 — SUPPLIES/SERVICES

Option Item 0003
All work complete and in accordance with the drawings and specifications for work associated with gypsum wallboard and painting interor of garages, and garage door keypads for the areas listed in CLIN 0001AA, as follows:

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0003AA | | 1.00 | Lot | $145,000.00 | $145,000.00 |

Option Item 0003AA
Provide gypsum wallboard and paint interior of garages and provide keypad to each garage door (CLIN 0003AA work excludes Unit Types 9, 10, and 11 (4 units).

ITEM NO 0004 — SUPPLIES/SERVICES

Option Item 0004
All work complete and in accordance wtih the drawings and specifications for work associated with providing mini-blinds for areas listed in CLIN 0001AA, as follows: