**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-1255C<br><br>Honorable Robert H. Hodges, Jr. |

**DECLARATION OF JARED VAN KIRK IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF WILEY WRIGHT AND TO EXCLUDE THE EXPERT TESTIMONY RE MITIGATION**

I, JARED VAN KIRK, declare as follows:

1. I am one of the attorneys for Lumbermens Mutual Casualty Company in the above-entitled action. I make this declaration based on personal knowledge, and I am competent to testify herein.

2. Attached as Exhibit A to this Declaration is a true and correct copy of the Expert Report of Wiley R. Wright, III, CPA dated September 30, 2006.

3. Attached as Exhibit B to this Declaration is a true and correct copy of the Expert Report of Richard C. Paullin of Contract Solutions LLC dated September 29, 2006.

4 Attached as Exhibit C to this Declaration is a true and correct copy of Deposition Excerpts of Wiley R. Wright, III dated February 21, 2007.

DATED this 1st day of August, 2007 in Seattle, Washington.

Jared Van Kirk, WSBA #37029
GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101
(206) 464-3939
(206) 464-0125 – fax

No. 04-1255C
(Judge Robert H. Hodges, Jr.)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

vs.

THE UNITED STATES,

Defendant.

EXHIBIT A

EXPERT REPORT OF WILEY R. WRIGHT, III, CPA
Dated September 30, 2006

Mark G. Jackson, WSBA #18325
GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101-2939
(206) 464-3939
(206) 464-0125 – fax

Counsel of Record for
LUMBERMENS MUTUAL
CASUALTY COMPANY

EXHIBIT A
PAGE 1 OF 38

**LUMBERMENS MUTUAL CASUALTY COMPANY,**
**Plaintiff,**

**v.**

**THE UNITED STATES,**
**Defendant**

**No. 04-1255C**

**Expert Report of:**

**Wiley R. Wright, III, CPA**

**September 30, 2006**

EXHIBIT A
PAGE 2 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

## TABLE OF CONTENTS


| Description | | Page |
|---|---|---|
| I. | Expert's Background and Qualifications | 1 |
| II. | Project Background and Scope of Engagement | 1-2 |
| III. | Opinions and the Bases and Reasons Therefor | 2-20 |
| IV. | Summary of Adjusted Claim Amounts | 20-21 |
| V. | Data and Other Information Considered In Forming Opinions | 21 |


**Attachments:**

1. Resume of Wiley R. Wright, III, CPA
2. Data and Other Information Considered in Forming Opinions
3. Rubino & McGeehin Consulting Group, Inc. Fee Schedule

EXHIBIT A

PAGE 3 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

## I. EXPERT'S BACKGROUND AND QUALIFICATIONS

I am a Certified Public Accountant and Senior Shareholder of the Rubino & McGeehin Consulting Group, Inc. ("R&M"). I have in excess of 25 years experience in the practice of public accounting and consulting. I have concentrated a very large portion of my practice in the area of construction contracts and federal government contracts, including assistance with the financial aspects of disputes arising out of these types of contracts. Enclosed, as Attachment 1, is a current copy of my resume, which provides more detailed information with respect to my background and qualifications.

In summary, I have provided expert testimony, either in deposition or trial, in excess of sixty different occasions, many of which were related to pricing and cost accounting issues arising under construction contract disputes. I have testified in proceedings before Federal Boards of Contract Appeals, in domestic and international arbitration and mediations, in federal district courts, various state courts, and the U.S. Court of Federal Claims. I have provided expert testimony specifically relating to pricing issues on large construction contracts. Attachment 1 lists my previous expert testimony.

## II. PROJECT BACKGROUND AND SCOPE OF ENGAGEMENT

On April 11, 2000, the United States Navy, Engineering Field Activity, Northwest, awarded Contract No. N44255-97-C-5515 to Landmark Construction Company for the Whole Site Repair/Revitalization for the Maylor Capehart Housing Area on Naval Air Station, Whidbey Island in Oak Harbor, Washington (Project). The contract involved the remodeling of 160 military housing units on Whidbey Island for a contract price of $9,878,2026 with a performance period of 910 calendar days. The contract was modified, effective February 28, 2001 to add an

EXHIBIT A

PAGE 4 OF 38



WW0383

additional 21 units for a price of $1,884,176. The modification for the additional units (Modification A00010) did not extend the contract performance period.

The United States Department of Justice (DOJ) retained R&M to independently review and analyze the alleged damages set forth in the Complaint and First Amended Complaint filed by Lumbermens Mutual Casualty Company (Surety) for the recovery of alleged improper payments made by the Navy to Landmark Construction Company (Landmark) and the damages arising from the Navy's alleged breach of the takeover agreement for the completion of the project by the Surety.

I am the Shareholder responsible for the services provided to DOJ in this matter and for the opinions and conclusions expressed herein.

R&M is being reimbursed for my services and those of other employees in accordance with the Fee Schedule set out as Attachment 3.

## III. OPINIONS AND THE BASES THEREFOR

- The alleged damages set forth in the First Amended Complaint are incorrectly calculated and overstated.
- The majority of the alleged damages set forth in the various counts in the First Amended Complaint are duplicative of each other.
- The alleged damages are in effect a total cost claim.
- The total cost approach used for the alleged damages has not been properly applied and is an inappropriate method for computing damages in these circumstances.

EXHIBIT A
PAGE 5 OF 38

- The proper measure of any overpayments should be computed by deducting the amounts paid to Landmark Construction for each of the schedule of value line items at issue from the earned value for the work actually performed as of Landmark's termination. The amounts paid to Landmark for each schedule of value line time at issue can be found on Landmark Invoice number 12 ( See Exhibit C).

In order to properly determine the earned value of the work actually performed by Landmark as of the termination date, the percent complete method should be used. There are two alternative methods to determine the percent complete from a financial perspective. These are discussed in the following paragraphs.

- Determination based on actual quantities of materials. This method would result in the most accurate percent-complete calculation, however there are insufficient records to determine the actual quantities of the materials as of the termination date and those actually received and utilized by Atherton in the performance of their takeover contract.

- Determination based on a cost to cost method. Under this method the percent complete is determined by comparing the relative costs incurred by each contractor, stated as a percentage. For example, if each contractor incurred $100 to perform a particular line item of work then the percent-complete for contractor 1 would be 50% ($100 as a percentage of the total cost of $200).

  For the majority of the line items in dispute the cost method has been used to determine the amount, if any, of the overpayments made to Landmark.

I have addressed each of the counts in the First Amended Complaint that include alleged damages, in the following paragraphs.

EXHIBIT A
PAGE 6 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

**Complaint**

At Par. C. 39, the First Amended Complaint alleges "in its proposal, Landmark proposed to perform the sitework for less than $362,000. The Navy did not question the $230,000 increase in this item, notwithstanding that this was a separate bid item."

**Response**

Based on my discussions with Landmark personnel and my review of the records, Landmark had prepared estimates for this project that included costs for sitework that were in excess of $500,000 prior to the submission of Landmark's bid. These estimates closely approximate the subcontract amount that was awarded to Lloyd Enterprises, in the amount of $590,000. Given these estimated amounts, one would not have expected the Navy to question the Schedule of Value line item for sitework.

**Complaint**

At Par. C. 45, the First Amended Complaint alleges "In its September 18, 2000 invoice, Landmark invoiced the Navy for the entire amount invoiced to Landmark by Lloyd, and noted on the Navy-approved NAS for sitework --$590,000. The Navy authorized payment for that invoice in the full amount requested by Landmark. As a result, the Navy paid Landmark for work performed by Lloyd at the rate of almost $2,000 per equipment hour."

**Response**

The $590,000 paid to Lloyd Enterprises is the full amount of the subcontract between the parties. Based on Lloyd's Certified Payroll reports, Lloyd spent a total of 947 hours for this project which includes 458 equipment hours. Based on Lloyd's Certified Payroll Reports, the effective rate for the sitework is $623.02 per hour ($590,000 divided by 947 hours). The



EXHIBIT A
PAGE 7 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY
v.
THE UNITED STATES
No. 04-1255C

Complaints calculation of the "$2,000 per equipment hour" is incorrect in that it fails to consider the non-equipment hours worked by Lloyd.

An alternative and more appropriate analysis of the amount paid to Lloyd is the effective sitework cost per housing unit, which is $3,687.50 ($590,000 divided by 160 units). This unit cost rate should not have raised any issues or concerns by the Navy.

**Complaint**

At Par. C. 46, the First Amended Complaint alleges "The Navy had all of the information necessary to determine that Landmark intended to pay Lloyd almost $2,000 per equipment hour for the sitework. Nonetheless, the Navy still approved Landmark's invoice."

**Response**

As discussed in the preceding paragraph, the Complaints calculation of the $2,000 per equipment hour is incorrect and misleading. Based on the unit cost for the sitework, the Navy had sufficient basis for approving and paying Landmark's invoice.

**Complaint**

At Par. C. 72, the First Amended Complaint alleges "The $458,640 paid to Landmark for "asbestos and lead abatement" accounted for 52% of the amount budgeted by the NAS for that "activity". However, pursuant to the Navy's own records, Landmark had completed abatement in only 54 of the 160 units for which it had budgeted, or 34%. Thus, the Navy paid Landmark for abating 83 units when Landmark had only abated 54. Accordingly, Landmark was paid $158,760 for work it had not performed."



EXHIBIT A
PAGE 8 OF 38

WW0387

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

**Response**

As discussed earlier, the cost method for determining the percent complete is the appropriate method for calculating any "overpayments" given the limited and incomplete inventory records and documents in this case.

The cost method and overpayment calculation for the asbestos and lead abatement line item is as follows:

| | 180 Units | Less 21 Units[1] | 159 Units | Percent Complete |
|---|---|---|---|---|
| Landmark Construction | $242,509 | | $242,509 | 48% |
| Atherton Construction | $330,777 | 66,883 | $263,894 | 52% |
| Subtotal | $573,286 | | $506,403 | 100% |
| Average Cost Per Unit | $ 3,185 | | | |

| | |
|---|---|
| Landmark Schedule of Value Amount | $882,000 |
| Amounts Paid to Landmark | $458,640 |
| Landmark's Earned Value[2] | $422,377 |
| Overpayment | $ 36,263 |

Based on the cost method, the overpayment for asbestos and lead abatement is $36,263 versus the $158,760 included in the Complaint.

[1] The cost of the 21 units, as used in this report, was estimated by dividing the total cost incurred by both Landmark and Atherton by 180 units.

[2] The calculation of Landmark's earned value, as used in this report, is Landmark's Percent Complete times the Landmark Schedule of Value amount.



EXHIBIT A

PAGE 9 OF 38

WW0388

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

**Complaint**

At Par. C. 75, the First Amended Complaint alleges "The NAS included an activity identified as "personnel" for which Landmark had budgeted $728,834 for the entire Project. Separately, Landmark budgeted an amount for labor for each of the MFH units under Contract. Thus, the "personnel" activity was in addition to labor for building the MFH units. However, by June 1, 2001, the Navy had paid Landmark, or authorized payment, in the amount of $378,936 for "personnel", 52% of the amount budgeted by landmark for this line item."

**Response**

The personnel line item, in the amount of $728,834, which was budgeted separately from the per unit labor, consists of field office overhead or general conditions labor. It is appropriate and consistent with industry practices to budget this type of labor separately from the labor incurred for building the units. Furthermore, it is a generally recognized practice in the construction industry to treat general condition or field office type labor as a time variable costs and as a result "earn" and invoice for these costs ratably over time. This is how Landmark treated these costs in their Schedule of Values and accordingly, there was no overpayment for personnel.

**Complaint**

At Par. C. 76, the First Amended Complaint alleges "Payment by the Navy for 52% for the amount budgeted by Landmark for the "personnel" activity was inconsistent with the Contract requirements. The Contract required the Navy to make progress payments based upon work completed. However, the Navy based its payment for the "personnel" activity on the mere passage of time, which violate the terms of the Contract."



EXHIBIT A
PAGE 10 OF 38

**Response**

As discussed in the preceding response, Landmark treated these time variable general condition or field office overhead costs appropriately and consistent with industry practices and therefore, not in violation of the contract.

**Complaint**

At Par. C. 77, the First Amended Complaint alleges "At that time, Landmark was approximately 12% complete with the Project. Nonetheless, the Navy did not question any of the amounts requested by Landmark for "personnel. As a result, the Navy paid Landmark more than $291,500 for work that Landmark did not perform."

**Response**

Given the nature of the personnel costs (i.e. time variable or level of effort type cots) it would be inappropriate, as the Complaint suggests, to recognize or "earn" these type costs based on the actual percent complete of the unit construction. As discussed, the appropriate and industry recognized method is to recognize these costs with the passage of time, which is how Landmark treated the costs for invoicing purposes. Accordingly, there is no overpayment for personnel.

It should be noted however, that should Lumbermens be entitled to additional compensable, performance days, these days should be quantified and compensated for using a time-variable or daily rate approach. The daily rate would include any time-variable costs such as general conditions labor, field office expense, etc. Lumbermens and Atherton have not provided sufficient cost data to accurately calculate a field office overhead daily rate.

LUMBERMENS MUTUAL CASUALTY COMPANY
v.
THE UNITED STATES
No. 04-1255C

**Complaint**

At Par. D. 102, the First Amended Complaint alleges "Lumbermens incurred damages in excess of $4.160 million under its performance bond to complete the project. In addition, Lumbermens incurred damages of more than $550,000 under its payment bond to compensate suppliers and subcontractors that had not been paid by Landmark."

**Response**

This component of the alleged damages is duplicative of the separate claims for materials, personnel and subcontract costs. Furthermore, this claim is nothing more than a total cost approach whereby Lumbermens seeks all of its payments for the project. In addition to being duplicative, the amounts for these two claims include items that are unrelated to the issues in the complaint, such as the price differences between the Landmark and Atherton for performing the original scope of work. These amounts also fail to consider the value of materials and services received by Atherton and Lumbermens for the payments made to suppliers and subcontractors under the payment bond. Specific examples of the materials and supplies left by Landmark at termination can be found in Exhibit D.

**Complaint**

At Par. VII. A. 112, the First Amended Complaint alleges "As a result of the Navy's failure to comply with the terms of the Contract, Lumbermens was damaged in the amount of $4,099,708.16."

**Response**

This calculation of this claim amount is neither explained or supported. Furthermore, this amount is duplicative of the discreet claims for the material, personnel and subcontract amounts.



EXHIBIT A
PAGE 12 OF 38

**Complaint**

At Par. VII. A. 118, the First Amended Complaint alleges "As a result of the Navy's failure to comply with the terms of the Contract, Lumbermens was damaged in the amount of at least $4.5 million."

**Response**

This calculation of this claim amount is neither explained or supported. Furthermore, this amount is duplicative of the discreet claims for the material, personnel and subcontract amounts.

**Complaint**

At Par. VII. A. 128, the First Amended Complaint alleges "As a result of the Navy's failure to demand from landmark a Network Analysis Schedule that complied with Contract requirements, Lumbermens has been damaged by at least $2,000,000, the exact amount to be proven at trial."

**Response**

This calculation of this claim amount is neither explained or supported. Furthermore, this amount is duplicative of the discreet claims for the material, personnel and subcontract amounts.

**Complaint**

At Par. VII. A. 138. the First Amended Complaint alleges "As a result of the Navy's failures related to the Navy's payment to Landmark of $375,000 for doors and windows, Lumbermens was damaged in the amount of at least $131,775.00."



EXHIBIT A
PAGE 13 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

**Response**

As discussed earlier, the cost method for determining the percent complete is the appropriate method for calculating any "overpayments" given the limited and incomplete records inventory and documents in this case.

The cost method and overpayment calculation for the doors and windows line item is as follows:

| | 180 Units | Less 21 Units | 159 Units | Percent Complete |
|---|---|---|---|---|
| Landmark Construction | $ 485,784 | | $ 485,784 | 42% |
| Atherton Construction | $ 825,571 | 152,991 | $ 672,991 | 58% |
| Subtotal | $1,311,355 | | $1,158,364 | 100% |
| Average Cost Per Unit | $ 7,285 | | | |

| | |
|---|---|
| Landmark Schedule of Value Amount | $500,000 |
| Amounts Paid to Landmark | $375,000 |
| Landmark's Earned Value | $209,685 |
| Overpayment | $165,315 |

Based on the cost method, the maximum overpayment for doors and windows is $165,315 versus the $131,775 included in the Complaint.



EXHIBIT A
PAGE 14 OF 38

LUMBERMENS MUTUAL CASUALTY COMPANY

v.

THE UNITED STATES

No. 04-1255C

**Complaint**

At Par. VII. A. 148, the First Amended Complaint alleges "As a result of the Navy's failures involved to the Navy's payment to Landmark of $260,000 for cabinets, Lumbermens was damaged in the amount of at least $232,607."

**Response**

As discussed earlier, the cost method for determining the percent complete is the appropriate method for calculating any "overpayments" given the limited and incomplete inventory records and documents in this case.

The cost method and overpayment calculation for the cabinet line item is as follows:

| | 180 Units | Less 21 Units | 159 Units | Percent Complete |
|---|---|---|---|---|
| Landmark Construction | $162,002 | | $162,002 | 25% |
| Atherton Construction | $564,355 | 84,742 | $479,613 | 75% |
| Subtotal | $726,357 | | $641,615 | 100% |
| Average Cost Per Unit | $ 4,035 | | | |
| | | | | |
| Landmark Schedule of Value Amount | $500,000 | | | |
| Amounts Paid to Landmark | $260,000 | | | |
| Landmark's Earned Value | $126,245 | | | |
| Overpayment | $133,755 | | | |

Based on the cost method, the maximum overpayment for cabinets is $133,755 versus the $232,607 included in the Complaint.



EXHIBIT A
PAGE 15 OF 38 WW0394

LUMBERMENS MUTUAL CASUALTY COMPANY
v.
THE UNITED STATES
No. 04-1255C

**Complaint**

At Par. VII. A. Par.158, the First Amended Complaint alleges "As a result of the Navy's failures involved to the Navy's payment to Landmark of $156,000 for paint, Lumbermens was damaged in the amount of at least $136,479."

**Response**

The records kept by Landmark do not provide the necessary information for a cost based percent complete to be calculated. Therefore, the overpayment has been calculated using the number of units completed and turned over multiplied by the average earned value per unit. The calculation is as follows:

| | |
|---|---|
| Schedule of Value amount for painting | $ 300,000 |
| Number of units | 160 |
| Earned value per unit | $ 1,875 |
| | |
| Number of units completed and turned over | 22 |
| Earned value[3] | $ 41,250 |
| Amount paid to Landmark for paint | $ 156,000 |
| Maximum amount of overpayment | $114,750 |

The earned value above does not include the value of the paint purchased, stored and subsequently used by Atherton. As discussed earlier in this report, the inventory records for materials and supplies are incomplete and therefore cannot be used to determine the actual quantities of materials and supplies at the date of termination. However, there are numerous examples of paint that was purchased, stored and available to Atherton in Exhibit D.

3. The earned value was calculated by multiplying the earned value per unit by the number of units completed and turned over.



EXHIBIT A
PAGE 16 OF 38
WW0395

Accordingly, the earned value calculated above is a conservative estimate and the resulting overpayment amount is the maximum value of the range of overpayment for paint.

Based on the above method, the maximum overpayment for paint is $114,750 versus the $136,479 included in the Complaint.

**Complaint**

At Par VII. A. 168, the First Amended Complaint alleges "As a result of the Navy's failures involved to the Navy's payment to Landmark of $485,940 for flooring, Lumbermens was damaged in the amount of at least $333,940."

**Response**

As discussed earlier, the cost method for determining the percent complete is the appropriate method for calculating any "overpayments" given the limited and incomplete inventory records and documents in this case.

The cost method and overpayment calculations for the flooring line item is as follows:

| | 180 Units | Less 21 Units | 159 Units | Percent Complete |
|---|---|---|---|---|
| Landmark Construction | $350,836 | | $350,836 | 48% |
| Atherton Construction | $475,631 | 96,421 | $379,210 | 52% |
| Subtotal | $826,467 | | $730,046 | 100% |
| Average Cost Per Unit | $ 4,591 | | | |



EXHIBIT A
PAGE 17 OF 38

| | |
|---|---|
| Landmark Schedule of Value Amount | $485,940 |
| Amounts Paid to Landmark | $485,940 |
| Landmark's Earned Value | $233,527 |
| Overpayment | $252,413 |

Based on the cost method, the overpayment for doors and windows is $252,433 versus the $333,940 included in the Complaint.

**Complaint**

At Par. VII. A. 178, the First Amended Complaint alleges "As a result of the Navy's failures involved to the Navy's payment to Landmark of $257,040 for siding, Lumbermens was damaged in the amount of at least $172,128."

**Response**

The records kept by Landmark do not provide the information for a cost based percent complete to be determined, therefore the overpayment has been calculated using the number of units completed and turned over and the average earned value per unit. The calculation is as follows:

| | |
|---|---|
| Schedule of value amount for siding | $ 287,040 |
| Number of units | 160 |
| Earned value per unit | $ 1,794 |

| | |
|---|---|
| Number of units completed and turned over | 22 |
| Earned value | $ 39,468 |
| Amount paid to Landmark for siding | $ 287,040 |
| Maximum amount of overpayment | $ 247,572 |