**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-1255C<br><br>Honorable Robert H. Hodges, Jr. |

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY REGARDING MITIGATION

Pursuant to Rules of the Court of Federal Claims 26(a)(2) and 37(c)(1), Plaintiff Lumbermens Mutual Casualty Company ("Lumbermens") seeks to exclude expert testimony on mitigation by any of Defendant United States' ("Navy" or "government") experts.

## I. INTRODUCTION

This case concerns the Navy's improper payment of contract funds to Landmark Construction Corporation ("Landmark"), the defaulted contractor, as a result of failures to enforce several mandatory payment terms of the contract. Lumbermens provided payment and performance bonds to Landmark and the Navy's improper payment of contract funds impaired Lumbermens' security for those bonds. Lumbermens was damaged to the extent of the Navy's overpayments because it had to pay the takeover contractor to complete the work that Landmark had been paid for, but never performed.

The Navy will bear the burden of demonstrating that Lumbermens' damages were mitigated by the fact that Landmark, in fact, used improper payments to perform the contract

and thereby reduce Lumbermens' liability as surety. However, neither of the Navy's experts expresses any opinion concerning whether Landmark used the Navy's improper payments to further its performance or even any general opinion that Lumbermens' damages were mitigated. Because they have failed to state such an opinion in their disclosed expert reports, the Navy's experts are not permitted to offer testimony regarding mitigation at trial.

## II. STATEMENT OF THE ISSUES

1. Are the Navy's experts barred from testifying as to mitigation of Lumbermens' claimed damages due to Landmark's beneficial use of improperly paid contract funds because they have not disclosed any opinion on the subject in their expert reports?

## III. STATEMENT OF FACTS

Lumbermens was the surety for the Whole Site Repair/Revitalization of the Maylor Capehart Housing Area on the Whidbey Island Naval Air Station ("project"). Landmark was the original contractor for the project, which consisted of renovating 160 military family units (subsequently increased to 181 units), but was terminated for default. At termination, the Navy had paid Landmark $4,793,633.76, almost 40% of the total Contract price. First Amended Complaint; Answers to First Amended Complaint, ¶82. However, Landmark had only renovated 22 of the 181 units, or 12% of its promised performance. *Id.* After default, the Navy called upon Lumbermens to perform under the performance bond and Lumbermens, the Navy, and Atherton Construction, Inc. ("Atherton") executed a Takeover Agreement pursuant to which Atherton would complete the project. However, the Navy had insufficient Contract funds remaining to pay Atherton and Lumbermens, pursuant to its obligations under the performance bond, paid the difference. In total, Lumbermens paid Atherton in excess of $4 million over the $7,392,381.24 Contract balance that remained

when Landmark was terminated. Declaration of Matthew Muretta ("Muretta Decl."), ¶8.[1] In addition, Lumbermens made payments in excess of $550,000 to subcontractors and suppliers who had not been paid by Landmark, pursuant to its payment bond. Lumbermens' claimed damages include money it paid to Atherton and to Landmark's subcontractors and suppliers to cover contract funds that the Navy improperly paid to Landmark, which Landmark did not use to perform actual remodeling work or to advance the project towards completion in any way.

The Navy has offered two experts to testify at trial, Wiley Wright, a certified public accountant, as an expert witness on damages[2] and Richard C. Paullin, proffered as an expert on analysis of construction schedules. Both experts have disclosed expert reports stating the opinions to which they will testify at trial.

## IV. ARGUMENT

### A. Defendant's Experts' Reports Contain No Opinions Concerning Mitigation of Lumbermens' Damages, An Element On Which Defendant Carries the Burden of Proof; Absent Such Disclosure, Expert Testimony on This Issue Must Be Excluded.

1. The Navy bears the burden of proving that damages from its failure to properly enforce the Contract's terms were mitigated by the beneficial use of improperly disbursed funds.

Lumbermens' claims are principally based upon the theory of "pro tanto discharge" or impairment of suretyship: where there has been a material departure from contractual provisions relating to payments or the security of retained funds, a compensated surety is discharged from its obligations on the performance bond to the extent that such unauthorized payments result in

[1] The Muretta Declaration was previously filed by Plaintiff in its Opposition to Defendant's Motion to Dismiss and is Document 17-1 in the docket of the case.

[2] By separate Motion in Limine Plaintiff has moved to exclude the testimony of Wiley Wright in its entirety because it fails to address the relevant damages issues and because it is founded upon an unreliable methodology.

prejudice or injury. *National Union Indem. Co. v. G. E. Bass & Co.*, 369 F.2d 75, 77 (5th Cir. 1966); *United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1385 (9th Cir. 1986). In the Federal Circuit, the seminal decision in this field is *National Surety Corp. v. United States*, 118 F.3d 1542 (Fed. Cir. 1997). More recently in *Nova Casualty Co. v. United States*, 72 Fed. Cl. 755 (2006), this Court used the discharge doctrine as described in *National Surety* to find that the government was liable to the surety for making a payment to the contractor that should not have been made.

In order to recover under the discharge/impairment theory, Lumbermens bears the initial burden of establishing that the Navy materially departed from contractual provisions related to payment and the security of retained funds. *See National Surety*, 118 F.3d at 1545-47. Once established, the mere fact of impairment creates a presumption that the surety was prejudiced by the total amount of the improper progress payments. *Id.* at 1548; *Reliance Ins. Co. v. Colbert*, 124 U.S. App. D.C. 339, 365 F.2d 530, 535 (D.C. Cir. 1966). The burden of proof then shifts to the Navy to show that the Lumbermens did not suffer any prejudice from the improper payments or that the Lumbermens' prejudice was mitigated. *Id.*; *see also Mergentime Corp. v. Washington Metro. Area Transit Auth.*, 775 F. Supp. 14, 21 (D.D.C. 1991) (stating that the "obligee bears the burden of persuasion on the issue of prejudice").

To carry its mitigation burden, the Navy must produce specific evidence showing that Landmark used the Navy's improper payments to reduce Lumbermens' subsequent performance. *See, e.g., Ramada Development Co. v. U.S. Fidelity & Guar. Co.*, 626 F.2d 517, 521-22 (6th Cir. 1980). As set forth by the Federal Circuit in *National Surety*:

> [The surety's] recovery should not exceed any losses that ensued, directly or indirectly, from the impairment of the security. Thus it is relevant to consider what the contractor did with the released funds. If the unauthorized payments were expended for the purposes of the

> contract so that the extent of the surety's subsequent performance was reduced thereby, any injury to the surety would to that extent be mitigated.

118 F.3d at 1548 (emphasis added).

2. The Navy's experts offered no opinions concerning mitigation in their disclosed expert reports and cannot, therefore, do so at trial.

Rule of the Court of Federal Claims 26(a)(2) requires timely disclosure of a written report for any expert witness who will testify at trial. RCFC 26(a)(2) (providing that disclosure of testifying experts "shall . . . be accompanied by a written report prepared and signed by the witness."). "The report *shall* contain a *complete* statement of all opinions to be expressed and the basis and reasons therefore." RCFC 26(a)(2)(B). Full disclosure is critical, a Rule 26(a)(2) expert report must be "detailed and complete" in describing the opinions and testimony that an expert will offer on direct examination and not vague. *See* Fed. R. Civ. P. 26 Advisory Committee's note (1993 Amendments); *Salgado by Salgado v. GMC*, 150 F.3d 735, 742 n.6 (7th Cir. 1998); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).

The requirement of complete disclosure of expert opinions in the expert report is mandatory, "[a] party that without substantial justification fails to disclose information required by RCFC 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed. RCFC 37(c)(1); *see also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) (finding that exclusion of expert testimony was not an abuse of discretion where there was no evidence that failure to disclose an expert's report was harmless); *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1549 (Fed. Cir. 1984) (noting that the duty to disclose expert witnesses is enforced through sanctions, including the exclusion of evidence); *Lencco Racing Co. v. Jolliffe*, 1999 U.S. App. LEXIS

14239, *5 (Fed. Cir. 1999) ("Rule 37(c)(1) of the Federal Rules of Civil Procedure gives district courts discretion to forbid the use of information that was not disclosed to the opposing party in accordance with Fed. R. Civ. P. 26(a).").

In his expert report Wiley Wright expresses five opinions: (1) Lumbermens' claimed damages are overstated; (2) Lumbermens' claimed damages are duplicative; (3) Lumbermens' claimed damages amount to a "total cost claim"; (4) Lumbermens' approach to its damages claims is inappropriate; and (5) the proper way to measure damages is to deduct the value of the work Landmark actually performed from the amount that Landmark was paid by the Navy. *See* Expert Report of Wiley R. Wright III ("Wright Report"), p. 2-3. With respect to his fifth opinion, Wright states two sub-opinions: that the valuation of actual work performed cannot be accomplished using Landmark's actual costs and that actual work performed must be estimated by comparing the expenses and liabilities of Landmark and the takeover contractor using the "cost-to-cost" method. *Id.*, p. 3. Wright expressly confirmed that those were the only opinions he has formed in this matter. Deposition of Wiley R. Wright ("Wright Deposition"), 35: 10-21 ("Q: . . . you list . . . I guess, 5, primary opinions. Is that it? A: Yes. Q: Are those the only opinions that you're expressing in this particular case in this expert report? A: Yes, those are the five general areas. But there may be subopinions underneath those general areas"). None of these opinions address whether Lumbermens' damages were mitigated by the beneficial use of contract funds improperly paid to Landmark. In fact, nowhere in his expert report does Wright state his opinion or belief that the Navy's improper payments were used by Landmark to advance contract performance. To the extent that such an opinion could be twisted from Wright's report, the report would be impermissibly incomplete and vague with respect to that opinion, and would fail to satisfy the mandatory full disclosure requirements of RCFC 26(a)(2).

Wright does, however, make a telling admission. In one of his statements of opinion Wright opines that "there are insufficient records to determine the actual quantities of the materials as of the termination date . . . ." Wright Report, p.3; *see also* Wright Deposition 54: 12-17. If it is Wright's opinion that the amount of materials actually purchased by Landmark with contract funds cannot be determined, then it would be impossible to form a reliable opinion as to the amount of contract funds that Landmark used to perform the contract. Therefore, not only did Wright not express a direct opinion, he clearly suggested that he is unable to form an opinion as to the amount of Lumbermens' damages that have been mitigated.

Richard Paullin has stated that his expertise is in construction schedule and progress analysis and that he was hired by the Navy to perform such analysis on the schedules and course of performance of the project. *See* Expert Report of Richard C. Paullin ("Paullin Report"), p. 2. Paullin has provided an expert report in which he discloses 12 primary opinions. Paullin Report, pp. 2-3. Not surprisingly, given his professed qualifications and scope of engagement, none of these opinions are related in any way to the use of contract funds paid to Landmark or whether that use served to mitigate Lumbermens' damages. *See id*. Because Paullin's analysis and proffered opinions are also unrelated to the issue of mitigation, he should not be permitted to so testify at trial.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court rule that any expert testimony on the issue of mitigation of Lumbermans' damages due to Landmarks' beneficial use of improperly paid contract funds is inadmissible.

DATED this 1st day of August, 2007.

By: s/Mark G. Jackson
Mark G. Jackson, WSBA #18325

GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101
(206) 464-3939
(206) 464-0125 – fax

Counsel of Record for Plaintiff
Lumbermens Mutual Casualty Company