IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff, | ) | No. 04-1255C (Judge Robert H. Hodges) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY REGARDING MITIGATION

Pursuant to Rule 7.2 (c) of the Court of Federal Claims, defendant, the United States, respectfully responds to the motion of plaintiff, Lumbermens Mutual Casualty Company (Lumbermens), to exclude expert testimony regarding mitigation.

The gravamen of Lumbermens' motion is that the Government's experts should not be permitted to testify at trial about "mitigation" because the experts expressed no opinions concerning "mitigation" in their expert reports. As we understand "mitigation" as Lumbermens uses it, the Government's experts should not be permitted to testify, apparently directly or indirectly, or as a factual matter or as an opinion, that Landmark used the funds paid to it by the Navy under the contract to perform under the contract. Lumbermens' position is patently ludicrous. First, there is no dispute that Landmark purchased materials and paid labor costs, and overhead expenses during its performance under the contract. It is absurd to assume, as Lumbermens necessarily does, that Landmark used funds for these goods and services other than those provided to Landmark by the Navy pursuant to the contract. Second, the Government's experts clearly assumed in doing their analysis that Landmark spent money performing under the

contract and that the money used was paid to Landmark under the contract.

Clearly, there is no requirement that an expert express such a reasonable, logical, and self-evident assumption, that the funds expended by Landmark under the contract were the same funds that the Navy had paid to Landmark pursuant to the contract, in an expert report as an "opinion." By raising this spurious issue, Lumbermens is tacitly acknowledging that even in the unlikely event that this Court finds that the contract provisions at issue were included in the contract for the benefit of Lumbermens, which they were not, and that the Government breached such provisions, which we did not, if the funds provided by the Navy were used in the performance of the contract, which they were, Lumbermens will recover nothing. Because there is no evidence that the funds provided were not used for performance under the contract, with the exception of the funds that were stolen by Landmark's corporate personnel, for which the Government bears absolutely no liability, and which has nothing to do with whether or not the Navy breached the contractual provisions at issue, Lumbermens' motion should be denied.

When the Government makes progress payments to a contractor under a fixed price contract, the assumption is that those payments will be used to further performance under the contract, an assumption the Government's experts obviously made in this case. Without making such a basic assumption, a cost analysis and a delay analysis could not be accomplished since there would be no performance to measure, in terms of dollars spent, or progress made. In this case, the evidence will demonstrated that the only reason that Landmark defaulted was that Landmark's corporate office (corporate Landmark personnel) did not provide the Landmark personnel responsible for performance under the contract (on-site Landmark personnel) all of the the progress payments made by the Navy. In short, corporate Landmark personnel stole the

money that was intended to be used by the on-site Landmark personnel to complete the project. Lumbermens has made no allegation that the Navy personnel assigned to the project could have done anything to prevent corporate Landmark's theft of the Government-provided funds. All of the contract funds that the Navy paid to Landmark were either used by Landmark in its performance under the contract, or were stolen by corporate Landmark personnel through no fault of the Government. There is no legal or factual basis upon which the Court should give credit for those stolen funds to Lumbermens. Thus, it was entirely appropriate for the Government's experts to assume that all of the contract funds were used during the performance of the project, especially given that the magnitude of the theft is not known.

What Lumbermens' concern appears to be is that even if Lumbermens establishes impairment of suretyship as a matter of fact and law, the Government will attempt to establish that all of the alleged overpayments to Landmark were used during the performance of the project, so thus inured to Lumbermens' benefit in any event. Thus, Lumbermens fears that it could win the battle, but lose the war. Lumbermens' fears may be well-placed because its claim, like this motion, has neither legal nor factual support.

Lumbermens asserts that ". . . neither of the Navy's experts expresses any opinion concerning whether Landmark used the Navy's improper payments to further its performance . . " Plaintiff's Motion In Limine To Exclude Expert Testimony Regarding Mitigation (Pl.'s Motion) at 2. First, neither of the Government's experts opined that the Navy's payments were improper. Second, Lumbermens implies that the Government's experts should have expressly stated the patently obvious fact that Landmark used the Navy's payments to further its performance. Both experts in their reports undisputedly assumed that statement to be true, because that's what

contractors do when they receive payments: they spend money to make progress. Moreover, even though the Government's experts in their reports do not explicitly state the obvious, they do discuss how Landmark used the Navy's payments to further its performance. In general terms, Mr. Wright, the Government's damages expert, in his report, describes the amounts that Landmark spent on material, and Mr. Paullin, the Government's scheduling expert, in his report, discusses the progress Landmark made, progress obviously made with the funds paid to Landmark by the Navy, and as well progress made by Landmark on items for which Landmark was not paid. In short, one of the Government's experts discussed how much Landmark spent, and the other expert discussed how much progress Landmark made with the Navy provided funds.

Specifically, Mr. Paullin, in his report, stated his opinion regarding the progress made by Landmark during its performance of the contract, and the amount of money paid by the Navy to Landmark to accomplish that progress. In other words, Mr. Paullin specifically addressed the amount of work accomplished by Landmark, and compared it to the amount of money paid by the Navy to Landmark. As a result of his analysis, for example, Mr. Paullin established that the project was delayed by 42 days during the final months of Landmark's contract performance as the result of the difficulties that the on-site Landmark personnel were experiencing because corporate Landmark personnel were withholding payments made by the Navy. Implicitly, Mr. Paullin is acknowledging that corporate Landmark personnel were stealing Navy funds and that the resulting delay in performance was due to Landmark, and not due to the Navy. Clearly, Lumbermens as surety to Landmark is stepping into the shoes of Landmark and thus is liable for the stolen funds and liable for that period of delay.

Mr. Wright, in his expert report, expresses five opinions: (1) Lumbermens' claimed damages are overstated; (2) Lumbermens' claimed damages are duplicative; (3) Lumbermens' claimed damages amount to a "total cost claim;" (4) Lumbermens' approach to its damages claims is inappropriate; and (5) the proper way to measure damages is to deduct the value of the work Landmark actually performed from the amount that Landmark was paid by the Navy. Lumbermens claims that none of these opinions address whether Lumbermens' damages were mitigated by the beneficial use of contract funds improperly paid to Landmark, and that Mr. Wright does not state that the Navy's improper payments were used by Landmark to advance contract performance. Lumbermens mis-characterizes the opinions of Mr. Wright. Clearly, opinion number 5, which states "that the proper way to measure damages is to deduct the value of the work Landmark actually performed from the amount that Landmark was paid by the Navy," specifically addresses the beneficial use of the contract funds paid to Landmark, the beneficial use being the "value of the work Landmark actually performed."

Mr. Wright in his report also addresses the percent complete for the schedule of prices line items in dispute. The mere fact that any line item reflects that work was partially completed, that is, a percentage complete, implicitly asserts that Lumbermens' subsequent payments were mitigated by the payments made to Landmark. Had Mr. Wright not assumed that Landmark used the Government-provided funds to accomplish progress on the project, Mr. Wright's damage calculations would not have included any amounts for Landmark in the cost-to-cost percent complete calculations. This is why Lumbermens' argument is absurd. Unless Lumbermens now contends that Landmark did not use any of the Government-provided funds to make progress, its position regarding the fact that Government's experts did not explicitly discuss mitigation makes

no sense.

Moreover, Mr. Wright addressed the beneficial nature of the payments made to Landmark. This is illustrated, as an example, by the site work payment. The Navy paid Landmark $590,000 for the site work line item, which represents 100 percent of the site work. While Lumbermens disputes the reasonableness of the amount paid for the site work, Lumbermens does not dispute that the site work was performed. Lumbermens thus clearly acknowledges that Landmark did advance the project towards completion, progress that could only be accomplished through the expenditure of funds.

Finally, Lumbermens itself acknowledges, through its recognition of the percent complete (albeit incorrect) for the housing units, that the payments made to Landmark were used to perform actual remodeling work or to advance the project towards completion. Had Landmark not performed actual renovation work, or advanced the project toward completion, Lumbermens' determination of the percent complete should have been zero. It was not. In addition, Lumbermens itself states in is motion that "Landmark had only renovated 22 of the 181 units, or 12% of its promised performance." Pl.'s Motion at 2. Thus, by its own admission, Lumbermens recognizes that the payments made to Landmark were for actual remodeling work that advanced the project toward completion. Moreover, to the extent that Lumbermens' expert has reflected any percentage completion, he has has acknowledged that the Landmark payments were for actual remodeling work and advancing the project towards completion.

In summary, there is no question that the Navy, Lumbermens, and both parties' experts have recognized in their respective positions that the payments made to Landmark advanced the project towards completion. Accordingly, we respectfully request that the Court deny

Lumbermens' motion to exclude expert testimony regarding mitigation.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

September 7, 2007

Attorneys for Defendant