**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-1255C<br><br>Honorable Robert H. Hodges, Jr. |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF WILEY WRIGHT

## I. INTRODUCTION

Plaintiff asks this Court to prohibit Mr. Wright's testimony because he applies a *modified* cost-to-cost approach to a situation for which the original methodology was not designed and has never been used. Further, his methodology has not been subjected to peer review and there exist neither professional standards nor guidance to evaluate his application of his modified cost-to-cost methodology to these facts. In addition to the lack of any indicia of reliability for the application for the modified cost-to-cost methodology to these facts, the manner in which Mr. Wright performs his analysis induces further unreliability. As a result, any testimony by Mr. Wright which relies upon the modified cost-to-cost methodology should be precluded.

## II. ARGUMENT

### A. Defendant, not Plaintiff, bears the burden on this issue.

In its response, Defendant appears to suggest that it is Plaintiff's burden to demonstrate why Mr. Wright's methodology and testimony are unreliable and inadmissible under *Daubert*.

On the contrary, it is the *proponent* of expert testimony who carries the "substantial burden" of proving its admissibility, including the scientific or technical reliability of the expert's methodology under *Daubert*, by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. Thus, the proponent must demonstrate that the witness is qualified to testify competently, *that his opinions are based on sound methodology*, and that his testimony will be helpful to the trier of fact." (emphasis added) (citations omitted)); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) ("It is the proponent of [scientific expert] testimony that must establish its admissibility by a preponderance of proof."); *Meister v. Medical Engineering Corp.*, 267 F.3d 1123, 1127 n.9 (D.C. Cir. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 n.10 (1993)). Defendant's approach to defending Mr. Wright's methods and testimony flips this substantial burden on its head, and is further indication that they do not meet *Daubert* standards of reliability by a preponderance of the evidence.

**B. Expert testimony is admissible only if it is based on a reliable methodology.**

The admissibility of expert testimony is governed by the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and Federal Rule of Evidence 702. Under *Daubert* and *Kumho*, courts must only admit expert opinions that are related to the issues in dispute and are reliable and non-speculative. *Daubert*, 509 U.S. at 589 ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); *Kumho Tire*, 526 U.S. at 152 (extending *Daubert* to non-scientific, technical or specialized expert evidence); *Microstrategy*

*Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2005). To establish reliability, Defendant must show that the proffered expert correctly employed methods that are well founded in the knowledge and practice of his discipline to an appropriate and adequate set of facts and data. *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 152 (noting that *Daubert*'s relevancy and reliability requirements are intended "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."); *see also* Fed. R. Evid. 702 (providing that an expert witness may testify in the form of an opinion if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.").

**C. Mr. Wright's modified cost-to-cost method is not supported by any of the traditional indicia of reliability.**

*Daubert* identified a non-exclusive list of factors that a court may consider in deciding whether an expert's methodology and, ultimately, opinion is reliable. Where appropriate, the court should consider whether a proffered expert's methodology (1) can be, or has been tested; (2) whether the methodology has been subjected to peer review and/or publication; (3) whether the methodology has a known rate of error; (4) whether there are standards governing the use of the methodology, and whether those standards were followed by the expert; and (5) whether the methodology has gained general acceptance within the expert's field for the purposes for which it has been employed. *See Daubert*, 509 U.S. at 593-94. Mr. Wright's modified cost-to-cost methodology as applied by him here fails to satisfy any of these considerations.

As Mr. Wright acknowledges, the cost-to-cost methodology is intended to be used in the context of a single contractor on a single contract as an alternative method of determining that

contractor's percent complete: "[Statement of Position 81-1] deals with the accounting for long term construction contracts for an entity. That's not the circumstances here. We're not trying to determine the percent complete of a single entity."[1] Mr. Wright in his report attempts to extend that generally accepted method of determining percent complete to an entirely different situation presented by these undisputed facts. As Mr. Wright further acknowledges, the cost-to-cost methodology has never—at least to his knowledge—been applied in such a manner. His deposition testimony on that point is clear:

> Q: … So what is, I guess, the basis for using the cost-to-cost method of determining percent complete in the manner you're using it? How is that accepted in your industry?
>
> A: You won't find a statement of position or any other generally accepted accounting principle per se that deals with a calculation of percent complete in the context of a default by one contractor and the takeover of another contractor.[2]

He went on to testify that he is unaware of any guidance or description of how the cost-to-cost methodology is or should be applied in this context:

> Q: … What I'm asking is is there one of those documents that you just described that would say how to use or describe how to use the cost-to-cost method in the context of two contractors completing the same project one after the other?
>
> A: Not that I'm aware of.[3]

Moreover, not only has Mr. Wright never applied the cost-to-cost methodology in this manner before, he knows of nobody else who has:

> Q: Have you used the cost-to-cost method before in this manner?
>
> A: Yes, I've used the cost-to-cost method before in determining percentage of completion.
>
> Q: In this manner?

---

[1] Declaration of Jared Van Kirk, Exhibit C, p. 11, lines 6-9.
[2] *Id.*, lines 14-22.
[3] *Id.*, p. 13, lines 7-12.

A: Can you explain by what you by mean in this manner?

Q: Yes, two contractors, one project. One terminated, one follow-on completion contractor using the cost-to-cost method of determining percent complete for each contractor.

A: In these circumstances?

Q: Yes.

A: No, because in other circumstances, we've had complete, objective records to do the calculation differently.

Q: Are you aware of anybody else using it in the manner you've used it here in your expert report?

A: Not that I can think of.[4]

In addition, there exists no peer review of this application of the cost-to-cost method:

Q: Are you aware of any articles or peer review papers addressing the cost-to-cost method as used by you in this context?

A: Not that I can think of.[5]

In the end, this Court is left with nothing but this—the assertion that Mr. Wright's application of the cost-to-cost method in these unique circumstances is appropriate only because Mr. Wright says so. Ultimately, a court may not simply rely on an expert's assurances that his methods and opinions are reliable; rather, a court must exercise its independent gatekeeping authority to admit only reliable expert testimony. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Because the methodology underlying Mr. Wright's opinion is untested, unguided, and not generally employed when applied in the manner he described, his testimony based on this

[4] *Id.*, p. 16, line 9 – p. 17, line 5.
[5] *Id.*, p. 17, lines 6-9.

methodology should be excluded as unreliable. *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (finding a damages model unreliable where it was "unique to this case and not based on any recognized standard," "not in regular usage," "not peer reviewed," and "has no uniform usage in any known industry.").

**D. Mr. Wright's application of the cost-to-cost methodology induced further unreliability.**

Even if the cost-to-cost methodology could be applied as modified by Mr. Wright to these facts, his method of doing so results in even further unreliability. First, he assumes that Landmark actually completed work on the project commensurate with each of its "costs":

> Q: Now, insofar as material cost, does not this cost-to-cost method also assume that all the costs incurred for material – by Landmark for material – that that material was, in fact, used for the project?
>
> A: Yes.
>
> Q: Do you know if that's true?
>
> A: No.[6]

In other words, the method assumes a direct relationship between the contractor's expenses (regardless of whether the expenses were paid) and its percentage completion of the project. This assumption makes a cost-to-cost calculation even more unreliable.

Second, the cost-to-cost method assumes that both the original and takeover contractor acquired materials and performed services for the same cost, and that they were equally efficient.[7] This assumption further weakens Wright's multiple contractor cost-to-cost method because it allows one contractor's contribution to actual work completed to be overvalued simply because its per unit or per hour costs were relatively higher.

---

[6] *Id.*, p. 32, lines 18 – p.33, line 3.
[7] *Id.*, p. 31, lines 9-12.

Third, this methodology as applied by Mr. Wright makes no distinction between materials costs that Landmark *actually* incurred, i.e., paid to its suppliers and subcontractors, and its *obligations* to pay for materials that were never satisfied. That is, whether or not Landmark actually paid for the materials it ordered or services rendered, it incurred a "cost" for the purposes of Wright's cost-to-cost method and was credited for performance:

> Q: . . . So in the context of actually performed, as you use here, is it fair to say that your definition includes for the purposes of material, procurement, material for which the contractor has incurred a liability but not yet satisfied, as well as those material for which it has incurred a liability and satisfied?
>
> A: Yes. And that would be not just my definition; that would be consistent with generally accepted accounting principles.[8]

Wright also testified that Landmark's job-to-date costs, on which he exclusively relied, included "both accounts paid and accounts payable." Wright Deposition, 100: 9-11. By affording identical treatment to accounts paid and unsatisfied accounts payable, the cost-to-cost method as applied by Mr. Wright routinely overestimates actual costs where a terminated contractor does not pay its bills.

Finally, the cost-to-cost method as applied by Mr. Wright does not consider primary sources of data regarding Landmark's actual expenditures for project materials, but instead relies solely upon Landmark's self-reporting of its job-to-date costs, which is assumed under Wright's methodology:

> Q: So what did you do to satisfy yourself of the accuracy and reliability of the information contained in [Landmark's cost records]?
>
> A: I had to assume that the information reflected in Landmark's job cost ledger was accurate in the same manner that I had to assume the cost information in Atherton's job cost ledger was accurate.[9]

[8] *Id.*, p. 5, lines 7-16

[9] *Id.*, p. 21, lines 14-21.

This assumption, and the lack of any protocol for verifying that data meets a desired level of accuracy, further undermines the reliability of Mr. Wright's methodology. *See United States v. Rockwell Space Operations Co.*, 2002 U.S. Dist Lexis 6650, *27-28 (2002) (finding an expert accountant's calculation of a subcontractor's overcharges to the government was unreliable and inadmissible where the expert accepted as true the Plaintiff's own non-expert estimates without verifying their accuracy).

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find the proffered opinions of Defendant's expert witness on damages unreliable and inadmissible at trial, to the extent those opinions are based on the application of the modified cost-for-cost methodology as done by Mr. Wright.

DATED this 14th day of September, 2007.

By:__s/Mark G. Jackson___________
Mark G. Jackson, WSBA #18325

GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101
(206) 464-3939
(206) 464-0125 – fax

Counsel of Record for Plaintiff
Lumbermens Mutual Casualty Company
SEA_DOCS:862387.1