IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY, | ) | |
| Plaintiff, | ) | No. 04-1255C |
| v. | ) | (Judge Robert H. Hodges) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF WILEY WRIGHT

Pursuant to this Court's October 10, 2007 order, defendant, the United States, respectfully responds to the reply of plaintiff, Lumbermens Mutual Surety Company (Lumbermens) to our opposition to Lumbermens' motion to exclude the testimony of Wiley Wright. Because the exclusion of the Government's expert witness in this matter is not legally or factually warranted, Lumbermens' motion should be denied.

Lumbermens in its reply asserted that the "cost-to-cost methodology is intended to be used in the context of a single contractor on a single contract as an alternative method of determining that contractor's percent complete." Plaintiff's Reply To Defendant's Opposition To Plaintiff's Motion In Limine To Exclude Expert Testimony of Wiley Wright (Reply) at 3-4. While that statement is true, it does not mean that the cost-to-cost method is not a sound and reliable basis for analyzing the facts presented by this case. Declaration of Wiley R. Wright, III, In Support Of Defendant's Sur-reply To Plaintiff's Reply To Defendant's Opposition to Plaintiff's Motion In Limine To Exclude Expert Testimony of Wiley Wright (Wright Decl.), ¶ 6. It is Mr. Wright's opinion that

the modified cost-to-cost method he used in forming his expert opinions in this matter is supported by the traditional indicia of reliability, Wright Decl., ¶ 4, and in fact is a preferred method of determining the percent complete to be used in revenue recognition for long term construction contracts, such as the one at issue here, under generally accepted accounting principles. Id. Mr. Wright used the conceptual basis of this generally recognized method for determining the percent complete of Landmark with respect to the disputed schedule of prices line items, and for calculating the appropriate amount of revenue to be recognized for each of these line items. Id.

As Mr. Wright previously explained, the cost-to-cost method compares the actual cost of a contractor at a particular point in time to the total projected cost expected to be incurred under the contract. Wright Decl., ¶ 7. In a financial statement, the total projected cost of a contract includes both the actual cost incurred to date, and an estimate of the costs to complete. Wright Decl., ¶ 8. As recognized in SOP 81-1, there are certain risks inherent in the cost to complete information. Id. In this case, an estimate of the cost to complete is not necessary, since the cost of completing the activities in question are known. Id. The costs are simply the actual cost incurred by Landmark, and the actual cost incurred by Atherton. Id.

In performing his analysis, Mr. Wright obtained the actual cost information from the books and records of both Landmark and Atherton. Wright Decl., ¶ 9. Mr. Wright's use of the "modified cost-to-cost" method eliminates the risk of using estimated costs to complete by replacing them with actual cost data. Wright Decl., ¶ 10. Accordingly, the "modified cost-to-cost" method has a higher degree of reliability than the strict application of the generally accepted accounting principle applicable to the determination

of the revenue earned at a given point in time. Id.

As Mr. Wright previously stated, SOP 81-1 is the generally accepted accounting principle applicable to long term construction contracts, and it specifies the methods by which revenue recognition can be determined. Wright Decl., ¶ 11. One of the preferred methods for revenue recognition under SOP 81-1 is the cost-to-cost method determination of percent complete. Wright Decl., ¶ 12.

The fundamental dispute in this case is whether Landmark was overpaid for certain schedule of prices line items. Wright Decl., ¶ 13. The question of overpayment can only be determined by comparing what Landmark was paid for the line items in dispute, to what Landmark should have been paid for the same items. Id. There is no dispute as to how much Landmark was paid for the line items in dispute. Id. Mr. Wright calculated the revenue earned under the cost-to-cost method, which is based upon the concepts and principles in SOP 81-1, the generally accepted and recognized method of revenue recognition for long term construction contracts, and specifically addressed the question concerning how much Landmark should have been paid for the disputed line items. Id.

In Mr. Wright's opinion, it is not reasonable to expect a generally accepted accounting principle applicable to these circumstances present in this case, because the generally accepted accounting principles are issued for the fair presentation of financial statements of an entity. Wright Decl., ¶ 14. It is common practice, however, to rely upon the concepts and principles embodied in particular generally accepted accounting principles. This is precisely what Mr. Wright did in using the cost-to-cost method. Id.

As Mr. Wright previously indicated, he discussed the applicability of the cost-to-

cost method under the circumstances presented by this case with other members of his firm. Wright Decl., ¶ 15. Those members concurred with both the methodology and the application of that methodology to the circumstances presented by this case. Id. Thus, Lumbermens' characterization that the method used has not been peer reviewed is untrue. Id.

Lumbermens asserted in its reply that Mr. Wright's application of the cost-to-cost methodology introduced unreliability in Mr. Wright's opinions because the method "assumes a direct relationship between the contractor's expenses (regardless of whether the expenses were paid) and its percentage completion of the project." Reply at 6. Mr. Wright disagrees with Lumbermens' assertion. Wright Decl., ¶ 17. The cost-to-cost method for determining the percent complete using costs recorded on the accrual basis of accounting is consistent with generally accepted accounting principles. Id. The accrual basis of accounting recognizes and records costs as the obligation for the good or services arises. Wright Decl., ¶ 18. Landmark recorded its costs using the accrual basis of accounting. The accrual basis cost data of Landmark used by Mr. Wright in his cost-to-cost calculations. Id. Whether Landmark paid the accrued obligations is irrelevant to any percent complete calculation. Id. The fundamental question is how much of the work did Landmark perform and, as a result, how much of the schedule of prices did it earn. Id. For the material items that Landmark purchased for the benefit of the contract, the accurate measure is the accrued cost of the purchased materials. Id. Even material obligations that Landmark did not pay for should be included in the cost-to-cost calculation since the project received the benefit of those unpaid obligations. Id.

Lumbermens further asserted in its reply that the cost-to-cost method assumes

that both the original and takeover contractor acquired materials and performed services for the same cost, and that they were equally efficient. Reply at 6. Mr. Wright made no such assumption. In fact, Mr. Wright stated in his expert report that the material overpayments calculated under his cost-to-cost method are the maximum amounts possible. Wright Decl., ¶ 20. This is because there are differences in the costs incurred between Landmark, the defaulted contractor, and Atherton, the takeover contractor. Id. Given that Atherton bid approximately $1,000,000 more than Landmark on the original contract, and that Atherton performed the work under the contract during a later period than Landmark would have, it is reasonable to infer that Atherton's costs per housing unit were higher than Landmark's. Id. By using Atherton's higher per housing unit costs, the resulting percent complete for Landmark is lower, thereby increasing the overpayment calculation. Id. As a result I properly identified the overpayment amounts as the maximum amounts. Id.

Lumbermens also asserted in its reply that Mr. Wright's methodology makes no distinction between "material costs that Landmark actually incurred, i. e. paid to its suppliers and subcontractors, and its obligations to pay for materials that were never satisfied." Reply at 7. As Mr. Wright previously explained, the costs to be used in the cost-to-cost method are the accrued obligations recorded, consistent with generally accepted accounting principles. Wright Decl., ¶ 22. It appears that Lumbermens fails to understand the fundamental concept of accrual based accounting, and what it represents. Id. Under the accrual method, obligations are recorded, and recognized, when they arise, not when they are paid. Id. Generally accepted accounting principles are based upon the accrual basis of accounting. Id. The use of the accrual basis cost information is not only

consistent with generally accepted accounting principles, but it accurately measures the value of the materials purchased by Landmark. Wright Decl., ¶ 23.

The fallacy of Lumbermens' position can be illustrated by the following example. Assuming that Landmark purchased, but did not pay for, 100 percent of the doors and windows for the project, Lumbermens' position would result in a percent complete of 0 percent for Landmark. Wright Decl., ¶ 24. As a result of Landmark purchasing 100 percent of the doors and windows, Atherton would incur no costs for doors and windows, the surety would incur no costs in its takeover contract for doors and windows and, therefore, suffer no damage. Id. Lumbermens' position would result in a duplication of the payment for the doors and windows – one to Landmark and one to Atherton. Id. As a result of Lumbermens' untenable position, Lumbermens' damages are inflated by the amounts Lumbermens paid, under the payment bond, for Landmark's unpaid material acquisitions that benefitted the project. Id.

Finally, Lumbermens asserted in its reply that the cost-to-cost method as applied by Mr. Wright does not "consider primary sources of data regarding Landmark's actual expenditures for project materials, but instead relies solely upon Landmark's self-reporting of its job-to-date costs." Reply at 7. The cost data used in Mr. Wright's cost-to-cost calculation were taken from the books and records of both Landmark and Atherton. Wright Decl., ¶ 26. The books and records of Landmark and Atherton are not based upon estimates, but rather reflect the accumulation of actual costs. Id. Lumbermens' description of Landmark's job costs as self-reported is accurate. Id. All company books and records, including job cost reports, are self-reporting by their very nature. Id. The self-reporting nature of the job cost information is no different than the

inventory records that Lumbermens' expert used in his calculations of the percent complete. Id. Lumbermens' reference to the case involving an expert's reliance upon non-expert estimates without verifying their accuracy is not applicable to Mr. Wright's analysis given that he did not rely upon estimates, but rather upon actual cost information taken from Landmark's and Atherton's books and records. Id.

CONCLUSION

Because Mr. Wright's opinions concerning Lumbermens's alleged damages satisfy the requirements under FRE 702 and Daubert, the Government respectfully requests that the Court deny Lumbermens's motion in limine to exclude the testimony of Mr. Wright.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

October 10, 2007

Attorneys for Defendant