IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

No. 04-1255C
(Judge Robert H. Hodges)

THE UNITED STATES,

Defendant.

DECLARATION OF WILEY R. WRIGHT, III, IN SUPPORT OF DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF WILEY WRIGHT

1. My name is Wiley R. Wright, DI

2. I am a Certified Public Accountant (CPA).

3. I have prepared this declaration to respond to certain statements made in Lumbermens' reply to the Government's opposition to Lumbermens' motion to exclude my testimony.

4. It is my opinion that the modified cost-to-cost method I used in forming my expert opinions in this matter is supported by the traditional indicia of reliability.

5. Lumbermens in its reply alleges as follows:

> As Mr. Wright acknowledges, the cost-to-cost methodology is intended to be used in the context of a single contractor on a single contract as an alternative method of determining that contractor's percent complete.

Plaintiff's Reply To Defendant's Opposition To Plaintiff's Motion In Limine To Exclude Expert Testimony of Wiley Wright (Reply) at 3-4.

6. While that statement is true, it does not mean that the cost-to-cost method is not a sound and reliable basis for analyzing the facts presented by this case. In my opinion, the cost-

to-cost method is a preferred method of determining the percent complete to be used in revenue recognition for long term construction contracts under generally accepted accounting principles. I have used the conceptual basis of this generally recognized method for determining the percent complete of Landmark with respect to the disputed schedule of prices line items, and for calculating the appropriate amount of revenue to be recognized for each of these line items.

7. As I previously explained, the cost-to-cost method compares the actual cost of a contractor at a particular point in time to the total projected cost expected to be incurred under the contract.

8. In a financial statement, the total projected cost of a contract includes both the actual cost incurred to date, and an estimate of the costs to complete. As recognized in SOP 81-1, there are certain risks inherent in the cost to complete information. In this case, an estimate of the cost to complete is not necessary, since the cost of completing the activities in question are known. The costs are simply the actual cost incurred by Landmark, and the actual cost incurred by Atherton.

9. To perform my analysis, I obtained the actual cost information from the books and records of both Landmark and Atherton.

10. My use of the "modified cost-to-cost" method eliminates the risk of using estimated costs to complete by replacing them with actual cost data. Accordingly, the "modified cost-to-cost" method has a higher degree of reliability than the strict application of the generally accepted accounting principle applicable to the determination of the revenue earned at a given point in time.

11. As I previously stated, SOP 81-1 is the generally accepted accounting principle

applicable to long term construction contracts, and it specifies the methods by which revenue recognition can be determined.

12. One of the preferred methods for revenue recognition under SOP 81-1 is the cost-to-cost method determination of percent complete.

13. The fundamental dispute in this case is whether Landmark was overpaid for certain schedule of prices line items. The question of overpayment can only be determined by comparing what Landmark was paid for the line items in dispute, to what Landmark should have been paid for the same items. There is no dispute as to how much Landmark was paid for the line items in dispute. I calculated the revenue earned under the cost-to-cost method, which is based upon the concepts and principles in SOP 81-1, the generally accepted and recognized method of revenue recognition for long term construction contracts, and specifically addressed the question concerning how much Landmark should have been paid for the disputed line items.

14. In my opinion, it is not reasonable to expect a generally accepted accounting principle applicable to these circumstances present in this case, because the generally accepted accounting principles are issued for the fair presentation of financial statements of an entity. It is common practice, however, to rely upon the concepts and principles embodied in particular generally accepted accounting principles. This is precisely what I did in using the cost-to-cost method.

15. As I previously indicated, I discussed the applicability of the cost-to-cost method under the circumstances presented by this case with other members of my firm. Those members concurred with both the methodology and the application of that methodology to the circumstances presented by this case. Lumbermens' characterization that the method I used has

not been peer reviewed is untrue.

16. Lumbermens asserts in its reply that my application of the cost-to-cost methodology introduced unreliability in my opinions. Lumbermens states as follows:

> In other words, the method assumes a direct relationship between the contractor's expenses (regardless of whether the expenses were paid) and its percentage completion of the project. This assumption makes a cost-to-cost calculation even more unreliable.

Reply at 6.

17. I disagree with Lumbermens' assertion. The cost-to-cost method for determining the percent complete uses costs recorded on the accrual basis of accounting is consistent with generally accepted accounting principles.

18. The accrual basis of accounting recognizes and records costs as the obligation for the good or services arises. Landmark recorded its costs using the accrual basis of accounting. I used the accrual basis cost data of Landmark in my cost-to-cost calculations. Whether Landmark paid the accrued obligations is irrelevant to any percent complete calculation. The fundamental question is how much of the work did Landmark perform and, as a result, how much of the schedule of prices did it earn. For the material items that Landmark purchased for the benefit of the contract, the accurate measure is the accrued cost of the purchased materials. Even material obligations that Landmark did not pay for should be included in the cost-to-cost calculation since the project received the benefit of those unpaid obligations.

19. Lumbermens asserts in its reply as follows:

> Second, the cost-to-cost method assumes that both the original and takeover contractor acquired materials and performed services for the same cost, and that they were equally efficient. This assumption further weakens Wright's multiple contractor cost-to-

> cost method because it allows one contractor's contribution to actual work completed to be overvalued simply because its per unit or per hour costs were relatively higher.

Reply at 6.

20. I stated in my expert report that the material overpayments calculated under my cost-to-cost method are the maximum amounts possible. This is because there are differences in the costs incurred between Landmark, the defaulted contractor, and Atherton, the takeover contractor. Given that Atherton bid approximately $1,000,000 more than Landmark on the original contract, and that Atherton performed the work under the contract during a later period than Landmark would have, it is reasonable to infer that Atherton's costs per housing unit were higher than Landmark's. By using Atherton's higher per housing unit costs, the resulting percent complete for Landmark is lower, thereby increasing the overpayment calculation. As a result I properly identified the overpayment amounts as the maximum amounts.

21. Lumbermens asserts in its reply as follows:

> Third, this methodology as applied by Mr. Wright makes no distinction between material costs that Landmark actually incurred, i.e. paid to its suppliers and subcontractors, and its obligations to pay for materials that were never satisfied. That is, whether or not Landmark actually paid for the materials it ordered or services rendered, it incurred a "cost" for the purposes of Wright's cost-to-cost method and was credited for performance.

Reply at 7.

22. As I previously explained, the costs to be used in the cost-to-cost method are the accrued obligations recorded, consistent with generally accepted accounting principles. It appears that Lumbermens fails to understand the fundamental concept of accrual based accounting, and what it represents. Under the accrual method, obligations are recorded, and

recognized, when they arise, not when they are paid. Generally accepted accounting principles are based upon the accrual basis of accounting.

23. The use of the accrual basis cost information is not only consistent with generally accepted accounting principles, but it accurately measures the value of the materials purchased by Landmark.

24. The fallacy of Lumbermens' position can be illustrated by the following example. Assuming that Landmark purchased, but did not pay for, 100 percent of the doors and windows for the project, Lumbermens' position would result in a percent complete of 0 percent for Landmark. As a result of Landmark purchasing 100 percent of the doors and windows, Atherton would incur no costs for doors and windows, the surety would incur no costs in its takeover contract for doors and windows and, therefore, suffer no damage. Lumbermens' position would result in a duplication of the payment for the doors and windows – one to Landmark and one to Atherton. As a result of Lumbermens' untenable position, Lumbermens' damages are inflated by the amounts Lumbermens paid, under the payment bond, for Landmark's unpaid material acquisitions that benefitted the project.

25. Lumbermens asserts in its reply as follows:

> Finally, the cost-to-cost method as applied by Mr. Wright does not consider primary sources of data regarding Landmark's actual expenditures for project materials, but instead relies solely upon Landmark's self-reporting of its job-to-date costs which is assumed under Wright's methodology...This assumption, and the lack of any protocol for verifying that data meets a desired level of accuracy, further undermines the reliability of Mr. Wright's methodology.

Reply at 7.

26. The cost data used in my cost-to-cost calculation were taken from the books and records of both Landmark and Atherton. The books and records of Landmark and Atherton are not based upon estimates, but rather reflect the accumulation of actual costs. Lumbermens' description of Landmark's job costs as self-reported is accurate. All company books and records, including job cost reports, are self-reporting by their very nature. The self-reporting nature of the job cost information is no different than the inventory records that Lumbermens' expert used in his calculations of the percent complete. Lumbermens' reference to the case involving an expert's reliance upon non-expert estimates without verifying their accuracy is not applicable to my analysis given that I did not rely upon estimates, but rather upon actual cost information taken from Landmark's and Atherton's books and records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2007.

Wiley R. Wright, III