No. 04-1255C
(Judge Robert H. Hodges, Jr.)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LUMBERMENS MUTUAL CASUALTY COMPANY,

Plaintiff,

vs.

THE UNITED STATES,

Defendant.

---

EXCERPTS FROM DEPOSITION OF JOHN F. SANTIAGO,
TAKEN JANUARY 23, 2006
SUBMITTED IN SUPPORT OF PLAINITFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Mark G. Jackson, WSBA #18325
GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101-2939
(206) 464-3939
(206) 464-0125 – fax

Counsel of Record for
LUMBERMENS MUTUAL
CASUALTY COMPANY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---------------------------------------------------------

LUMBERMENS MUTUAL CASUALTY )
COMPANY, )
Plaintiff, )
vs. ) NO. 04-1255 C
THE UNITED STATES, )
Defendant. )

---------------------------------------------------------

DEPOSITION UPON ORAL EXAMINATION
OF
JOHN F. SANTIAGO

---------------------------------------------------------

9:00 a.m.
January 23, 2006
925 Fourth Avenue, Suite 2900
Seattle, Washington

Cheryl O'Haleck
Court Reporter

A P P E A R A N C E S

FOR PLAINTIFF: MR. MARK G. JACKSON
Preston, Gates & Ellis
Attorneys at Law
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
206.623.7580

FOR DEFENDANT: MS. LESLIE CAYER OHTA
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
1100 L. Street, N.W.
Washington, D.C. 20530
202.307.0252

MS. SHELLEY K. SIMCOX
Assistant Counsel
Naval Facilities
Engineering Command
19917 - 7th Avenue Northeast
Poulsbo, Washington 98370
360.396.0039

A. Well, maybe rephrase it again.
Q. Does this amendment -- by issuing this amendment, did the Government approve or approve as noted the submittals identified herein?
A. No, this amendment didn't approve that. The submittals had been submitted earlier and were reviewed and approved at that time.
Q. Okay. So this is just recognizing a previously-existing fact?
A. Yes, exactly.
Q. So you were not -- there is no independent legal significance or independent contractual administrative significance to that statement right there is what you're telling me?
A. No.
Q. Okay, let's go to Exhibit 12 real quick. Are these the Payment and Performance Bonds submitted by Landmark to the Navy for approval, as required by the contract?
A. They appear to be the ones, or copies of them.
Q. And I'll refer you to Exhibit 13.
A. Okay.
Q. You see that letter? It's from Pamela Grady.

A. That's what it says, yes.
Q. Can you explain the apparent inconsistency between that statement and the Exhibit 20?
A. No, I can't explain it.
Q. You agree there is an inconsistency there?
A. With the dates of the approved as noted, yes.
Q. Because on this document, Exhibit 16, as of August 8th, it states that the network analysis is approved or approved as noted, correct?
A. On this document, yes.
Q. And on Exhibit 20, the submittal date for approval is August 9th, correct?
A. Yes.
Q. Now, can you explain why Mr. McAteer is the one that signed Exhibit 20 as "Approved as Noted"?
A. I have no explanation.
Q. He didn't have authority to do that, did he?
A. Not according to what the contract said.
Q. Did you review this submittal?
A. I don't recall reviewing the submittal, no.
Q. Do you know -- let's turn to Exhibit 21, please. And I'm going to represent to you, just for the purpose of these questions, the document in Exhibit 21 is one of the required sorts submitted with

you answered this question before. Was Exhibit 22 the schedule of prices that the contract contemplates -- the second schedule of prices that the contract contemplates would be submitted by the contractor?

A. I could say it looks like it.

Q. So you think it might be?

A. It looks like it.

Q. Okay. And why does it look like it?

A. Because it's in the same format that I saw come in with their invoicing. Not necessarily the whole package at all times, but this is the format.

Q. This is the format of the document that was -- that accompanied the invoices submitted by the contractor?

A. It was a format similar to this.

Q. Okay, we're going to look at those, so it's no problem. I'm just trying to understand whether this particular document was considered by the Government to satisfy the second schedule of prices the contract contemplated.

A. And again, like I say, it looks like it.

Q. Okay. Now, it's not the same form as we looked at in Exhibit 14, is it?

A. No, it's not.

Q. Did you ever approve a document like this as

the schedule of prices for the contract?

A. No.

Q. Let's go to Exhibit 25, please.

A. I don't have a 25.

Q. I'm sorry, 26. I don't have a 25, either. Exhibit 26 should be beginning with LUMBERMENS 03599 at the bottom right-hand corner.

A. Uh-huh.

Q. Do you have that?

A. Yes.

Q. What is the document that appears there on the first page?

A. "Prompt Payment Certification and Deduction."

Q. Okay, that's the title. What's it for?

A. It's the form that we or the Government submits through the regional pay office for invoice payment.

Q. Okay. So after the invoice has gone through your office and has been approved by everybody, you put this document on top of it and then ship the invoice and this document to DFAS for payment, correct?

A. That's correct.

Q. Okay. Let's go through these blocks in here